**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:17-cv-03230-CCB |
| v. | |
| PHILIP R. JACOBY, JR., *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LODE B. DEBRABANDERE'S MOTION TO DISMISS COMPLAINT**

ARNOLD & PORTER KAYE SCHOLER LLP

Michael D. Trager (*pending admission pro hac vice*)
John A. Freedman (Bar No. 20276)
Adam J. Reinhart (*pending admission pro hac vice*)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
michael.trager@apks.com
john.freedman@apks.com
adam.reinhart@apks.com

*Counsel for Lode Debrabandere*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

SUMMARY OF ALLEGATIONS ...........................................................................3

I.      OVERVIEW ................................................................................................3

II.     THE ALLEGATIONS RELATING PRIMARILY TO OTHER DEFENDANTS ...........5

III.    THE GENERIC AND CONCLUSORY ALLEGATIONS REGARDING DR. DEBRABANDERE.............................................................................................10

STANDARD OF REVIEW.....................................................................................12

ARGUMENT...........................................................................................................13

I.      THE COURT SHOULD DISMISS PLAINTIFF'S FRAUD CLAIMS...........................13

        A.      PLAINTIFF HAS NOT PLED FACTS THAT DR. DEBRABANDERE ENGAGED IN FRAUDULENT OR DECEPTIVE CONDUCT ........................14

        B.      PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED SCIENTER....................20

        C.      PLAINTIFF'S AIDING AND ABETTING CLAIMS SHOULD BE DISMISSED ..................................................................................27

II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER OTHER PROVISIONS OF THE SECURITIES LAWS ...............................................................28

        A.      THE EXCHANGE ACT RULE 13b2-2 CLAIM SHOULD BE DISMISSED ....29

        B.      THE INTERNAL CONTROLS AND CERTIFICATION CLAIMS SHOULD BE DISMISSED ................................................................31

        C.      THE SECTION 304(a) CLAIM SHOULD BE DISMISSED.............................33

        D.      THE CONTROL PERSON CLAIMS SHOULD BE DISMISSED....................33

CONCLUSION........................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. SEC,*
  446 U.S. 680 (1980) ........................................................................................... 20

*Am. Chiropractic v. Trigon Healthcare,*
  367 F.3d 212 (4th Cir. 2004) ................................................................................ 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................... *passim*

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,*
  324 F. Supp. 2d 474 (S.D.N.Y. 2004) ................................................................. 25

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 13

*In re Bristol-Myers Squibb Sec. Litig.,*
  312 F. Supp. 2d 549 (S.D.N.Y. 2004) ........................................................... 18, 24

*Carpenter v. Harris, Upham & Co.,*
  594 F.2d 388 (1979) ............................................................................................ 34

*Chalverus v. Pegasystems, Inc.,*
  59 F. Supp. 2d 226 (D. Mass. 1999) ................................................................... 25

*In re Ciena Corp. Sec. Litig.,*
  99 F. Supp. 2d 650 (D. Md. 2000) ....................................................................... 24

*Classen Immunotherapies, Inc. v. Biogen IDEC,*
  381 F. Supp. 2d 452 (D. Md. 2005) ..................................................................... 22

*In re Constellation Energy Grp., Inc. Sec. Litig.,*
  738 F. Supp. 2d. 614 (D. Md. 2010) .................................................................... 34

*Cozzarelli v. Inspire Pharm., Inc.,*
  549 F.3d 618 (4th Cir. 2008) .......................................................................... 7, 28

*In re Daou Sys., Inc. Sec. Litig.,*
  411 F.3d 1006 (9th Cir. 2005) ............................................................................. 28

*Kyung Cho v. UCBH Holdings, Inc.,*
  890 F. Supp. 2d 1190 (N.D. Cal. 2012) ............................................................... 25

*Luy v. Balt. Police Dep't,*
  326 F. Supp. 2d 682 (D. Md. 2004) ....................................................... 12, 31, 33

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
    876 F.3d 541 (4th Cir. 2017) ............................................................21

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ........................................... 24, 25

*Monroe v. City of Charlottesville, Va.*,
    579 F.3d 380 (4th Cir. 2009) ............................................................12

*In re Mut. Funds Inv. Litig.*,
    566 F.3d 111 (4th Cir. 2009), *rev'd sub nom. on other grounds by Janus
    Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ....................................34

*Nolte v. Capital One Fin. Corp.*,
    390 F.3d 311 (4th Cir. 2004) ............................................................19

*Ohio v. Reiner*,
    532 U.S. 17 (2001) ............................................................26

*In re Orbital Scis. Corp. Sec. Litig.*,
    58 F. Supp. 2d 682 (E.D. Va. 1999) ........................................... 24, 25

*Ottmann v. Hanger Orthopedic Grp., Inc.*,
    353 F.3d 338 (4th Cir. 2003) ............................................................20

*In re Peritus Software Servs., Inc. Sec. Litig.*,
    52 F. Supp. 2d 211 (D. Mass. 1999) ............................................................25

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999) ............................................................21

*Raab v. Gen. Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) ............................................................14

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ............................................................28

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004) ........................................... 14, 34

*SEC v. Brown*,
    740 F. Supp. 2d 148 (D.D.C. 2010) ............................................................30

*SEC v. Cohmad Sec. Corp.*,
    09-cv-5680, 2010 U.S. Dist. LEXIS 8597 (S.D.N.Y. Feb. 2, 2010)....................................26

*SEC v. Espuelas*,
    579 F. Supp. 2d 461 (S.D.N.Y. 2008) ............................................................19

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) ............................................................................ 23, 34

*SEC v. Lucent Techs. Inc.*,
    No. Civ. 04-2315 (WHW), 2005 WL 1206841 (D.N.J. May 20, 2005) ........................ 22, 27

*SEC v. McGee*,
    895 F. Supp. 2d 669 (E.D. Pa. 2012) ................................................................ 13

*SEC v. Patel*,
    No. 07-cv-39-SM, 2008 WL 781912 (D.N.H. Mar. 24, 2008) ............................... 17

*SEC v. Patel*,
    No. 07-cv-39-SM, 2008 WL 782483 (D.N.H. Mar. 24, 2008) ............................... 28

*Svezzese v. Duratek, Inc.*,
    No. MJG-01-1830, 2002 U.S. Dist. LEXIS 20967 (D. Md. Apr. 30, 2002) ................ 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................................... 23

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) .................................................................. 13, 19

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) .......................................................................... 24

*Zaremski v. Keystone Title Assocs., Inc.*,
    1989 WL 100656 (4th Cir. Aug. 30, 1989) ....................................................... 13

**Statutes**

15 U.S.C.
    § 77o(b) ..................................................................................................... 27
    § 78m(b)(5) ................................................................................................ 31
    § 78t(a) ..................................................................................................... 34
    § 78t(e) ..................................................................................................... 27
    § 7243(a) ................................................................................................... 33

**Other Authorities**

17 C.F.R.
    § 229.601(b)(31)(i) ...................................................................................... 32
    § 240.13a-14 .............................................................................................. 32
    § 240.13b2-1 ............................................................................................. 32
    § 240.13b2-2(a) .......................................................................................... 29

Fed. R. Civ. P. 9(b) ........................................................................................ 13, 19, 28

Defendant Dr. Lode B. Debrabandere, who previously served as the Chief Executive Officer ("CEO") of Osiris Therapeutics, Inc. ("Osiris"), hereby submits this memorandum of law in support of his motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Dr. Debrabandere moves to dismiss all claims asserted against him by Plaintiff United States Securities and Exchange Commission ("SEC") under the Securities Exchange Act of 1934 ("Exchange Act") and the rules promulgated thereunder, the Securities Act of 1933 ("Securities Act"), and the Sarbanes-Oxley Act of 2002 ("SOX").

## **INTRODUCTION**

The CEO of every public company is routinely expected to (i) discuss the company's financial results during quarterly earnings calls, (ii) review and approve SEC filings that report those results, (iii) certify that the company's quarterly and annual SEC filings are accurate based on his or her knowledge, and (iv) sign management representation letters to the company's independent registered public accounting firm stating (again, based on his or her knowledge) that the company's accounting complies with Generally Accepted Accounting Principles ("GAAP"). There are occasions, however, when a company's financial results turn out to be inaccurate and require restatement, and sometimes this can be the direct result of alleged fraud committed by others within the company.  Even in such circumstances, however, a CEO is not automatically liable for securities fraud simply because he or she was CEO at the time of the alleged fraud.

Nonetheless, this is the theory on which Plaintiff has based its claims against Dr. Debrabandere.  While the Complaint contains sensational allegations about the actions of certain Defendants, including that they falsified and backdated documents, the Complaint lacks any such factual allegations about Dr. Debrabandere.  Nor does the Complaint plead that Dr. Debrabandere engaged in fraud with anywhere near the required particularity or plausibility.

Importantly, the Court must determine whether Plaintiff has stated a claim against Dr. Debrabandere individually, without regard to what the Complaint might allege about others. Undifferentiated group pleading against multiple defendants, without more specific allegations against a particular defendant, is insufficient to state a claim.  Rather than alleging facts that could support a plausible claim against Dr. Debrabandere, in particular, the Complaint sprinkles occasional, brief references to him amongst extensive allegations about other Defendants.  The Complaint then includes sweeping, conclusory allegations that lump in Dr. Debrabandere with other Defendants in what can only be described as a misguided attempt of "guilt by association."[1]

In the 200 paragraphs of the Complaint describing the purported fraudulent scheme, only *six paragraphs* include independent factual allegations directed specifically against Dr. Debrabandere.  *See* Compl. ¶¶ 65, 110, 124, 131, 134, 146.[2]  These six paragraphs do not allege sufficiently that Dr. Debrabandere engaged in fraudulent or deceptive conduct.  The remaining paragraphs, to the extent they mention Dr. Debrabandere at all (and relatively few do), consist almost entirely of either generic allegations that could be made about any CEO (e.g., that he signed off on SEC filings) or conclusory statements that are devoid of any factual allegations (e.g., that he allegedly "knew, was reckless in not knowing, and was negligent in not knowing"

---

[1]    The other Defendants are (i) Phillip R. Jacoby, Jr., a certified public accountant who served as Osiris's Chief Financial Officer ("CFO") until he became the company's Vice President of Finance and Principal Accounting Officer ("PAO") in September 2015, (ii) Gregory I. Law, who served as Osiris's Vice President of Finance and PAO (beginning in November 2014) until he became the company's CFO in September 2015, and (iii) Bobby Dwayne Montgomery, who was Osiris's general manager of orthopedics and sports medicine and later the company's chief business officer.  Compl. ¶¶ 16-17, 19.

[2]    While these are the only paragraphs with independent factual allegations of purported wrongdoing involving Dr. Debrabandere specifically, Plaintiff often repeats these allegations multiple times later in the Complaint.  *Compare id.* ¶ 65 (allegation regarding Dr. Debrabandere and Distributor B), *with id.* ¶¶ 75 (same), 171 (same).

that Osiris's financial results were incorrect).  In other words, the Complaint fails to distinguish

Dr. Debrabandere from the CEO of any public company that has restated its financial results.

The shortcomings of the Complaint with respect to Dr. Debrabandere are all the more

surprising when considering the identity of the Plaintiff – the SEC.  Other than requests for

emergency relief, the SEC typically comes to federal court only after conducting an extensive

investigation, armed with subpoena power and backed by the resources of the federal

government.  Yet, despite the advantages that ordinary plaintiffs in civil litigation lack, the SEC

has failed to overcome the pleading standards that every civil litigant is required to meet.

Accordingly, the claims against Dr. Debrabandere should be dismissed.

## SUMMARY OF ALLEGATIONS

## I.    OVERVIEW

Plaintiff alleges that, during 2014 and the first three quarters of 2015, "Osiris and its

former senior officers engaged in a wide-ranging fraud to artificially inflate the company's

reported revenue."  *Id.* ¶ 1.  According to the Complaint, Osiris's reported revenue for 2014 and

the first three quarters of 2015 was overstated by seventeen and nine percent, respectively, as a

result of revenue for transactions with four distributors of Osiris's biosurgery products being

artificially inflated.  *See id.* ¶¶ 7-10, 31.  With respect to transactions with these distributors,

Plaintiff alleges that Defendants collectively (i) "knew, were reckless in not knowing, and were

negligent in not knowing" that recognizing revenue was "improper and did not comply with

GAAP" and (ii) misled Osiris's independent registered public accounting firm ("Auditor").  *See,*

*e.g.*, *id.* ¶¶ 45, 50, 73, 107, 117, 137, 178-82.

Only a small subset of Plaintiff's allegations, however, relate to Dr. Debrabandere, and

nearly all of the allegations relating to him are generic or conclusory.  Putting aside these generic

and conclusory allegations, the Complaint includes only *six* paragraphs with independent factual

allegations of purported wrongdoing involving Dr. Debrabandere, and even these allegations fail to support any claims against him:

| Category of Allegations | Allegations about Dr. Debrabandere |
| --- | --- |
| Distributor A – improper revenue in Q4 2014 | None |
| Distributor A – improper revenue in Q1 2015 | None |
| Distributor A – deceit of Auditor | None |
| Distributor B – improper revenue in Q1 2015 | One (¶ 65) |
| Distributor B – deceit of Auditor | None |
| Distributor C – improper revenue in Q1-Q3 2015 (pricing issue) | None |
| Distributor C – improper revenue in Q1-Q3 2015 (consignment issue) | One (¶ 110) |
| Distributor C – deceit of Auditor (pricing issue) | None |
| Distributor C – deceit of Auditor (consignment issue) | One (¶ 124) |
| Distributor D – improper revenue in 2014 and Q1-Q3 2015 | Two (¶¶ 131, 134) |
| Distributor D – deceit of Auditor | One (¶ 146) |

Indeed, the Complaint is more telling for what it does *not* allege about Dr. Debrabandere than what it does.  For example, there are no *non*-conclusory allegations that Dr. Debrabandere (i) had any accounting knowledge or background, (ii) knew that the accounting for any transaction was incorrect, or (iii) was told by anyone inside or outside of Osiris that the accounting for any transaction was incorrect.  The Complaint also does not allege that Dr. Debrabandere made any sales of Osiris stock or had any other motive to artificially inflate Osiris's stock price.  On each of these key issues, Plaintiff offers not a single allegation that provides factual detail of any kind.

Plaintiff's allegations regarding improper revenue recognition and deception of the Auditor focus almost exclusively on the Defendants who were responsible for booking revenue and dealing with the Auditor, not on Dr. Debrabandere.  To the extent the allegations discuss Dr. Debrabandere at all, they (i) rely on selective, partial quotations from emails that, when

considered in full, actually refute Plaintiff's allegations, (ii) fail to allege that he was involved in the recognition of revenue from the transactions at issue, (iii) fail to allege that he knew the accounting for transactions was wrong or was aware of facts or red flags that would have caused him to question the accounting, (iv) fail to allege that he knew or had any reason to believe that representations in quarterly and annual management representation letters to the Auditor were incorrect (or that he had any interaction with the Auditor whatsoever), and (v) fail to allege fraud with particularity.

## II.      THE ALLEGATIONS RELATING PRIMARILY TO OTHER DEFENDANTS

Rather than direct factual allegations against Dr. Debrabandere individually, Plaintiff's Complaint consistently lumps him together with the other Defendants and repeatedly states (without more) that he violated the federal securities laws by virtue of signing off on Osiris's financial results, SEC filings, and standard representation letters to the Auditor.[3/]

### A.      DISTRIBUTOR A

Plaintiff alleges that Osiris "improperly and prematurely" recognized revenue for product it "purportedly sold" to Distributor A in Q4 2014 and Q1 2015. *Id.* ¶ 32. Plaintiff alleges that this was due to the actions of Defendants *other than* Dr. Debrabandere and that these other Defendants deceived the Auditor with respect to the transactions (which allegedly included the creation of a false and backdated letter). *See id.* ¶¶ 32-62. None of the allegations of wrongdoing with respect to Distributor A involves any assertions of misconduct by Dr. Debrabandere.

---

[3/]      Perhaps in recognition of the Complaint's deficiencies (and in search of a fallback), Plaintiff pleads many claims against Dr. Debrabandere in the alternative – i.e., alleged primary violations, aiding and abetting violations, and/or control person violations – and, as a result, Plaintiff pleads more claims against Dr. Debrabandere than any other Defendant, despite the lack of particularized factual allegations against him.

### B.      DISTRIBUTOR B

Plaintiff alleges that Osiris "improperly recognized at least $650,000 in revenue associated with a purported product sale to Distributor B" (a Turkish company) in Q1 2015.  *Id.* ¶ 63.  According to Plaintiff, on March 31, 2015, Mr. Jacoby (Osiris's CFO) "executed a distribution agreement and closing checklist with Distributor B."  *Id.* ¶ 66.  Under the terms of this agreement, Distributor B agreed to pay Osiris $100,000 for an initial order of Cartiform and acquire $650,000 of Cartiform or Grafix by the end of 2015, but the agreement "was subject to Distributor B's ability to obtain required licenses, certificates, and permits."  *Id.* ¶¶ 66-67.[4/]

Plaintiff alleges that Mr. Jacoby "provided a copy of the executed agreements" to Mr. Law (then Osiris's PAO and later its CFO) and told Mr. Law that Osiris would be receiving a wire for $100,000 – and, thereafter, Mr. Jacoby directed that Osiris transfer units of Cartiform and Grafix to a third-party storage facility but with "no set timeframe for delivery of the product" to Distributor B.  *Id.* ¶¶ 66, 68.  Osiris recognized $750,000 of revenue associated with the sale, at least $650,000 of which allegedly was improper to recognize under GAAP (and subsequently was restated) because "Distributor B had paid Osiris only $100,000, had not received regulatory approval for the shipment of Osiris products into Turkey, had not physically received any Osiris product, and, upon information and belief, had not provided Osiris with a purchase order."  *Id.* ¶¶ 69-71, 74.  Plaintiff also alleges that, later in 2015, certain Defendants other than Dr. Debrabandere were involved in the creation of a false and backdated letter to support a different purported order with Distributor B.  *See id.* ¶¶ 77-90.

None of these allegations mentions Dr. Debrabandere.  For example, he is not alleged to have had any involvement with the execution of the distribution agreement or closing checklist,

---

[4/]   Cartiform and Grafix are two of Osiris's biosurgery products.  The other Osiris biosurgery products referenced in the Complaint are Ovation and BIO4.

the shipment or delivery of the product, or the recognition of revenue from the sale – and, he is not alleged to have had any involvement or awareness of the false and backdated letter.  Rather, the only non-conclusory allegation about Dr. Debrabandere with respect to Distributor B is that (i) in late March 2015, Mr. Montgomery (another Osiris executive) sent Dr. Debrabandere an email stating that Distributor B was "'uncomfortable paying for' Grafix" and, although the distributor was willing to pay for Cartiform, Osiris did not have enough Cartiform to fill the order and (ii) Dr. Debrabandere responded that Osiris could include Grafix in the order and exchange it for Cartiform when more was available (and stated that "it 'would be great' if Distributor B was willing to make a partial payment").  *Id.* ¶ 65.  Importantly, however, a material portion of this email that Plaintiff omitted from the Complaint (but that is incorporated by reference therein) reveals that Mr. Montgomery told Dr. Debrabandere he would check first with the CFO, Mr. Jacoby, to determine whether revenue from the sale could be recognized in Q1 2015.  *See* Ex. A.[5/]

## C.    DISTRIBUTOR C

Plaintiff makes two sets of allegations regarding Distributor C.  First, Plaintiff alleges that Osiris "improperly recognized revenue related to Distributor C by using the list price for BIO4" instead of the average sales price, notwithstanding that Distributor C sent Osiris monthly reconciliation reports that would have allowed Osiris to calculate the average sales price.

---

[5/]    In deciding a motion to dismiss, the Court may rely on "facts found in documents incorporated into the complaint by reference."  *See Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) (internal quotations omitted).  Documents that are quoted in a complaint (particularly when they are selectively quoted) are incorporated by reference.  *See id.*; *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) ("'What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.'" (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997))).

Compl. ¶¶ 91, 94-103.   Certain Defendants – but not Dr. Debrabandere – are alleged to have received these reconciliation reports and to have made specific misrepresentations or omissions about this issue to the Auditor and others.  *See id.* ¶¶ 118-22, 124-27.  None of these allegations involves any conduct by Dr. Debrabandere.  To the contrary, one of the emails cited in the Complaint (in a portion not quoted by Plaintiff) reflects that Dr. Debrabandere was *not* aware of the price issue.  *See id.* ¶ 99 (quoting April 2, 2015 email from Mr. Jacoby).  In particular, after Dr. Debrabandere asked questions about why he was receiving different sales numbers from Mr. Montgomery and another Osiris employee, Mr. Jacoby wrote to Mr. Montgomery that "you and I can corner [Osiris's assistant controller] and [the other Osiris employee] and beat the crap out of them so they stop throwing us under the bus."  Ex. B.  After Mr. Jacoby sent the other Osiris employee this and subsequent emails discussing what could be said to Dr. Debrabandere, she responded:  "I don't have a good explanation on the difference in my numbers yesterday other than I made a mistake."  *Id.*

Second, Plaintiff alleges that Osiris improperly recognized revenue for product sold on consignment to Distributor C's customers, in contravention of GAAP and Osiris's disclosed accounting policy.   Compl. ¶¶ 108-17.   Plaintiff selectively quotes an email from Dr. Debrabandere and alleges that he "directed" Osiris to account for all shipments as sales "so that revenue could be recognized."  *See id.* ¶ 110; *see also id.* ¶ 124.  In a portion of the email that Plaintiff omits, however, Dr. Debrabandere expressed his understanding that Osiris was *not* selling the product on consignment.  Ex. C ("It might include some consignment at [Distributor C's] level, but not at ours.").  And, Plaintiff has not alleged any facts that would indicate Dr. Debrabandere otherwise believed these were, in fact, consignment sales by Osiris.

In addition, Plaintiff alleges that (i) Messrs. Jacoby and Law "were involved in assessing the accounting implications" of the agreement between Osiris and Distributor C and "were aware, or should have been aware, of the agreement's terms," (ii) Messrs. Jacoby and Law "were both involved in follow-up communications with Osiris employees regarding Debrabandere's direction to book consignment as sales," (iii) Osiris's assistant controller "expressed concern" to Mr. Jacoby about treating shipments as sales, and (iv) Mr. Jacoby "followed Debrabandere's instructions and directed that all shipments, including those that included consigned inventory, would be booked as a sale for which revenue would be recognized." Compl. ¶¶ 92, 111-13, 115. Dr. Debrabandere is not alleged to have engaged in any follow-up communications about the accounting treatment of shipments, been aware of concerns expressed by anyone, or had any involvement in the ultimate decision by Mr. Jacoby to direct that revenue be recognized. And, as stated above, the Complaint contains no factual allegations that could establish Dr. Debrabandere believed that these shipments to Distributor C's customers were consignment sales by Osiris.

### D.     DISTRIBUTOR D

Finally, Plaintiff alleges that "Osiris improperly prematurely recognized revenue related to its sales to Distributor D." *Id.* ¶ 128. Plaintiff alleges that Osiris sold Ovation and Grafix to Distributor D on 30-day payment terms but allowed Distributor D "to withhold payment until product was resold to an end-user." *Id.* ¶ 130. Plaintiff alleges that, by 2015, Messrs. Jacoby and Law knew (or were reckless or negligent in not knowing) that "Distributor D's payments were contingent, and/or that Osiris' allowance for Distributor D's doubtful accounts was insufficient" but "failed to make any change in Osiris' accounting related to Distributor D." *Id.* ¶ 132. Plaintiff also alleges that (i) Mr. Jacoby sent an email to Mr. Law and Osiris's assistant controller suggesting that Dr. Debrabandere would fire them if he learned of a large outstanding

balance from Distributor D and (ii) Messrs. Jacoby and Law made misrepresentations to the Auditor after it became "concerned about the extensive outstanding amounts due to Osiris from Distributor D." *Id.* ¶¶ 132-33, 144-46.

Plaintiff does not make any non-conclusory factual allegations regarding Dr. Debrabandere's knowledge of the purported contingent payments.  Rather, Plaintiff makes a general allegation that, throughout 2014 and the first three quarters of 2015, Dr. Debrabandere did not object to Distributor D withholding payments beyond 30 days and, "upon information and belief," "agreed and/or was aware that Distributor D would not make payments to Osiris until product was sold to an end-user." *Id.* ¶ 131.  Plaintiff also alleges that Dr. Debrabandere failed to notify the Auditor about the alleged contingency (*id.* ¶¶ 171, 180) and that, in September 2015, he became aware, but failed to notify the Auditor, that another distributor (Distributor E) "was taking over all remaining accounts payable to Osiris by Distributor D for Ovation" and that Distributor E provided Osiris with a "10-month payment plan" (*id.* ¶¶ 134, 146, 171).[6/]  Plaintiff does not allege, however, that Dr. Debrabandere had any interaction with the Auditor or had any reason to believe that those individuals who *were* interacting with the Auditor (including the CFO and PAO) were not being transparent.

## III.  THE GENERIC AND CONCLUSORY ALLEGATIONS REGARDING DR. DEBRABANDERE

The remaining allegations about Dr. Debrabandere fall into two categories.  First, Plaintiff makes generic allegations that Dr. Debrabandere did things that all CEOs of public companies do.  Specifically, Plaintiff alleges that Dr. Debrabandere:

---

[6/]   Plaintiff later repackages these allegations in connection with its non-fraud claims, alleging that Dr. Debrabandere "participated in, failed to take action to prevent, and failed to disclose to the Auditor or Osiris' audit committee the extra-contractual or undocumented terms of arrangements with distributors." *See id.* ¶ 189; *see also id.* ¶¶ 27, 193.

- Was involved in setting and communicating the company's culture and financial targets and exercised "control" over Osiris' management, general operations, and policies (*id.* ¶¶ 4-5, 36-37, 64, 92, 199-200, 211, 242, 253);

- Announced Osiris's financial results on earnings calls and was quoted in earnings releases as making then-accurate statements about the results (*id.* ¶¶ 149-62);

- "[R]eviewed, approved, and was ultimately responsible for the accuracy" of the financial results reported in Osiris's SEC filings, and signed and/or certified some of these filings (*id.* ¶¶ 150, 152, 154, 156, 158, 160, 162, 171, 186, 198, 200);

- Signed management representation letters to the Auditor (*id.* ¶¶ 76, 123, 140-42, 171, 179);

- Received compensation that was "influenced" by financial metrics (*id.* ¶ 177); and

- Was one of the officers responsible for Osiris's internal control structure (*id.* ¶¶ 25, 189, 192).

Second, Plaintiff makes entirely conclusory allegations about Dr. Debrabandere and his state of mind without pleading any factual support whatsoever for those conclusions. These allegations typically group Dr. Debrabandere with the other Defendants. For example, Plaintiff repeatedly alleges that, collectively, Defendants' conduct was knowing, reckless, "and" negligent (notwithstanding that conduct cannot be all three of those things) in light of their "background, education, and job responsibilities." *See id.* ¶¶ 73 ("In light of . . . their background, education, and job responsibilities, Jacoby, Law, and Debrabandere knew, were reckless in not knowing, and were negligent in not knowing in not knowing that recording the Distributor B revenue described above . . . was improper and did not comply with GAAP."), 117 ("In light of . . . their background, education, and job responsibilities, Jacoby, Law, and Debrabandere knew, were reckless in not knowing, and were negligent in not knowing that recording revenue based on product consigned to Distributor C's customers as described above was improper and did not comply with GAAP."), 127, 137, 147, 166, 172. But, Plaintiff never alleges any facts regarding Dr. Debrabandere's background, education, or job responsibilities that would make these

conclusory allegations plausible. *See also id.* ¶¶ 25, 76, 186, 192, 198 (examples of additional conclusory allegations).[2/]

## STANDARD OF REVIEW

While the Court must assume Plaintiff's allegations are true at the motion to dismiss stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court also does not accept as true "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, allegations that "are no more than conclusions[] are not entitled to the assumption of truth." *Id.* at 679. Rather, legal conclusions "must be supported by factual allegations." *Id.* In addition, "the court 'need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009) (alteration in original) (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)). Similarly, a court need not accept "conclusory factual allegations devoid of any reference to actual events." *See, e.g.*, *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004) (internal quotation marks omitted) (citing *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)).

As for any remaining non-conclusory allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it

---

[2/]   As discussed below (*see infra* Argument, Section I.B.2), the Complaint states in the paragraph of the "Defendants" section describing Dr. Debrabandere that he invoked his Fifth Amendment privilege during the investigation that preceded this action. *Id.* ¶ 18.

stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means a plaintiff must allege the "who what, when, where, and how" of the alleged fraud. *See, e.g.*, *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). In addition, as here, "'where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Zaremski v. Keystone Title Assocs., Inc.*, 1989 WL 100656, at *2 (4th Cir. Aug. 30, 1989) (quoting *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). Finally, while Rule 9(b) also provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," *Iqbal* clarified that Rule 9(b) does not "require courts to credit a complaint's conclusory statements without reference to its factual context" and does not give a plaintiff "license to evade" the plausibility requirements of Rule 8. 556 U.S. at 686-87. Instead, a complaint "must contain a factual basis supporting a plausible inference that the defendants acted with scienter" in order to meet "the requirements elaborated upon by the Supreme Court in *Iqbal* and *Twombly*." *SEC v. McGee*, 895 F. Supp. 2d 669, 683 (E.D. Pa. 2012).

## ARGUMENT

## I.   THE COURT SHOULD DISMISS PLAINTIFF'S FRAUD CLAIMS

Plaintiff's First and Fourth claims assert that Dr. Debrabandere violated Exchange Act Section 10(b), Rule 10b-5 promulgated thereunder, and Securities Act Section 17(a). *See* Compl. ¶¶ 201-03, 213-16. Plaintiff's Second and Fifth claims assert that Dr. Debrabandere aided and abetted Osiris's violations of these provisions. *See id.* ¶¶ 204-208, 217-221. None of these claims has been pled sufficiently under Federal Rules of Civil Procedure 8 and 9(b).

A.   **PLAINTIFF HAS NOT PLED FACTS THAT DR. DEBRABANDERE ENGAGED IN FRAUDULENT OR DECEPTIVE CONDUCT**

The First and Fourth claims should be dismissed because the Complaint fails to allege that Dr. Debrabandere engaged in fraudulent or deceptive conduct.

1.   **PLAINTIFF FAILS TO PLEAD FACTS THAT DR. DEBRABANDERE ENGAGED IN A FRAUDULENT SCHEME**

The thrust of Plaintiff's fraud allegations with respect to Dr. Debrabandere is that he "set and communicated" Osiris's "culture" that drove the purported fraudulent scheme and set "aggressive targets" so that Osiris could demonstrate "consistent revenue growth each quarter." *Id.* ¶¶ 4, 6.  Plaintiff does not allege, however, that setting growth targets violates the federal securities laws, because it does not.  *See, e.g.*, *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 291 (4th Cir. 1993) (concluding that "predictions about earnings . . . [may] prove[] incorrect, but hindsight does not establish fraud"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 388 (D. Md. 2004) (observing that it is not uncommon for companies to have "aggressive growth strategies").  The only non-conclusory factual allegation about Dr. Debrabandere's conduct regarding Osiris's culture – i.e., that he sent an email on December 23, 2014 stating that "Q4 [2014] is becoming a big challenge" because the total revenue for the quarter was projected to be $19.5 million and that "[w]e need as an absolute minimum $20 million" (Compl. ¶¶ 4-5, 36) – actually demonstrates that Dr. Debrabandere's so-called "aggressive targets" had nothing to do with any purported fraudulent scheme.  While Plaintiff highlights this allegation in the opening paragraphs of the Complaint, Plaintiff waits well over one hundred paragraphs to reveal that Osiris's revenue for Q4 2014 actually came in at $19.3 million – i.e., *below* both the $19.5 million projection *and* the $20 million "absolute minimum" that Dr. Debrabandere purportedly demanded.  *Id.* ¶ 155.

## 2. PLAINTIFF FAILS TO PLEAD FACTS THAT DR. DEBRABANDERE ENGAGED IN FRAUDULENT OR DECEPTIVE CONDUCT IN CONNECTION WITH THE TRANSACTIONS

While most of the allegations about specific distributor transactions relate to other Defendants, the few non-conclusory allegations regarding Dr. Debrabandere's conduct with respect to Distributors B, C, and D do not meet the requirements of Federal Rules of Civil Procedure 8 and 9(b).[8]

### a. *Distributor B*

Plaintiff's only non-conclusory allegation about Dr. Debrabandere's conduct with respect to Distributor B involves a single March 27, 2015 email exchange between him and Mr. Montgomery. According to Plaintiff, (i) Mr. Montgomery notified Dr. Debrabandere that a product (Cartiform) Distributor B was "willing to pay" for was not available in sufficient quantity and that the distributor was "uncomfortable paying for" another product (Grafix) and (ii) Dr. Debrabandere, who understood that Distributor B did not plan to pay for the full order upfront, responded by suggesting that Osiris could sell Grafix to Distributor B (and later exchange it for Cartiform if necessary). Compl. ¶ 65.[9]

As an initial matter, Plaintiff does not – and cannot – allege that there is anything wrong *per se* with offering a right of return, nor does Plaintiff allege that the Grafix sold was, in fact, later exchanged for Cartiform. Similarly, Plaintiff does not – and cannot – allege that there is

---

[8] As stated above, the Complaint contains no allegations of wrongdoing by Dr. Debrabandere with respect to Distributor A.

[9] Plaintiff also alleges that, "[i]n early 2015, Osiris' sales department began negotiating a potential distributor agreement with Distributor B" and that "efforts to finalize the terms of the" agreement "became intense" by the end of Q1 2015 "because the revenue from the transaction with Distributor B was intended to meet Debrabandere's revenue target for that quarter." *Id.* ¶ 64. This conclusory allegation, however, says nothing about Dr. Debrabandere's *conduct* and does not reflect any wrongdoing by him.

anything wrong with Distributor B failing to pay upfront.   In other words, Dr. Debrabandere's conduct is not alleged to have been inherently fraudulent or deceptive.   Instead, Plaintiff alleges that recording revenue for the sale was "improper and did not comply with GAAP."   *Id.* ¶ 73. But, this allegation fails for two independent reasons.

First, it is well established that "[a] cause of action does not lie when 'the complaint rests on mischaracterizations' of the events at issue."   *See Svezzese v. Duratek, Inc.*, No. MJG-01-1830, 2002 U.S. Dist. LEXIS 20967, at *12 (D. Md. Apr. 30, 2002) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 615 (4th Cir. 1999)).   Here, Plaintiff's allegation is based on a mischaracterization, which is evident from a portion of the March 27 email that Plaintiff failed to quote in its Complaint.   Specifically, in the email, Mr. Montgomery wrote to Dr. Debrabandere: *"I'm awaiting a call from Phil [Jacoby] to see if we can book the complete revenue as long as I have a PO and $250K cash and give [Distributor B's representative a] payment plan in 2015 to pay off balance by end of 2015. . . .   I am confident Phil will be okay with this."*   *See* Ex. A (emphasis added).   In other words, Dr. Debrabandere's email to Mr. Montgomery that is cited in the Complaint (which was sent five minutes after the email quoted above) was premised on the understanding that Mr. Montgomery would be consulting Osiris's then-CFO (Mr. Jacoby) about the transaction and that revenue would only be recorded if Mr. Jacoby determined that the accounting was proper.[10/]

Second, Plaintiff alleges nothing that would connect Dr. Debrabandere to the purported accounting violation.   The allegations against Dr. Debrabandere do not extend beyond the March 27 email, which, according to the Complaint, occurred *before* the agreement with the distributor

---

[10/]   Montgomery also did not write that Distributor B was "'"uncomfortable paying for' Grafix," as Plaintiff alleges.   *See* Compl. ¶ 65.   Instead, he wrote that Distributor B was "uncomfortable paying for Grafix *now*."   *See* Ex. A (emphasis added).

was executed, *before* the product was shipped, and *before* the revenue was recorded.  *Compare*

Compl. ¶ 65, *with id.* ¶¶ 66-68.  *See also SEC v. Patel*, No. 07-cv-39-SM, 2008 WL 781912, at

*12 (D.N.H. Mar. 24, 2008) (concluding that an SEC complaint failed to allege that a defendant

who negotiated a sale involving "exchange rights" had knowledge of improper revenue

recognition for the sale because "[the complaint] nowhere alleges that [the defendant] knew

about either the shipment itself or the manner in which [the companies involved] accounted for

the revenue associated with it").  In other words, Plaintiff fails to allege that Dr. Debrabandere

had anything to do with the execution of the agreement, shipment of the product, or recording of

the revenue – each of which is alleged to have occurred after the March 27 email (irrespective of

Plaintiff's selective quotation).  *See* Compl. ¶¶ 66-68.

### b.    Distributor C

Plaintiff's only non-conclusory allegation about Dr. Debrabandere's conduct with respect

to Distributor C is that he sent an email to Mr. Jacoby, Mr. Law, and others "direct[ing] that

Osiris account for all shipments of the product as 'sales' so that revenue could be recognized."

*Id.* ¶ 110.  Once again, Plaintiff quotes selectively from an email – this time a March 9, 2015

email to Mr. Jacoby, Mr. Law, and others in which Dr. Debrabandere stated, in full:

> Can you guys figure out what the shipments to [Distributor C] are and account for
> those as "sales."  These reports and Amy's need to be sync'ed, and reflect what
> we will account for in terms of revenue for [t]he quarter.  *We discussed last week*
> *to consider shipments to [Distributor C] customers as "a sale."  It might include*
> *some consignment at [Distributor C's] level, but not at ours.*  We cannot wait
> until we receive PO's to book these as a sale.
>
> Thx.
> Goal is to get to $1 million bio4 this quarter.

*See* Ex. C (emphasis added).

In the Complaint, Plaintiff quotes only the portion of the email that follows the emphasis

above.  *See* Compl. ¶ 110 ("'We cannot wait until we receive PO's to book these as a sale....

- 17 -

Goal is to get to $1 million bio4 this quarter.'") On its face, however, the full email refutes Plaintiff's allegation – i.e., Dr. Debrabandere states that he did *not* believe that Osiris's shipments to Distributor C were consignment sales by Osiris and, accordingly, he could *not* have believed that Osiris was recognizing revenue on consigned product in violation of GAAP or the company's accounting policy (as Plaintiff alleges). *See, e.g.*, *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004) ("Plaintiffs' legal characterization of the sales at issue as consignment sales is rejected because it is inconsistent with the documents upon which the Complaint is based."). The full email also demonstrates that the decision to treat shipments as sales was *not* a direction from Dr. Debrabandere but, instead, resulted from a discussion among the gatekeepers responsible for Osiris's accounting – the CFO and PAO (Messrs. Jacoby and Law) and others.

It also bears emphasis that Plaintiff's allegations against Dr. Debrabandere with respect to Distributor C (like the allegations regarding Distributor B) begin and end with a single email. The Complaint is devoid of any allegations of involvement by Dr. Debrabandere after he sent the March 9 email. Notably, there are no allegations that Dr. Debrabandere had any awareness that (i) Mr. Jacoby and Mr. Law had additional communications with employees about the accounting for the shipments, (ii) Osiris's assistant controller raised concerns about the accounting to Mr. Jacoby, or (iii) Mr. Jacoby ultimately directed that shipments be treated as sales. Compl. ¶¶ 111-13. In other words, Plaintiff alleges no facts that would tie Dr. Debrabandere to the purported accounting violation with respect to the shipments.

### c.    *Distributor D*

As for Distributor D, Plaintiff alleges that, "[t]hroughout 2014 and the first three quarters of 2015," Dr. Debrabandere "did not object" to the practice of Distributor D withholding payments beyond 30 days and, "upon information and belief, [he] agreed and/or was aware that

Distributor D would not make payments to Osiris until product was sold to an end-user." *Id.* ¶ 131. This allegation is not pled with particularity as required by Rule 9(b). Plaintiff does not identify any particular transactions or payments, nor does Plaintiff identify any facts regarding the purported agreement or awareness that Dr. Debrabandere supposedly had about the timing of payments. *Cf. Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir. 2004) (citing 15 U.S.C. § 78u-4(b)(1)) ("[I]f an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.").

This falls far short of what Rule 9(b) requires. *See, e.g.*, *U.S. ex rel. Wilson*, 525 F.3d 370 at 379 (requiring a plaintiff, under Rule 9(b), to allege facts establishing "the 'who, what, when, where, and how' of the alleged fraud" (internal quotation marks omitted)). In effect, Plaintiff is alleging that, at some point over a nearly two-year period, Dr. Debrabandere either reached some sort of an agreement with some unspecified person or became aware by some unspecified means about unspecified payments from Distributor D for unspecified transactions. This unsubstantiated speculation fails to provide fair notice of the particular basis for the purported misconduct that Plaintiff alleges. *See, e.g.*, *SEC v. Espuelas*, 579 F. Supp. 2d 461, 473 (S.D.N.Y. 2008) (holding that an allegation that defendants "played a wholly unspecified 'role'" in negotiations "during the years '2000 and 2001' . . . fails utterly to provide these defendants with fair notice of the specific conduct with which [each] is charged" (internal quotation marks omitted and alteration in original)).[11/]

---

[11/]   Indeed, other allegations refute Plaintiff's non-particular allegations regarding Dr. Debrabandere. Specifically, Plaintiff alleges that, in January 2015, Mr. Jacoby sent an email to Osiris's assistant controller (copying Mr. Law) that attached a copy of a statement for Distributor D showing a balance due of over $7 million. Compl. ¶ 132. According to Plaintiff, the "subject line of the email read 'Come Explain to me why [Debrabandere] shouldn't fire you, me and

Footnote continued on next page

Plaintiff's only other allegation about Dr. Debrabandere regarding Distributor D – that Mr. Jacoby forwarded him an email in September 2015 indicating that another distributor (Distributor E) would be taking over Distributor D's accounts payable and would make payments to Osiris pursuant to a payment plan (Compl. ¶ 134) – similarly fails to satisfy the heightened pleading standard of Rule 9(b). Plaintiff has not alleged any facts that Dr. Debrabandere was involved in determining how Osiris would or should account for this arrangement (or whether and to what extent this arrangement may have impacted Osiris's accounting from prior periods). In sum, like the allegations with respect to Distributors B and C, Plaintiff's allegations regarding Distributor D fail to support even an inference that Dr. Debrabandere engaged in fraudulent or deceptive conduct.

## B.     PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED SCIENTER

The First and Fourth claims also should be dismissed because the Complaint fails to allege sufficiently that Dr. Debrabandere acted with scienter, which is a required element for these claims. *See Aaron v. SEC*, 446 U.S. 680, 697 (1980). In the Fourth Circuit, a plaintiff may allege scienter by pleading either intentional or reckless misconduct. *See, e.g.*, *Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 344 (4th Cir. 2003). Recklessness, however, is a high standard under the securities laws and is generally defined as "an act 'so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a

---

Footnote continued from previous page

[Law] over the attached.'" *Id.* (alterations in original). In other words, at that time, it was understood by Osiris's CFO that Dr. Debrabandere *would* object to Distributor D withholding payments – i.e., Dr. Debrabandere did *not* agree and was *not* aware that Distributor D would not make timely payments. In contrast, Plaintiff alleges that, during 2015, the Auditor "was concerned about the extensive outstanding amounts due to Osiris from Distributor D" (*id.* ¶ 133) – i.e., the Auditor, unlike Dr. Debrabandere, *was* aware that Distributor D was not making timely payments. It also is notable that Plaintiff does not allege that the Auditor was unaware of the outstanding payments from Distributor D during the audit of Osiris's 2014 financial statements (which would have involved a review of Osiris's accounts receivables).

danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"  *See Phillips*, 190 F.3d at 621 (quoting *Hoffman v. Estabrook & Co.*, 587 F.2d 509, 517 (1st Cir. 1978)).  In other words, recklessness under the securities laws is "a slightly lesser species of intentional misconduct." *See Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 547 (4th Cir. 2017) (internal quotation marks omitted).

### 1.     THE ALLEGATIONS REGARDING DR. DEBRABANDERE'S STATE OF MIND ARE NOT WELL-PLED

As an initial matter, Plaintiff pleads scienter without differentiating between individuals or states of mind by repeatedly alleging that multiple Defendants collectively "knew, were reckless in not knowing, *and* were negligent in not knowing" that recording revenue was "improper and did not comply with GAAP."  Compl. ¶¶ 73, 117, 137, 166 (emphasis added). Pleading scienter in this manner does not provide Dr. Debrabandere with fair notice of the allegations against him, as required by the Federal Rules of Civil Procedure.  Putting aside that he could not have both known and not known things simultaneously (it is either one or the other), pleading three states of mind together and not tying specific allegations to specific claims makes it unclear what Dr. Debrabandere is alleged to have known or been reckless in not knowing (which is a required element for claims that require scienter) and what he is alleged to have been negligent in not knowing (which is not sufficient to sustain scienter-based claims).  This is representative of how Plaintiff has pleaded its claims against Dr. Debrabandere – i.e., as conclusions in search of factual allegations – and, for this reason alone, Plaintiff's claims should be dismissed.

Moreover, Plaintiff fails to allege facts indicating that Dr. Debrabandere acted with any scienter.  Plaintiff repeatedly alleges in conclusory fashion that Defendants collectively had the

requisite mental state due to their "background, education, and job responsibilities."  *Id.* ¶¶ 73,

117, 127, 137, 147, 166, 172.  This type of group pleading, which "'lumps all the defendants

together and fails to distinguish their conduct,'" is improper.  *See Classen Immunotherapies, Inc.*

*v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (quoting *Appalachian Enterprises, Inc.*

*v. Epayment Solutions Ltd.*, 2004 WL 2813121, at *6 (S.D.N.Y. Dec. 8, 2004)) (alterations

omitted).  Notably, there are no factual allegations about Dr. Debrabandere that would make

such conclusory allegations plausible.  For example, while other Defendants are alleged to be

experienced accounting professionals who were responsible for determining the appropriate

accounting treatment of all transactions, there is no allegation that Dr. Debrabandere was an

accountant or a CPA, previously served in any accounting positions, or had any accounting

knowledge, education, or training whatsoever.  Nor does Plaintiff allege that Dr. Debrabandere

knew of the specific accounting rules at issue or how those rules should be applied to the various

transactions identified by Plaintiff, particularly in light of the fact that, as discussed above, Dr.

Debrabandere's alleged involvement in the transactions preceded events that were required to

determine the proper accounting.  *See SEC v. Lucent Techs. Inc.*, No. Civ. 04-2315 (WHW),

2005 WL 1206841, at *5 (D.N.J. May 20, 2005) ("While the SEC charges that [defendant] did

not need to be an accountant to realize that the side agreements would lead to improper revenue

recognition, the SEC offers no compelling reason why this Court should charge regular business

people with knowledge of accounting principles.").

Similarly, while Plaintiff does not allege that Dr. Debrabandere, as CEO, was responsible

for determining the proper accounting treatment for these transactions, the Complaint describes

the numerous accounting experts inside and outside of Osiris who *were* responsible for preparing

or reviewing the company's accounting, including (i) the CFO, (ii) the PAO, (iii) the assistant

controller, (iv) the Auditor, and (v) an accounting consultant.  *See, e.g.*, Compl. ¶¶ 54-55, 85, 98-100, 103, 111, 125, 132-33, 146, 169-70.  Accordingly, the only reasonable inference that can be drawn from Plaintiff's "background, education, and job responsibilities" allegations is that Dr. Debrabandere appropriately relied on the CFO, PAO, and others to determine the proper accounting for the transactions in question.  *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (noting that, under the PSLRA, "the court must take into account plausible opposing inferences" in assessing allegations of scienter).

### 2.    THERE ARE NO OTHER ALLEGATIONS SUPPORTING AN INFERENCE OF SCIENTER

The Complaint also is devoid of any allegations about Dr. Debrabandere that would contribute to a plausible inference of scienter.  *First*, as discussed above, Plaintiff fails to allege Dr. Debrabandere's involvement in the recognition of revenue for the transactions with Distributors B and D, and Plaintiff's own allegations regarding Distributor C demonstrate that Dr. Debrabandere did not think revenue was being recorded improperly.

*Second*, Plaintiff fails to allege that Dr. Debrabandere was aware of any information that would have led him to believe that Osiris's accounting was incorrect.  For example, while Plaintiff alleges that Osiris's assistant controller expressed concerns about certain aspects of the company's accounting to Mr. Jacoby, the company's CFO at the time (Compl. ¶¶ 99, 111), there are no allegations that the assistant controller or anyone else ever raised any such concern with Dr. Debrabandere.  Similarly, while Plaintiff alleges that the Auditor "was concerned about the extensive outstanding amounts due to Osiris from Distributor D" (*id.* ¶ 133), Plaintiff does not allege that Dr. Debrabandere was aware of such concerns (from the Auditor or otherwise).

*Third*, Plaintiff fails to allege that Dr. Debrabandere made any stock sales during the relevant period.  Stock sales that are "unusual in their timing or amount" raise an inference of

scienter because they reflect motive.  *See, e.g.*, *In re Orbital Scis. Corp. Sec. Litig.*, 58 F. Supp. 2d 682, 686 (E.D. Va. 1999).  On the other hand, a lack of stock sales "prove[s] the contrary."  *In re Ciena Corp. Sec. Litig.*, 99 F. Supp. 2d 650, 662 (D. Md. 2000) (also observing that "the fact that the individual defendants sold so little stock could be construed as negating the inference that there was fraud").  Here, while Plaintiff alleges that another Defendant "sold Osiris's stock at artificially inflated prices, earnings profits from his fraud" (Compl. ¶ 176), Plaintiff makes no such allegation against Dr. Debrabandere.[12/]

*Fourth*, Plaintiff's allegation that Dr. Debrabandere's "2015 salary increase and bonus were influenced by Osiris' 2014 financial metrics, including revenue" is similarly unavailing. *See* Compl. ¶ 177.  An allegation that a corporate officer received a salary increase or bonus as a result of a company's performance does not support an inference of scienter because performance-based compensation is "typical of nearly every corporation."  *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d at 561 (holding that "compensation plans tied to the Company's performance . . . are typical of nearly every corporation" and do not raise an inference of scienter); *see also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 643 (E.D. Va. 2000) ("[A]n inference based on a general motive shared by all corporate officers and directors is no more probative of scienter than of other less-culpable states of mind."); *In re Orbital Scis. Corp. Sec. Litig.*, 58 F. Supp. 2d at 685 ("Companies routinely provide their executives with compensation packages that are tied to the price of their stock as an appropriate means of linking pay to performance.").  Plaintiff also does not plead any facts about how, or to

---

[12/]   Although stock sales and purchases by public company CEOs are identified in publicly-available SEC filings, courts in the Fourth Circuit cannot take judicial notice of such filings unless they are integral to or referenced in a complaint, *see, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607-08 (4th Cir. 2015), even if the filings were to show, for example, that a CEO actually purchased, rather than sold, stock during the period at issue, thereby negating allegations of scienter.

what extent, Dr. Debrabandere's compensation was "influenced" by "financial metrics" (perhaps because Plaintiff is unable or chose not to do so in light of the facts).

*Fifth*, courts are clear that a GAAP violation or restatement alone is not a sufficient indicia of scienter to withstand a motion to dismiss. *See, e.g.*, *id.* at 687 ("It is well-established that scienter 'requires more than a misapplication of accounting principles . . . .'") (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996)); *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211, 223 (D. Mass. 1999) ("A host of courts have held that a mere failure to recognize revenue in accordance with GAAP does not, in itself, suffice to establish scienter."). And, while an overstatement of financial results may be so large that, when combined with other factors, it might contribute to an inference of scienter, the alleged overstatement of revenue here – approximately 17 percent for 2014 and approximately 9 percent for Q1-Q3 2015 (Compl. ¶ 31) – is insufficient to support any such inference. *See In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d at 636-37 (finding that reported net *income* of $18.9 million versus restated net *loss* of $36 million amounted to "a night-and-day difference"); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004) (a restatement that "transformed . . . a company with retained *earnings* of approximately $185 million to a company with an accumulated *deficit* of approximately $178 million . . . suggests that this was no mere error" (emphasis added)); *Chalverus v. Pegasystems, Inc.*, 59 F. Supp. 2d 226, 234 (D. Mass. 1999) (concluding that a *158 percent overstatement* of revenue contributed to an inference of scienter).

*Finally*, Plaintiff's allegation that Dr. Debrabandere "invoked his Fifth Amendment privilege against self-incrimination" in his testimony during the SEC investigation (Compl. ¶ 18) does not sufficiently raise an inference of scienter, which may explain why Plaintiff does not plead any such inference in the Complaint. *See Kyung Cho v. UCBH Holdings, Inc.*, 890 F.

Supp. 2d 1190, 1203-04 (N.D. Cal. 2012) (rejecting a plaintiff's effort to use a defendant's invocation of the Fifth Amendment privilege during SEC testimony to raise an inference of scienter). This is particularly true where, as here, there was an ongoing criminal investigation (which is important context Plaintiff omitted from the Complaint). *See SEC v. Cohmad Sec. Corp.*, 09-cv-5680, 2010 U.S. Dist. LEXIS 8597, at *15 n.2 (S.D.N.Y. Feb. 2, 2010) (concluding that the inference from the defendant's invocation of the privilege is "weak" where "there is a justifiable concern . . . that he or she will be hauled into the criminal probe").[13/] As the Supreme Court has repeatedly acknowledged, innocent individuals often invoke their Fifth Amendment privilege at the time of an active criminal investigation. *See, e.g.*, *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (reiterating holdings in prior cases that one of the primary purposes of the Fifth Amendment privilege is to protect the innocent). Accordingly, Plaintiff's allegation "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Furthermore, allowing the invocation of the privilege in a prior investigation to raise a sufficient inference of scienter at the pleading stage of a subsequent action would result in innocent individuals being faced with the prospect of defending against protracted litigation brought by the government on what are otherwise insufficiently-pled claims.

### 3.   THE TOTALITY OF THE CIRCUMSTANCES DOES NOT SUPPORT AN INFERENCE OF SCIENTER

Even taking all allegations together, Plaintiff fails sufficiently to allege scienter on the part of Dr. Debrabandere. In effect, all Plaintiff has alleged is that (i) Osiris issued a relatively

---

[13/]   In this regard, the Complaint fails to state (but the Court may take judicial notice) that, on the day the Complaint was filed, Mr. Jacoby entered a guilty plea to a one-count information of making false statements to the Auditor, which was filed by the United States Attorney for the Southern District of New York. *See U.S. v. Jacoby*, Case. No. 1:17-cr-000676-DLC (S.D.N.Y. Nov. 2, 2017). Significantly, and perhaps in a rush to file simultaneously with its counterparts, Plaintiff did not allow any time between notice of the outcome of the criminal investigation and the filing of the Complaint.

modest restatement of its financial results and (ii) Dr. Debrabandere, who is not alleged to have

had any accounting knowledge or training or to have been aware of any red flags that would

have suggested Osiris's accounting was incorrect, did not identify the errors.  Taking all non-

conclusory well-pled allegations as true, Plaintiff fails to distinguish Dr. Debrabandere from any

CEO of a company that issues a restatement of its financial results.  Accordingly, Plaintiff's

fraud claims against Dr. Debrabandere should be dismissed.[14]

### C.    PLAINTIFF'S AIDING AND ABETTING CLAIMS SHOULD BE DISMISSED

Plaintiff's Second and Fifth claims assert that Dr. Debrabandere aided and abetted

Osiris's violations of the antifraud provisions of the securities laws, and they should be

dismissed.  To state an aiding and abetting claim against Dr. Debrabandere, Plaintiff must allege

sufficient facts to show that he "knowingly or recklessly" provided "substantial assistance" to

Osiris's violations.  *See* 15 U.S.C. § 78t(e) (Exchange Act); 15 U.S.C. § 77o(b) (Securities Act).

Plaintiff fails to make any non-conclusory allegation that Dr. Debrabandere aided and

abetted a violation of the antifraud provisions.  Rather, Plaintiff's aiding and abetting claims are

based entirely on the incorporation of alleged conduct discussed above.  For the same reasons

that Plaintiff failed to allege sufficiently that Dr. Debrabandere engaged in fraudulent or

deceptive conduct or acted with scienter, Plaintiff also has failed to allege that he provided

substantial assistance with respect to any alleged primary violation (let alone that he did so

knowingly or recklessly).  *See Lucent Techs. Inc.*, 2005 WL 1206841, at *8 ("Because the SEC

did not allege facts that would support an inference that [the defendant] knew it was improper to

---

[14]   Plaintiff also fails to allege sufficiently that Dr. Debrabandere acted with negligence as required by Securities Act Sections 17(a)(2) and (a)(3).  In light of the allegations that Osiris's financial statements were prepared or reviewed by numerous accounting experts, the fact that Dr. Debrabandere was not the lone voice questioning the company's accounting does not reflect negligence (and, instead, is wholly unsurprising).

recognize revenue in the transactions . . . [,] its aiding and abetting claims [have] not been adequately pled.").[15/]

## II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER OTHER PROVISIONS OF THE SECURITIES LAWS

Plaintiff's claims under other provisions of the federal securities laws are generally derivative of its fraud claims against Dr. Debrabandere.  And, like the fraud claims, Plaintiff's other claims should be dismissed for similar reasons – i.e., Plaintiff has failed to plead these claims with factual particularity and has failed to allege claims that provide for a plausible entitlement to relief.

Federal Rule of Civil Procedure 9(b) applies not only to fraud claims but also to any other claims that "sound in fraud."  *See Cozzarelli*, 549 F.3d at 629 (applying Rule 9(b) to Securities Act Sections 11 and 12(a)(2)); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("[The] wording [of Rule 9(b)] is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").   As Plaintiff has premised all of its claims on a purported fraudulent scheme, including by re-alleging and incorporating by reference all 200 substantive paragraphs of the Complaint into each of its claims, all of Plaintiff's claims sound in fraud and are subject to the Rule 9(b) pleading standard.  *See In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1028 (9th Cir. 2005) (holding that claims sound in fraud where a plaintiff characterizes the overall action as one involving a fraudulent scheme, alleges knowing misrepresentations, and incorporates all prior allegations within each claim); *SEC v. Patel*, No. 07-cv-39-SM, 2008 WL 782483, at *4-5 (D.N.H. Mar. 24, 2008) (same).

---

[15/]   For the same reasons, Plaintiff's Tenth and Thirteenth claims, which allege aiding and abetting of Osiris's violations of the reporting and books and records provisions of the securities laws, also should be dismissed.

### A.   THE EXCHANGE ACT RULE 13b2-2 CLAIM SHOULD BE DISMISSED

Plaintiff's Sixth claim asserts that Dr. Debrabandere violated Exchange Act Rule 13b2-2, which prohibits officers and directors of public companies, in connection with an audit, review, or examination of financial statements, from (i) making or causing to be made "a materially false or misleading statement to an accountant" or (ii) omitting to state (or causing another person to omit to state) "any material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant."  17 C.F.R. § 240.13b2-2(a).

While Plaintiff alleges that other Defendants made specific false and misleading statements to the Auditor, the Complaint includes no such allegations about Dr. Debrabandere, who is not even alleged to have had any interactions with the Auditor whatsoever.  Rather, Plaintiff's allegations about Dr. Debrabandere are based solely on boilerplate statements from standard management representation letters providing that (i) management had prepared the financial statements in accordance with GAAP, (ii) there were no material transactions that had not been recorded in the accounting records, (iii) management had no knowledge of fraud, (iv) management properly designed, implemented, and maintained a system of internal controls, and (v) there were "no material transactions, side agreements, or other arrangements that had not been disclosed to the Auditor and properly recorded."  Compl. ¶¶ 76, 123, 140-42, 171, 179.

Plaintiff fails to plead any facts supporting its conclusory allegations that these representations were false or misleading.  As discussed above, Plaintiff does not allege facts establishing that Dr. Debrabandere believed Osiris's financial statements were incorrect or that transactions had not been recorded properly – and Plaintiff fails to identify any facts from which Dr. Debrabandere was or should have been aware that any employees were engaged in fraud.

There also are no non-conclusory allegations that Dr. Debrabandere believed anything other than that Osiris's internal controls were sound.  Indeed, it is notable that Osiris's Auditor expressed the opinion, in connection with Osiris's Form 10-K filed in March 2015, that Osiris "maintained, in all material respects, effective internal control over financial reporting as of December 31, 2014."  *See* Ex. D (Osiris Form 10-K at 65 (filed Mar. 20, 2015)).   Finally, the only "arrangement" that Dr. Debrabandere is alleged not to have disclosed to the Auditor is the alleged payment contingency with Distributor D that Plaintiff fails to plead with particularity.[16]

Similarly insufficient are Plaintiff's allegations that Dr. Debrabandere did not notify the Auditor that (i) "Osiris was recognizing revenue on product consigned to Distributor C's customers" or (ii) "Distributor E took over the payment obligations of Distributor D" (as well as "Distributor E's intended payment plan").  *Id.* ¶¶ 124, 146.  Of course, silence absent some expectation or responsibility to disclose is not misleading.  *Cf. SEC v. Brown*, 740 F. Supp. 2d 148, 160 (D.D.C. 2010) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)). Notably, as stated above, the Complaint includes no allegation that Dr. Debrabandere had any interactions with the Auditor.  The Complaint does allege, however, that Messrs. Jacoby and Law (the CFO and PAO) were (i) frequently interacting with the Auditor and (ii) aware of the same items that Dr. Debrabandere allegedly failed to disclose to the Auditor.  The suggestion that Dr. Debrabandere thought he needed to inform the Auditor – who he is not alleged to have dealt with – about facts known to the individuals who *were* dealing with the Auditor on a regular

---

[16]   For the same reason, Plaintiff's allegation that Dr. Debrabandere failed to notify the Auditor that Osiris "would not pursue collection of payments" from Distributor D until sales were made to end-users (*see id.* ¶¶ 171, 180) also fails.

basis does not meet the plausibility standard under Federal Rule of Civil Procedure 8.[17]

Accordingly, Plaintiff's Sixth claim should be dismissed.

### B.   THE INTERNAL CONTROLS AND CERTIFICATION CLAIMS SHOULD BE DISMISSED

Plaintiff's Seventh and Eighth claims assert that Dr. Debrabandere violated Exchange Act Section 13(b)(5) and Rules 13b2-1 and 13a-14 thereunder.   These claims also should be dismissed.

First, there are no non-conclusory, particularized allegations that Dr. Debrabandere violated Exchange Act Section 13(b)(5), which prohibits any person from "knowingly" circumventing or failing to implement a system of internal accounting controls, or "knowingly" falsifying a book, record, or account.  15 U.S.C. § 78m(b)(5).  Instead, Plaintiff alleges in conclusory fashion that Dr. Debrabandere:

- "[K]nowingly failed to implement an appropriate system of internal accounting controls" (Compl. ¶ 192), which simply repeats the statutory language in conclusory fashion and therefore, pursuant to *Iqbal*, fails to support a claim;

- Was "aware of the issues underlying Osiris' internal control failures and misstated accounts" (Compl. ¶ 192), which is an improper "conclusory factual allegation[] devoid of any reference to actual events" (*Luy*, 326 F. Supp. 2d at 689); and

- "[P]articipated in, failed to take action to prevent, and failed to disclose to the Auditor or audit committee the extra-contractual or undocumented terms of arrangements with distributors" (Compl. ¶ 193), which simply repurposes Plaintiff's allegation regarding Distributor D that, as discussed above, was not pled with particularity.

---

[17]   The alleged omission regarding Distributor C also fails to support a claim under Rule 13b2-2 because there is not a sufficient allegation that Dr. Debrabandere knew that Osiris was recognizing revenue on product consigned to Distributor C's customers.  As discussed above, the only allegation about Dr. Debrabandere with respect to Distributor C relies on an email demonstrating that Dr. Debrabandere believed the opposite was true, and there are no other allegations that Dr. Debrabandere was involved in the recognition of revenue relating to Distributor C.

In addition, with respect to each of these allegations, as well as the allegation that Dr. Debrabandere "signed false management representation letters to the Auditor" (*id.* ¶ 193), Plaintiff fails to plead any facts that demonstrate Dr. Debrabandere acted "knowingly."

Second, there are insufficient allegations to support the claim that Dr. Debrabandere violated Rule 13b2-1, which prohibits persons from falsifying (or causing to be falsified) any book, record, or account. *See* 17 C.F.R. § 240.13b2-1. The only allegation about this is a general one that is pled collectively as to all Defendants – i.e., "[b]ased on the conduct of the Defendants, Osiris' books, records, and accounts were falsified by improperly accounting for Osiris' revenue, as detailed above." Compl. ¶ 194. As discussed above, there are no well-pled allegations that revenue was recognized improperly as a result of conduct by Dr. Debrabandere.

Finally, Plaintiff's claim that Dr. Debrabandere violated Rule 13a-14 also fails. Rule 13a-14 requires the principal executive officer (i.e., CEO) of a public company to sign a certification, pursuant to SOX Section 302, that is then included as an exhibit to the company's quarterly and annual reports. *See* 17 C.F.R. § 240.13a-14. While Plaintiff alleges that Dr. Debrabandere "falsely certif[ied] paragraphs 2 and 3" of these certifications (Compl. ¶ 198), Plaintiff fails to explain that these paragraphs require the principal executive officer only to certify that, *based on his or her knowledge*, the reports do not contain untrue statements of material facts, the reports do not omit material facts, and the financial statements fairly present in all material respects the financial condition of the company. *See* 17 C.F.R. § 229.601(b)(31)(i). As all CEOs are required to do, Dr. Debrabandere certified based on his knowledge and, as discussed above, there are no non-conclusory allegations that Dr. Debrabandere knew Osiris's financial results were incorrect. *See, e.g.*, Ex. E (Osiris Form 10-Q, Ex. 31.1.1 (filed May 11, 2015) ("Based on my knowledge, . . . .")).

- 32 -

### C.      THE SECTION 304(a) CLAIM SHOULD BE DISMISSED

Plaintiff's Fifteenth claim, which asserts that Dr. Debrabandere failed to reimburse Osiris for certain compensation or profits from the sale of Osiris stock allegedly due pursuant to SOX Section 304(a), *see* Compl. ¶¶ 255-59, is nothing more than a "conclusory factual allegation[] devoid of any reference to actual events." *See, e.g.*, *Luy*, 326 F. Supp. 2d at 689.  In fact, Plaintiff's allegation about reimbursement under Section 304(a) simply parrots the language of the statute.  *Compare* Compl. ¶ 257 (alleging that "Debrabandere received or obtained, during the statutory time periods established by [SOX], bonuses, incentive and/or equity-based compensation or profits from [his] sale of Osiris stock"), *with* 15 U.S.C. § 7243(a) (stating that the CEO of an issuer must reimburse the issuer for "any bonus or other incentive-based or equity-based compensation received from the issuer [during a specified period]" and "any profits realized from the sale of securities of the issuer" during the same period).  By failing to allege in a non-conclusory manner that Dr. Debrabandere received compensation or profits subject to Section 304(a), Plaintiff has failed to state a claim under that section, and its Fifteenth claim should be dismissed.[18/]

### D.      THE CONTROL PERSON CLAIMS SHOULD BE DISMISSED

Plaintiff's Third, Eleventh, and Fourteenth claims – that Dr. Debrabandere is liable, in the alternative, under Exchange Act Section 20(a) as a "control person" for Osiris's violations of various provisions of the Exchange Act and the rules thereunder (*see* Compl. ¶¶ 209-12, 240-43, 251-54) – should be dismissed.  A person is liable under Section 20(a) if he "directly or indirectly, controls any person" liable under another provision of the Exchange Act (or rule

---

[18/]   As already noted, Plaintiff makes no allegation that Dr. Debrabandere sold Osiris stock during the relevant time period.

thereunder), "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

In *Carpenter v. Harris, Upham & Co.*, the Fourth Circuit held that Section 20(a) "requires a showing of something more than negligence to establish liability." 594 F.2d 388, 394 (1979); *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)) (holding that, "[i]n order to establish a prima facie case," the SEC is required to "show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person" (internal quotations and alterations omitted)). While *Carpenter* did not establish a Section 20(a) pleading requirement, *see, e.g.*, *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d at 408, the Supreme Court subsequently held in *Iqbal* that a complaint must include factual allegations that plausibly give rise to an entitlement to relief, *Iqbal*, 556 U.S. at 679.[19/]   When read together, *Carpenter* and *Iqbal* compel the conclusion that, in order to state a plausible claim, Plaintiff must plead factual allegations showing "something more than negligence." Plaintiff has failed to do so here with respect to Dr. Debrabandere.

## CONCLUSION

In the end, Plaintiff has simply alleged that Dr. Debrabandere did what all CEOs do – i.e., set revenue targets, publicly state the company's financial results, and sign management representation letters and certifications – all while relying on his CFO and PAO, whose jobs

---

[19/]   Prior to *Iqbal*, the Fourth Circuit declined to require a private plaintiff to allege "culpable participation" by an alleged control person. *See In re Mut. Funds Inv. Litig.*, 566 F.3d 111 (4th Cir. 2009), *rev'd sub nom. on other grounds by Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). Courts in the District of Maryland that decided cases the same way either decided the issue prior to *Iqbal* or do not appear to have been presented with the argument that *Iqbal* affected the pleading standard. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d at 408; *In re Constellation Energy Grp., Inc. Sec. Litig.*, 738 F. Supp. 2d. 614, 639 (D. Md. 2010).

were to ensure that the accounting was correct (and complied with GAAP).  Plaintiff has failed

to allege that Dr. Debrabandere was involved in a fraudulent scheme or had any reason to believe

that Osiris's accounting was incorrect, and the Complaint fails to set forth any other facts that

would support a plausible entitlement to relief.  Accordingly, for all of the foregoing reasons, Dr.

Debrabandere respectfully requests that the Court grant his motion to dismiss all claims against

him.

Dated:  January 31, 2018                         Respectfully submitted,


                                                 ARNOLD & PORTER KAYE SCHOLER LLP


                                                 /s/ John A. Freedman
                                                 John A. Freedman (Bar No. 20276)

                                                 Michael D. Trager (*pending admission pro hac vice*)
                                                 Adam J. Reinhart (*pending admission pro hac vice*)
                                                 601 Massachusetts Avenue, N.W.
                                                 Washington, DC 20001
                                                 Tel: (202) 942-5000
                                                 Fax: (202) 942-5999
                                                 michael.trager@apks.com
                                                 john.freedman@apks.com
                                                 adam.reinhart@apks.com

                                                 *Counsel for Lode Debrabandere*