## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**SECURITIES AND EXCHANGE COMMISSION,**
    1961 Stout Street, Suite 1700
    Denver, CO 80294
              **Plaintiff**

    v.

**OSIRIS THERAPEUTICS, INC.;**
    7015 Albert Einstein Drive
    Columbia, MD 21046
    (Resident of Howard County, MD)

**PHILLIP R. JACOBY, JR.;**
    1138 Battery Avenue
    Baltimore, MD 21230
    (Resident of Baltimore, MD)

**GREGORY I. LAW;**
    15301 Jones Lane North
    Potomac, MD 20878
    (Resident of Montgomery County, MD)

**LODE B. DEBRABANDERE; and**
    639 Monterey Drive
    Satellite Beach, FL 32937

**BOBBY DWAYNE MONTGOMERY,**
    3320 Southall Road
    Franklin, TN 37064

              **Defendants.**

**Case No. 17-cv-03230-CCB**

**Jury Trial Demanded**

## AMENDED COMPLAINT

Plaintiff, United States Securities and Exchange Commission (the "SEC"), for its

Amended Complaint against Defendants Osiris Therapeutics, Inc. ("Osiris"), Phillip R. Jacoby,

Jr. ("Jacoby"), Gregory I. Law ("Law"), Lode B. Debrabandere ("Debrabandere"), and Bobby

Dwayne Montgomery ("Montgomery") (collectively, "Defendants"), alleges as follows:

1

## SUMMARY

1.       Osiris is a biotechnology company that researches, develops and markets products for orthopedics, sports medicine, and wound care.  During all four quarters of 2014 and the first three quarters of 2015, Osiris and its former senior officers engaged in a wide-ranging fraud to artificially inflate the company's reported revenue.  In addition to directing the misstatement of Osiris' financial results, the company's former senior officers engaged in numerous other fraudulent and deceptive acts, including entering into undisclosed side agreements with distributors, recognizing revenue in direct contradiction to their disclosed accounting policies, lying to Osiris' independent registered public accounting firm ("Auditor"), using false pricing data, and backdating and falsifying documents.  The misstatements and scheme were carried out by former officers of Osiris, including Jacoby who served as Osiris' chief financial officer and, subsequently, vice president of finance and principal accounting officer; Law who served as Osiris' vice president of finance and principal accounting officer and, subsequently, chief financial officer; Debrabandere who served as Osiris' chief executive officer; and Montgomery, who served as Osiris' general manager of orthopedics and sports medicine and, subsequently, its chief business officer.

2.       Throughout 2014 and the first three quarters of 2015, the Defendants repeatedly engaged in fraudulent acts to mislead Osiris' shareholders and the public as to Osiris' revenue and revenue growth.  For example, Osiris improperly and unlawfully: (i) prematurely recognized revenue in periods before sales had been made and critical agreement terms were finalized; (ii) recognized revenue using higher, inaccurate prices, while disregarding data explicitly providing lower, actual revenue numbers; and (iii) recognized revenue on consignment inventory, directly contradicting Osiris' disclosed accounting policies.  These errors led to

2

misstatements about Osiris' revenue, a key financial metric for the company, which was published in Osiris' periodic filings, current reports, and earnings calls.

3.    In addition to these accounting misstatements, Osiris' SEC filings also contained false and misleading statements and omissions about the manner in which Osiris was recognizing revenue, including statements about its accounting for key contracts and relationships and its treatment of consignment inventory.

4.    The fraudulent scheme, misstatements, and omissions were driven by Osiris' culture, which was set and communicated by Debrabandere and embraced by Jacoby, Law, and Montgomery.  During at least 2014 and the first three quarters of 2015, Osiris was focused on recognizing gross revenue, which Osiris executives and employees often referred to as "top line" revenue.  In particular, Osiris was focused on demonstrating consistent revenue growth each quarter.

5.    For example, on or about December 23, 2014, Debrabandere emailed Osiris employees, including Jacoby, Law, and Montgomery, explaining:

> Q4 is becoming a big challenge.  Its [sic] not good.  …  This totals
> for the quarter $19.5Million.  We need as an absolute minimum
> $20 million? [sic]  We need $0.5million more (remember
> Q1=$10M; Q2=$13M, Q3=17M …… [sic] and Q4 would be under
> $20M …).  Any suggestions?

6.    When the Defendants realized that Osiris' actual sales were not meeting Debrabandere's aggressive targets, they engaged in a variety of improper accounting practices to artificially inflate reported revenue.

7.    For example, in connection with Distributor A, Jacoby caused Osiris to recognize revenue of over $1 million in connection with a purported sale in the fourth quarter of 2014; however, he finalized the transaction in January 2015 – after the quarter ended.

8.     During the first quarter of 2015, Osiris recognized revenue on product purportedly sold to Distributor B, a Turkish distributor, despite the distributor only making a partial payment and needing to obtain regulatory approval to import the product into Turkey.  Further, in September and October of 2015, the distributor still had not received regulatory approval to import product and had not requested additional product; nonetheless, Jacoby, Law, and Montgomery caused Osiris to book revenue of nearly $2 million based on fictitious orders for Distributor B.  Montgomery backdated and signed a letter purporting to describe the fictitious order.

9.     In connection with Distributor C in 2015, Jacoby, Law, and Debrabandere caused Osiris to recognize revenue on consigned inventory, thereby disregarding Osiris' accounting policy, and prematurely recognized revenue on product that had not yet been sold to end-users. Further, Jacoby and Law also caused Osiris to recognize revenue at a higher "list price" instead of the price at which they knew, and were reckless and negligent in not knowing, it was actually sold and which Osiris was actually paid.

10.     Further, in 2014 and 2015, Osiris prematurely recognized revenue on millions of dollars in transactions with Distributor D, despite the fact that it already had significant accounts receivable and, upon information and belief, would not pay Osiris until the Osiris products were sold to end-users.

11.     As a result of their misconduct, which was done knowingly, recklessly, and negligently, Osiris, Jacoby, Law, Debrabandere, and Montgomery violated, and aided and abetted violations of, numerous provisions of the federal securities laws and, in the alternative, Debrabandere is liable for Osiris' violations as a control person of Osiris.

### NATURE OF THE PROCEEDINGS AND REQUESTED RELIEF

12.     The SEC brings this action pursuant to the authority conferred upon it by Section

22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77v(a)] and Sections 21(d),

21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)-(e)

and 78aa].  The SEC seeks permanent injunctions against each of the Defendants, enjoining them

from engaging in the transactions, acts, practices, and courses of business alleged in this

Complaint; officer and director bars pursuant to Section 20(e) of the Securities Act [15 U.S.C.

§ 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; disgorgement of all

ill-gotten gains from the unlawful activity set forth in this Complaint together with prejudgment

interest; and civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]

and Section 20(d) of the Exchange Act [15 U.S.C. § 78u(d)] against all Defendants.  The SEC

also seeks for Jacoby and Debrabandere to be ordered to reimburse Osiris for all bonuses,

incentive-based and equity-based compensation, and/or profits realized from their sale of Osiris

stock pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243(a)].  The

SEC seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the

Exchange Act [15 U.S.C. § 78u(d)(5)].

### JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15

U.S.C. §§ 78u(d), 78u(e), and 78aa].

14.     Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C.

§ 77v(a)] and Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and

78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this

Complaint occurred within the District of Maryland and were affected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange.  Osiris' principal executive office is in Columbia, Maryland and during the relevant time period, the Defendants worked at Osiris' Maryland office.  Further, Jacoby resides in Baltimore, Maryland and Law resides in North Potomac, Maryland.

<u>**DEFENDANTS**</u>

15.    **Osiris Therapeutics, Inc.**:  Osiris is a biotechnology company.  It is a Maryland corporation headquartered in Columbia, Maryland.  Osiris' securities are registered under Section 12(b) of the Exchange Act.  During the relevant time, Osiris' stock traded on Nasdaq Global Market; however, because of its inability to file timely restatements, on April 28, 2017 its stock was delisted from Nasdaq and it is now quoted on OTC Markets.  Osiris filed a registration statement on Form S-8 in October 2014 to register additional shares of common stock under its equity compensation plan.  Osiris' Form S-8 registration statement incorporated certain previous filings, including Osiris' Forms 10-Q for the first and second quarters of 2014, as well as all subsequently filed periodic reports.  Osiris' offering pursuant to this registration statement was ongoing during the time periods impacted by Defendants' misstatements and scheme, detailed herein.

16.    **Phillip R. Jacoby, Jr.**:  Jacoby is a resident of Baltimore, Maryland and Lakeway, Texas.  Jacoby was Osiris' chief financial officer ("CFO") until he became Osiris principal accounting officer ("PAO") in September 2015.  Jacoby signed and certified Osiris' Form 10-K for 2014 (for the year ended December 31, 2014) and Forms 10-Q for the first and second quarters of 2015, signed Osiris' Forms 8-K filed March 5, 2015, May 8, 2015, and

August 5, 2015, and signed or otherwise acknowledged management representations within letters provided to Osiris' Auditor in connection with the audit of Osiris' financial statements for 2014 and reviews of Osiris' financial statements for the first, second, and third quarters of 2015 (for the periods ended March 31, 2015, June 30, 2015, and September 30, 2015).  Jacoby was a certified public accountant ("CPA") licensed in Maryland until 1984.  Jacoby sold Osiris stock in May 2014 and May 2015.  During his testimony in the SEC's investigation that preceded this action, Jacoby invoked his Fifth Amendment privilege against self-incrimination in response to all substantive questions regarding Osiris.

17.    **Gregory I. Law**:  Law is a resident of North Potomac, Maryland.  Law was Osiris' vice president of finance and PAO from November 2014 until September 2015 when he became Osiris' CFO.  Law signed Osiris' Forms 10-Q for the first and second quarters of 2015, signed and certified Osiris' Form 10-Q for the third quarter of 2015, signed Osiris' Forms 8-K filed on November 6, 2015 and November 20, 2015, and signed or otherwise acknowledge management representations within letters provided to Osiris' Auditor in connection with the audit of Osiris' financial statements for 2014 and reviews of Osiris' financial statements for the first, second, and third quarters of 2015.

18.    **Lode B. Debrabandere**:  Debrabandere is a resident of Satellite Beach, Florida.  During the relevant period, Debrabandere was Osiris' chief executive officer ("CEO") and certified all of Osiris' relevant periodic filings with the SEC, signed and certified Osiris' Form 10-K for the year ended 2014, and signed or otherwise acknowledged all of the management representations within letters provided to Osiris' Auditor in connection with the reviews and audits of Osiris' financial statements during 2014 and the first three quarters of 2015.  As CEO of Osiris during the relevant period, Debrabandere exercised control over the management,

general operations, and policies of Osiris, as well as the specific activities upon which Osiris'

violations are based.  During his testimony in the SEC's investigation that preceded this action,

Debrabandere invoked his Fifth Amendment privilege against self-incrimination in response to

all substantive questions regarding Osiris.

19.      **Bobby Dwayne Montgomery**:  Montgomery is a resident of Nashville,

Tennessee.  He was Osiris' general manager of orthopedics and sports medicine from April 2014

to September 2015 and Osiris' chief business officer from September 2015 to February 2016.

## FACTS

### I.      Osiris' Business, Accounting, and Lack of Controls

20.      During the relevant period, Osiris operated a biosurgery business that included the

sale of various biologic products.  During the relevant period, Osiris sold these products to end-

users through its in-house sales force or through sales agents, and it also sold products through

third-party distributors.

21.      Osiris' relevant biosurgery products include Grafix, a wound care product;

Cartiform, an allograft used for cartilage repair; Ovation, a wound and soft tissue repair product;

and OvationOS, which was rebranded as $BIO^{4TM}$, a bone matrix that is used for bone repair and

regeneration ("$BIO^4$").

22.      In addition to selling product, Osiris would also consign product to distributors

and to end-user customers.  In relevant SEC filings, Osiris disclosed that revenue was not

recognized upon the placement of inventory into consignment.  Instead, Osiris stated that for

consigned product, it recognized revenue when it received appropriate notification that the

product had been used in a surgical procedure.

23.     As a public company, Osiris was required to file quarterly and annual reports with the SEC that presented its financial results in conformity with Generally Accepted Accounting Principles ("GAAP").

24.     Pursuant to GAAP, Osiris could recognize revenue in connection with sales of its products when revenue was realized, realizable, or earned, which accounting guidance provides occurs when: (i) title and the risk of loss passes to the customer; (ii) persuasive evidence of an arrangement exists; (iii) sales amounts are fixed or determinable; and (iv) collectability is reasonably assured.

25.     In addition to the Defendants' quest to artificially inflate Osiris' revenue to demonstrate revenue growth, Jacoby, Law, and Debrabandere failed to implement adequate controls over Osiris' financial reporting, which led to repeated financial misstatements and the failure to detect fraud.

26.     Among other things, Osiris did not devise or maintain effective controls over revenue recognition, including a lack of effective controls:  (i) to ensure that revenue was not recognized prior to the company obtaining written documentation demonstrating that persuasive evidence of an arrangement existed and the terms were fixed or determinable; (ii) to ensure that adequate analysis and documentation existed for distributor contracts to ensure timely and accurate recording of revenue in accordance with GAAP; (iii) to ensure proper compliance with bill and hold criteria; and (iv) to ensure appropriate accounting for consignment arrangements.

27.     As detailed herein, internal controls were also circumvented by the Defendants. For example, Jacoby and Montgomery created and used falsified and backdated documents to support the recognition of revenue and Debrabandere, Jacoby, and Law participated in, or failed

to take action to prevent or disclose, the extra-contractual or undocumented terms of arrangements with distributors.

28.     Osiris' lack of internal controls and the fraudulent conduct of the Defendants resulted in Osiris' misstating revenue with respect to numerous of its distributor and sales agent relationships in 2014 and 2015.

29.     The fraud at Osiris began to come to light during the third quarter of 2015 when Osiris' Auditor requested additional information regarding Osiris' recognition of revenue.  On November 16, 2015, Osiris filed its Form 10-Q for the third quarter of 2015 and, within that filing, disclosed a material weakness in internal controls over financial reporting and restated certain transactions that are detailed below.  In a Form 8-K filed on November 20, 2015, Osiris disclosed that it would be restating its financial statements for the first and second quarters of 2015 due to material errors, and in a Form 8-K filed on December 17, 2015, Osiris disclosed that its Auditor intended to resign.

30.     In a Form 8-K filed on March 15, 2016, Osiris stated that its financial statements issued for 2014 and the first three quarters of 2015 should not be relied upon and that the company intended to restate its financial statements for all of 2014 and the first three quarters of 2015.  Osiris' restated Form 10-K/A for 2014 was filed on March 27, 2017.  In that filing, Osiris disclosed material weaknesses in internal controls and corrected approximately $10.3 million in revenue overstatements for 2014.

31.     As a result of the fraudulent financial misstatements detailed in this Complaint, Osiris cumulatively overstated its revenue by approximately 17 percent for the four quarters of 2014, and cumulatively overstated its revenue by approximately 9 percent for the first three quarters of 2015.  The fraud perpetrated by the Defendants also caused Osiris to consistently

meet or exceed analyst consensus estimates for revenue during 2014 and the first three quarters of 2015.

II.     **Osiris', Jacoby's, and Law's Fraudulent Conduct and Financial Misstatements Related to Distributor A**

32.     In 2014 and early 2015, Distributor A was a distributor of Osiris products.  Based on the conduct of Jacoby and Law, Osiris improperly and prematurely recognized revenue on its Ovation product that it purportedly sold to Distributor A in the fourth quarter of 2014 and the first quarter of 2015.

33.     Also, in connection with the Auditor's 2014 audit and third quarter 2015 review of Osiris' financial statements, both Jacoby and Law made false and misleading representations and material omissions regarding transactions with Distributor A.

34.     Further, as detailed below, in November 2015, Jacoby backdated a letter that was provided to the Auditor to cover up his fraudulent recognition of revenue in Osiris' published financial statements.

A.     **The Fraudulent and Improper Recognition of Revenue in the Fourth Quarter 2014**

35.     In the fourth quarter of 2014, Jacoby and Law caused Osiris to improperly recognize revenue of approximately $1.1 million in connection with a purported sale of Ovation to Distributor A.

36.     During December 2014, Debrabandere set and communicated a fourth quarter 2014 revenue target of "an absolute minimum $20 million," noting that Osiris had increased revenue by millions of dollars each of the previous quarters.

37.     At this time, a significant amount of Osiris' Ovation inventory was consigned to Distributor A.  To meet the revenue target, Debrabandere and Jacoby hoped that Distributor A would purchase approximately $1 million of the consigned inventory.

11

38.     On December 23, 2014, Jacoby emailed Distributor A, writing:

> We need to chat about a bunch of things, including … most
> importantly, converting the consignment inventory into
> [Distributor A] owned product and the related payment terms.  I'm
> hoping to convert much/most of the Ovation consignment into
> sales in Q4-2014 and want your thoughts and your suggestions on
> payment terms.

39.     On January 5, 2015, Jacoby followed up with Distributor A in an email with the subject "Open Items," stating, "I'd like to convert roughly $1.2 million of the Consignment Inventory to sales as of 31Dec2014  ….  Give some thought to payment terms on the Ovation sales and let's discuss to wrap this up."  Three days later, in a January 8, 2015 email on which Law was copied, Jacoby stated that he continued to negotiate terms for the large order with Distributor A.

40.     On January 13, 2015, Jacoby and Distributor A finally reached agreement as to the terms of the sale, with Distributor A agreeing to buy approximately $1.7 million in Ovation and to make anticipated monthly payments over the course of more than a year.  Distributor A's email correspondence with Jacoby also indicated that Distributor A's anticipated payments were based on Distributor A's ability to sell Osiris' products to end-users.

41.     On February 2, 2015, with Jacoby's knowledge, Osiris further amended the sale to Distributor A to reclassify over $600,000 in Ovation back to consignment as of December 31, 2014.  As a result, Osiris' books and records reflected a sale of approximately $1.1 million to Distributor A as of December 31, 2014.

42.     Despite Jacoby and Law knowing that the sale terms were not finalized until 2015, Osiris recognized $1.1 million in revenue for the fourth quarter of 2014.

43.     Osiris' recognizing the $1.1 million in revenue during the fourth quarter of 2014 did not comply with GAAP.  First, because the terms of the sale were not finalized until at least

January of 2015, persuasive evidence of an arrangement did not exist in 2014, and the revenue was not realized, realizable, or earned.  Additionally, because Distributor A's ability to pay Osiris was contingent upon its ability to sell to end-users, the price was not fixed or determinable, and the revenue was not realized, realizable, or earned.

44.     The improper recognition of this revenue was material because a reasonable investor would consider it important to be informed of Osiris' actual revenue and would consider it important that Osiris' officers were engaged in fraudulent conduct, including misstatements of revenue and a scheme to improperly inflate revenue.

45.     In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as their own background, education, and job responsibilities, Jacoby and Law knew, were reckless in not knowing, and were negligent in not knowing that recording the Distributor A revenue described above during the fourth quarter of 2014 was improper and did not comply with GAAP.

### B.     The Fraudulent and Improper Recognition of Revenue in the First Quarter of 2015

46.     On or about March 23, 2015, in email correspondence that included Law, Jacoby explained that Distributor A would be purchasing its remaining consigned inventory of Ovation. The purchase price of this product was approximately $800,000.

47.     Despite the fact that Distributor A's ability to pay Osiris remained contingent upon its ability to sell-through to end-users, Osiris recognized approximately $800,000 in revenue for the first quarter of 2015.

48.     Osiris' recognizing this revenue during the first quarter of 2015 did not comply with GAAP because the price was not fixed or determinable, and the revenue was not realized, realizable, or earned.

49.     The improper recognition of this revenue was material because a reasonable investor would consider it important to be informed of Osiris' actual revenue and would consider it important that Osiris' officers were engaged in fraudulent conduct, including misstatements of revenue and a scheme to improperly inflate revenue.

50.     In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as their own background, education, and job responsibilities, Jacoby and Law knew, were reckless in not knowing, and were negligent in not knowing that recording the Distributor A revenue described above during the first quarter of 2015 was improper and did not comply with GAAP.

### C.     Additional Deceptive Conduct Regarding Distributor A, Including Deceit of Auditors

51.     On or about March 20, 2015 and May 11, 2015, Jacoby and Law signed letters to the Auditor in connection with the Auditor's 2014 audit and first quarter 2015 review of Osiris' financial statements.  These letters are often referred to as management representation letters.  Through both of these letters, as well as their other interactions with the Auditors during the 2014 audit and first quarter 2015 review, both Jacoby and Law made false and misleading representations and material omissions regarding transactions with Distributor A, including falsely and misleadingly representing that:

a.     They had fulfilled their responsibilities for the preparation and fair presentation of the financial statements in accordance with GAAP;

b.     There were no material transactions that had not been properly recorded in the accounting records underlying the financial statements; and

c.     They had no knowledge of any fraud or suspected fraud involving management, employees who have significant roles in internal control, or

14

which could have a material effect on the financial statements.

52.      In the March 20, 2015 letter, Jacoby and Law also falsely represented that Osiris entered into an arrangement with Distributor A for the sale of Ovation during December 2014, which was false and misleading because persuasive evidence of the arrangement did not exist until January 2015.  In that letter, they also falsely represented that they had fulfilled their responsibilities for the design, implementation, and maintenance of internal controls relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

53.      In their interactions with the Auditor, Jacoby and Law also omitted the material information that Distributor A would not pay for product sold unless and until it sold the product to end-users.

54.      Additionally, during its third quarter 2015 review of Osiris' financial statements, the Auditor requested from Osiris, primarily through Jacoby and Law, detailed information regarding Osiris' revenue recognition practices.  In connection with the Auditor's request, Jacoby and Law, with assistance from others in Osiris' finance department, prepared accounting memoranda that purported to describe how Osiris recognized revenue with respect to its distributors.  In connection with these accounting memoranda, Jacoby and Law made material false and misleading statements and omissions to the Auditor and to Osiris' outside accounting consultant.

55.      Among other things, both Jacoby and Law participated in the drafting and editing of an accounting memorandum titled "[Distributor A] – Discussion of Revenue Related to Year End Ovation Sales," which was "from" Jacoby and another Osiris accountant.  This memorandum was an accounting record that was materially false and misleading because it

15

stated that by December 31, 2014, Distributor A agreed to purchase over $1 million in Ovation. Further, after both the Auditor and consultant commented that it was inappropriate to recognize revenue if Osiris was to be paid from the cash flow generated by Distributor A's sale of product, Jacoby and Law directly or indirectly edited the memo to omit this fact.

56.     Among other things, both Jacoby and Law also participated in the drafting and editing of an accounting memorandum titled "[Distributor A] – Q1 2015 Sale."  This memorandum was an accounting record that was materially false and misleading because it omitted the material fact that Osiris was to be paid from the cash flow generated by Distributor A's sale of product.

57.     In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as their background, education, and job responsibilities, Jacoby and Law knew, were reckless in not knowing, and were negligent in not knowing that their conduct was deceptive and resulted in additional materially false and misleading statements and omissions being made to Osiris' Auditor.

58.     Additionally, on or about November 4 or 5, 2015, Debrabandere directed Jacoby to come up with documentation that would satisfy Osiris' Auditor's requests for information regarding the December 2014 transaction with Distributor A. In response to this direction, on or about November 5, 2015, Jacoby created, signed, and sent to Distributor A's CEO a false record in the form of a letter backdated to nearly a year earlier – December 29, 2014 – that claimed to "memorialize" the terms of Osiris' sale to Distributor A of approximately $1.1 million in consignment inventory of product.  Jacoby emailed the letter to Distributor A from his personal, non-Osiris email account, stating:

> … attached is something that I think you should find and send to
> me in an email saying you had this in your file from late last year,

16

and just came across it – and that it does memorialize our several
phone conversations ….  Call me if necessary, but write a
wonderfully warm and convincing email, please – send it to my
Osiris email.

59.     Shortly thereafter, Jacoby caught a typo in the letter and sent a corrected version,

again from his personal, non-Osiris email account, with the subject line "Understanding."

60.     As requested by Jacoby, Distributor A's CEO then sent the backdated letter to

Jacoby's Osiris email account.  Jacoby replied by forwarding the email attaching the letter to the

CEO of Distributor A, Debrabandere, and others, and stating in part, "glad you found this and

glad you don't have the email retention policy that we do …."  The backdated letter and email

chain were then forwarded to the Auditor.

61.     In light of all of the above-alleged facts, including the circumstances leading to

the accounting entries, as well as his background, education, and job responsibilities, Jacoby

knew, was reckless in not knowing, and was negligent in not knowing that his conduct was

deceptive and resulted in additional materially false and misleading statements and omissions

being made to Osiris' Auditor.

### D.     Osiris' Restatement of the Distributor A Transactions

62.     In the third quarter of 2015, Osiris restated both the $1.1 million in revenue

recognized during the fourth quarter of 2014 and the $800,000 in revenue recognized during the

first quarter of 2015.

### III.     Osiris', Jacoby's, Law's, Debrabandere's, and Montgomery's Unlawful Conduct Related to Distributor B

63.     Distributor B is a Turkish company that was negotiating a potential distributor

agreement with Osiris in early 2015.  Based on the conduct of Jacoby, Law, and Debrabandere,

in the first quarter of 2015 Osiris improperly recognized at least $650,000 in revenue associated

with a purported product sale to Distributor B.  Further, Jacoby, Law, Debrabandere, and

17

Montgomery engaged in other deceptive conduct regarding Distributor B, including making material false and misleading statements and material omissions to the Auditor.

**A.      The Fraudulent and Improper Recognition of Revenue in the First Quarter of 2015**

64.     In early 2015, Osiris' sales department began negotiating a potential distributor agreement with Distributor B.  Osiris' efforts to finalize the terms of the deal became intense by the end of the first quarter 2015 because the revenue from the transaction with Distributor B was intended to meet Debrabandere's revenue target for that quarter.

65.     On or about March 27, 2015, Montgomery notified Debrabandere that Distributor B was "uncomfortable paying for" Grafix, but was willing to pay for Cartiform; however, Osiris did not have available enough Cartiform to fill a potential order by Distributor B.    Debrabandere responded "[w]e have flexibility.  We can include [G]rafix and later swap to [C]artiform when we have it[.]"  Debrabandere also understood that Distributor B did not plan to pay in full for its order and stated that it "would be great" if Distributor B was willing to make a partial payment.

66.     On March 31, 2015 – the last day of the first quarter – Jacoby executed a distribution agreement and closing checklist with Distributor B on behalf of Osiris.  That same day, Jacoby provided a copy of the executed agreements to Law in an email stating that Osiris would be receiving a wire for $100,000.

67.     The Effective Date of the distribution agreement was April 1, 2015.  Pursuant to the terms of the distribution agreement, Distributor B agreed to pay Osiris $100,000 by March 31, 2015 for an "initial stocking order of Cartiform 10mm" and agreed to acquire an additional $650,000 of Cartiform or Grafix by December 31, 2015; however, Osiris' agreement to ship the products to Distributor B was subject to Distributor B's ability to obtain required

18

licenses, certificates, and permits.  Further, at this time, Distributor B was not seeking regulatory approval to import Grafix into Turkey.

68.     On March 31, 2015, at Jacoby's direction, Osiris transferred 80 units of Cartiform and 844 units of Grafix from its production facility to a third-party storage facility in Baltimore, Maryland.  Osiris paid the fees associated with the transfer and storage of the product.  There was no set timeframe for delivery of the product.

69.     By the end of the first quarter 2015, Distributor B had paid Osiris only $100,000, had not received regulatory approval for the shipment of Osiris products into Turkey, had not physically received any Osiris product, and, upon information and belief, had not provided Osiris with a purchase order.

70.     Nonetheless, Osiris recognized $750,000 of revenue associated with sales of product to Distributor B for the first quarter of 2015.

71.     It was improper for Osiris to recognize at least $650,000 in revenue during the first quarter of 2015 because persuasive evidence of an arrangement did not exist, delivery had not been accomplished, and the revenue was not realized, realizable, or earned.

72.     The improper recognition of this revenue was material because a reasonable investor would consider it important to be informed of Osiris' actual revenue and would consider it important that Osiris' officers were engaged in fraudulent conduct, including misstatements of revenue and a scheme to improperly inflate revenue.

73.     In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as their background, education, and job responsibilities, Jacoby, Law, and Debrabandere knew, were reckless in not knowing, and were negligent in not knowing

in not knowing that recording the Distributor B revenue described above during the first quarter of 2015 was improper and did not comply with GAAP.

### B.   Osiris' Restatement of the $650,000

74.     In the third quarter of 2015, Osiris restated the $650,000 in revenue recognized during the first quarter of 2015.

### C.   Additional Deceptive Conduct Regarding Distributor B, Including Deceit of Auditors

#### 1.   First Quarter 2015

75.     As described above, Debrabandere directed that Osiris include Grafix in the purported sale to Distributor B, despite the fact that Distributor B did not want to purchase that product at the time.

76.     On or about May 11, 2015, Jacoby, Law, and Debrabandere, signed the management representation letter to the Auditor in connection with the Auditor's first quarter 2015 review of Osiris' financial statements.  Through this letter, as well as their other interactions with the Auditors during the first quarter 2015 review, Jacoby, Law, and Debrabandere made false and misleading representations and material omissions regarding transactions with Distributor B, including falsely and misleadingly representing that:

     a.     They had fulfilled their responsibilities for the preparation and fair presentation of the financial statements in accordance with GAAP;

     b.     There were no material transactions that had not been properly recorded in the accounting records underlying the financial statements; and

     c.     They had no knowledge of any fraud or suspected fraud involving management, employees who have significant roles in internal control, or which could have a material effect on the financial statements.

20

## 2.    Third Quarter 2015

77.     Additionally, to further the scheme to artificially inflate Osiris' revenue, Jacoby, Law, and Montgomery caused Osiris to book additional revenue from Distributor B for the third quarter of 2015.  They did so even though Distributor B still had not received regulatory approval to import the product into Turkey, had not paid the $650,000 contemplated by the April 1, 2015 contract, and had not requested additional product during the third quarter.  In fact, in connection with $1.7 million of the revenue, they booked revenue to the third quarter several weeks after the third quarter had ended.

78.     First, on September 30, 2015 – the last day of the third quarter – Jacoby and Law received email correspondence from Montgomery that proposed a "Turkey order" of $250,000. Montgomery explained that Osiris might "need" the proposed order if another distributor ordered less than $1 million in product.  Later in the day, Law emailed Osiris employees that "Turkey is coming, no [other distributor]."

79.     As a result of Jacoby's and Law's conduct, Osiris improperly booked $250,000 in revenue associated with Distributor B.

80.     Then, in October 2015, Jacoby, Law, and Montgomery caused Osiris to improperly book another $1.7 million in revenue that was purportedly associated with Distributor B.

81.     By mid-October, Jacoby, Law, and Montgomery were aware that revenue would have to be decreased due to the errors in accounting for revenue associated with Distributor C, which is explained below.  For example, on or about October 6, 2015, Montgomery notified another Osiris employee that he had learned that Osiris had not been booking the actual revenue received from Distributor C each quarter.  On or about October 9, 2015, Jacoby asked Law to

21

provide him with "the exact [Distributor C] number for each of the three quarters of this year – both our gross and then the actual." Law responded by providing a spreadsheet that included an analysis of "Revenue per [Distributor C]," "[Osiris] Revenue Recognized," and a "Difference" totaling over $1.7 million.

82.     On or about October 18, 2015 – eighteen days into the fourth quarter – Montgomery sent Jacoby a spreadsheet reflecting "the order we discussed …," which was for $1.7 million in product.

83.     On or about October 19, 2015, Jacoby emailed Law "[w]e need to talk about Turkey tomorrow – there is a $1.7M order that could/should be Q3[.]"

84.     The next day, Montgomery sent Jacoby an email that attached an unsigned letter dated September 30, 2015, which was named "Montgomery Q3 Order.docx." The letter falsely stated that Distributor B "would like to purchase" $1.7 million in Osiris products. Later in the day, Jacoby emailed Law a copy of this false letter, which was signed by Montgomery.

85.     After receiving the letter, Law instructed the assistant controller to work with another employee to book the $1.7 million. Law also provided the letter to Osiris' customer service department, which requested a copy "to serve as the purchase request[.]"

86.     Law also asked Montgomery for correspondence to support the $1.7 million "sale." In response, Montgomery claimed that the order was verbal.

87.     The backdated letter to Jacoby and signed by Montgomery was provided to Osiris' Auditor.

88.     Both the $250,000 and $1.7 million were reversed in November 2015, after Osiris' Auditor determined that it would not be appropriate for Osiris to recognize the revenue.

The revenue was not reflected in Osiris' financial statements filed with the SEC, but was reflected on Osiris' books and records before it was reversed.

89.     Jacoby and Law knew, were reckless in not knowing, and were negligent in not knowing that their conduct related to the booking of the $250,000 and $1.7 million for the third quarter of 2015 was fraudulent and deceptive and resulted in additional materially false and misleading statements and omissions being made to Osiris' Auditor.

90.     Montgomery knew and was reckless in not knowing that his conduct related to the booking of the $1.7 million for the third quarter of 2015 was fraudulent and deceptive and resulted in additional materially false and misleading statements and omissions being made to Osiris' Auditor.

### IV.     Osiris', Jacoby's, Law's, and Debrabandere's Fraudulent Conduct and Financial Misstatements Related to Distributor C

91.     During the first two quarters of 2015, as a result of the conduct of Jacoby and Law, Osiris improperly recognized revenue related to Distributor C by using the list price for BIO[4] instead of the actual sales price of the product to calculate revenue, resulting in a material overstatement of revenue.  Additionally, during the first three quarters of 2015, as a result of the conduct of Jacoby, Law, and Debrabandere, Osiris improperly recognized revenue on consigned product, resulting in a material overstatement of revenue.  Further, due to the conduct of Jacoby and Law, Osiris made additional false and misleading representations and material omissions regarding transactions with Distributor C.

92.     In December 2014, Osiris entered into an exclusive service agreement for BIO[4] with Distributor C.  Debrabandere signed the agreement, and Law and Jacoby were involved in assessing the accounting implications of the agreement and were aware, or should have been aware, of the agreement's terms.

93.     Pursuant to the agreement, Distributor C served as the exclusive marketer and promoter of BIO[4].  When a customer purchased the product, Distributor C would obtain an order from the customer and would provide certain details of the order to Osiris.  The customer would pay Distributor C.  Distributor C was entitled to a commission payment and administrative fee, which were to be netted out of the payments Distributor C then made to Osiris.

> **A.     The Fraudulent and Improper Recognition of Artificial Revenue in the First, Second, and Third Quarters of 2015 Due to Using the Wrong Price**

94.     Osiris' 2014 Form 10-K and its Forms 10-Q for the first and second quarters of 2015 represented that, in connection with its agreement with Distributor C, Osiris would recognize as revenue the amounts charged to customers for the product.  Osiris' Form 10-Q for the third quarter of 2015 stated that, "[t]he amount we recognize as revenue is based on our list price for [the product].  We reconcile and record the difference, if any, between the revenue previously recognized and the selling price when we receive the data from [Distributor C] on a monthly basis."

95.     Distributor C and Osiris had a "list price" for the product; however, Distributor C was permitted to sell the product at a discount to the list price as long as it paid Osiris a contractually-determined minimum average fee for the product.

96.     Distributor C did not provide Osiris with the specific price that it charged each customer.  Instead, Distributor C provided Osiris with reconciliation reports that provided Osiris with the actual revenue related to sales and data through which Osiris could calculate the average sales price ("ASP").

97.     Distributor C's first sales under the agreement occurred in February 2015 and Osiris recognized revenue stemming from those sales using the "list price."

98.     On or about March 13, 2015, Distributor C provided Osiris with a report that stated the actual revenue related to sales for February 2015.  Osiris' assistant controller forwarded the report to Jacoby and explained that the Distributor C report did not match the list price in Osiris' system, meaning that the revenue amount would not reconcile.

99.     On or about April 2, 2015, the assistant controller again expressed concern with using the list price to recognize revenue.  When Jacoby was notified about the concerns, he expressed frustration with the assistant controller, stating in part, "I've tried repeatedly to explain materiality to [the assistant controller] without success."  Jacoby then followed up with an email to Osiris employees, stating that list prices would be used "for all internal reporting."  Shortly thereafter, the assistant controller sent Jacoby, Law, and others a report that used list price to calculate "total sales" for the first quarter.

100.     On or about April 7, 2015 – a month before Osiris filed its Form 10-Q for the first quarter of 2015 – Distributor C provided Osiris' finance department with a document that stated the actual revenue related to sales for February and March 2015, and which provided data that would permit Osiris to calculate the ASP.  That same day, the report was provided to Jacoby and Law.

101.     For the second quarter of 2015, Osiris' finance department received reconciliation reports on or about May 7, 2015, June 5, 2015, and July 13, 2015.  The July 13, 2015 report was provided to Jacoby and Law prior to Osiris' filing of its Form 10-Q for the second quarter of 2015.  The July 13, 2015 report provided, among other information, the actual revenue related to sales for June 2015 and ASP information through June 2015.

102.     The information provided in these reports demonstrated that by relying on the list price to recognize revenue, Osiris was overstating its revenue.  Nonetheless, Osiris did not adjust

25

the revenue it had previously recorded for these transactions to the actual amounts earned. Instead, it continued to recognize revenue for the Distributor C transactions at the inflated list price, resulting in Osiris overstating revenue in the first and second quarters of 2015.

103.    For the third quarter of 2015, Osiris' finance department received reconciliation reports on or about August 11, 2015, September 9, 2015, and October 7, 2015.  Prior to Osiris' filing of its Form 10-Q for the third quarter of 2015, the August 11, 2015 and the October 7, 2015 reports were provided to Jacoby and Law and the September 2015 report was provided to Law.  The October 2015 report provided, among other information, the actual revenue related to sales for September 2015 and ASP information through September 2015.

104.    The information provided in these reports demonstrated that by relying on the list price to recognize revenue, Osiris was overstating its revenue.  Nonetheless, Osiris did not properly and adequately adjust the revenue it had previously recorded for these transactions to the actual amounts earned, resulting in Osiris overstating revenue in the third quarter of 2015.

105.    Osiris' recognition of this revenue during the first, second, and third quarters of 2015 did not comply with GAAP because the revenue was not realized, realizable, or earned.

106.    The improper recognition of this revenue was material because a reasonable investor would consider it important to be informed of Osiris' actual revenue and would consider it important that Osiris' officers were engaged in fraudulent conduct, including misstatements of revenue and a scheme to improperly inflate revenue.

107.    In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as their background, education, and job responsibilities, Jacoby and Law knew, were reckless in not knowing, and were negligent in not knowing that recording

the Distributor C revenue described above at list price was improper and did not comply with

GAAP.

> **B.      The Fraudulent and Improper Recognition of Revenue on Consigned
> Product in the First, Second, and Third Quarters of 2015**

108.      In Osiris' Forms 10-Q for the first, second, and third quarters of 2015, Osiris

disclosed that no revenue was recognized upon the placement of inventory into consignment;

instead, Osiris stated that for consigned product, revenue was recognized when Osiris received

appropriate notification that the product had been used in a surgical procedure.

109.      Pursuant to its agreement with Distributor C, Osiris would sometimes supply the

product to end-user customers on consignment.  For consignment inventory, title remained with

Osiris until the end-user customer used the inventory, at which point title and risk of loss

transferred to the customer.

110.      Despite the fact that some product shipments constituted consignment, by March

2015, Debrabandere directed that Osiris account for all shipments of the product as "sales" so

that revenue could be recognized.  In an email to Osiris employees, including Jacoby, Law, and

Montgomery, he explained, "[w]e cannot wait until we receive PO's to book these as a sale ….

Goal is to get to $1 million bio4 this quarter."

111.      Osiris employees, including the assistant controller, expressed concern about

booking all shipments as sales, even if the shipments were for consignment.  For example, the

assistant controller told Jacoby that she believed "we should record the shipment as consignment

and then do the accrual per the implant information if and when we receive it from Distributor

C."

112.      Jacoby and Law were both involved in follow-up communications with Osiris

employees regarding Debrabandere's direction to book consignment as sales.  Further, in March

2015, Law noted to Osiris employees, including Jacoby, that it was critical for Osiris to obtain the sales price from Distributor C; otherwise, Osiris would not be permitted to recognize "gross" (i.e., "top line" revenue).

113.    Nonetheless, Jacoby followed Debrabandere's instructions and directed that all shipments, including those that included consigned inventory, would be booked as a sale for which revenue would be recognized.  As a result, Osiris improperly overstated revenue by recognizing revenue on consigned inventory.

114.    It was improper for Osiris to recognize revenue on consigned product during the first, second, and third quarters of 2015 because the revenue was not realized, realizable, or earned.

115.    It was also improper for Osiris to recognize revenue on consigned product during the first, second, and third quarters of 2015 because it was in violation of Osiris' disclosed policy, which stated that Osiris did not recognize revenue on consigned product.

116.    The improper recognition of this revenue was material because a reasonable investor would consider it important to be informed of Osiris' actual revenue and would consider it important that Osiris' officers were engaged in fraudulent conduct, including misstatements of revenue and a scheme to improperly inflate revenue.

117.    In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as their background, education, and job responsibilities, Jacoby, Law, and Debrabandere knew, were reckless in not knowing, and were negligent in not knowing that recording revenue based on product consigned to Distributor C's customers as described above was improper and did not comply with GAAP.

C.    **Jacoby's and Law's Additional Misstatements Regarding
Distributor C**

118.    In its Form 10-Q for the third quarter of 2015 that was signed by Jacoby and Law

and also certified by Law, Osiris falsely and misleadingly stated "[d]uring the third quarter of

2015, the Company received true-up information from another distributor which showed the

average price for product sales during the year."

119.    Similarly, in its Form 8-K filed that was filed on November 20, 2015 and signed

by Law, Osiris falsely and misleadingly stated "[d]uring the third quarter of 2015, the Company

received final pricing information from another distributor which showed the average price for

product sale during the year."

120.    These statements were false and misleading because, in reality, Osiris' finance

department, including Jacoby and Law, received pricing information from Distributor C *before*

the third quarter.  In fact, Osiris had received form Distributor C pricing information that

included the ASP for the first and second quarters of 2015, *prior to the filing of Osiris' Forms

10-Q for those quarters*.  The third quarter Form 10-Q and November 20, 2015 Form 8-K also

failed to disclose the material information that Osiris was recognizing revenue on consigned

product and that Osiris' accounting errors related to Distributor C also included adjustments

necessary due to the recognition of revenue on consigned product.

121.    These statements were material because a reasonable investor would consider it

important to understand the total amount of revenue that was misstated by Osiris, the reasons for

the misstatement of revenue, and that Osiris' officers were engaged in fraudulent conduct,

including misstatements of revenue and a scheme to improperly inflate revenue.

122.    Jacoby and Law knew, were reckless in not knowing, and were negligent in not

knowing that Osiris received information regarding pricing prior to the third quarter and that

29

Osiris' accounting errors related to Distributor C were also caused by the recognition of revenue on consigned product and, therefore, that the statements in the Forms 10-Q and 8-K were false and misleading and omitted material information.

### D.   Additional Deceptive Conduct Regarding Distributor C, Including Deceit of Auditors

123.    On or about May 11, 2015, August 10, 2015, and November 16, 2015, Jacoby, Law, and Debrabandere signed or otherwise acknowledged management representation letters to the Auditor in connection with the Auditor's first, second, and third quarter 2015 reviews of Osiris' financial statements.  Through these letters, as well as their other interactions with the Auditors during the first, second, and third quarter 2015 reviews, Jacoby, Law, and Debrabandere made false and misleading representations and material omissions regarding transactions with Distributor C, including falsely and misleadingly representing that:

a.    They had fulfilled their responsibilities for the preparation and fair presentation of the financial statements in accordance with GAAP;

b.    There were no material transactions that had not been properly recorded in the accounting records underlying the financial statements; and

c.    They had no knowledge of any fraud or suspected fraud involving management, employees who have significant roles in internal control, or which could have a material effect on the financial statements.

124.    Jacoby, Law, and Debrabandere also omitted material information in communications with Osiris' Auditor, including that Osiris was recognizing revenue on product consigned to Distributor C's customers.  Jacoby and Law further omitted the material information that Osiris had received pricing information from Distributor C prior to the filing of its Forms 10-Q for the first and second quarter of 2015.

125.    Additionally, during its third quarter 2015 review of Osiris' financial statements, the Auditor requested from Osiris, primarily through Jacoby and Law, detailed information regarding Osiris' revenue recognition practices.  In connection with the Auditor's request, Jacoby and Law, with assistance from others in Osiris' finance department, prepared accounting memoranda that purported to describe how Osiris recognized revenue with respect to its distributors.  In connection with these accounting memoranda, Jacoby and Law made material false and misleading statements and omissions to the Auditor and to Osiris' outside accounting consultant.

126.    Among other things, the accounting memorandum titled "[Distributor C] Revenue Recognition Memo," which was reviewed by Jacoby and Law, was materially false and misleading because it stated that prior to September 2015, Distributor C did not share the ASP with Osiris and that Osiris booked revenue at list price because it did not have the ASP information.

127.    In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as their background, education, and job responsibilities, Jacoby, Law, and Debrabandere knew, were reckless in not knowing, and were negligent in not knowing that their conduct was deceptive and that their conduct resulted in additional materially false and misleading statements and omissions being made to Osiris' Auditor.

## V.    Osiris', Jacoby's, Law's, and Debrabandere's Fraudulent Conduct and Improper Accounting Related to Distributor D

128.    During 2014 and the first three quarters of 2015, based on the conduct of Debrabandere, Jacoby, and Law, Osiris improperly prematurely recognized revenue related to its sales to Distributor D.  Jacoby and Law also made material false and misleading statements and material omissions to Osiris' auditor regarding Distributor D.

31

        **A.**    **The Fraudulent and Improper Recognition of Revenue Throughout 2014 and the First Three Quarters of 2015**

129.    In 2014 and 2015, Distributor E, an entity associated with Distributor D, was one of Osiris' distributors.  Distributor E acted as a commissioned sales agent for Osiris by, among other things, selling Ovation and Grafix to Distributor D.

130.    Through Distributor E, Osiris sold product to Distributor D during 2014 and the first three quarters of 2015.  Osiris' sales to Distributor D were purportedly made with 30-day payment terms; however, upon information and belief, Osiris allowed Distributor D to withhold payment until product was resold to an end-user – often much later than 30 days.  Despite this contingency, Osiris repeatedly prematurely recognized revenue on product sold to Distributor D.

131.    Throughout 2014 and the first three quarters of 2015, Distributor D withheld payments beyond 30 days.  Debrabandere did not object to this practice and, upon information and belief, Debrabandere agreed and/or was aware that Distributor D would not make payments to Osiris until product was sold to an end-user.

132.    By 2015, Jacoby and Law knew, were reckless in not knowing, and should have known that Distributor D's payments were contingent, and/or that Osiris' allowance for Distributor D's doubtful accounts was insufficient.  Nonetheless, they failed to make any change in Osiris' accounting related to Distributor D.  In January 2015, Jacoby emailed the assistant controller and copied Law, attaching a copy of Distributor D's statement, which showed a balance due of over $7 million and over $2 million 120 days past due.  The subject line of the email read "Come Explain to me why [Debrabandere] shouldn't fire you, me and [Law] over the attached."

133.    During 2015, Osiris' Auditor was concerned about the extensive outstanding amounts due to Osiris from Distributor D.  Law informed the Auditor that Osiris had lost a

collections employee and falsely stated that the loss of the employee was causing the delay in collecting from Distributor D.  In July 2015, Jacoby reached out to Distributor E's CEO to notify him that Osiris had not received any payments from Distributor D since April 2015.

134.    In September 2015, the CEO of Distributor E notified Jacoby and Law that Distributor E was taking over all remaining accounts payable to Osiris by Distributor D for Ovation, and sent an "intended" 10-month payment plan for nearly $6 million.  With respect to Grafix, the CEO of Distributor E explained that he needed to speak with Debrabandere and noted that a doctor had been injured and had not been available for a few months.  When Law asked what the doctor's injury had to do with Osiris receiving payments for the product, the CEO of Distributor E responded, "[w]e have a territory of hospital (1 doctor as the key) and have helped out Osiris immensely with purchasing inventory above and beyond our needs so if you don't want us to return the Grafix then you need to understand where we can sell it.  [Debrabandere] and I are speaking tomorrow."  Jacoby forwarded this email to Debrabandere who responded "[y]up indeed."

135.    In connection with transactions with Distributor D, Osiris prematurely recognized over $14 million in revenue during 2014 and over $4 million in revenue during the first three quarters of 2015.  Osiris' recognition of this revenue during the quarters in which it was recognized was improper and did not comply with GAAP because Distributor D routinely paid Osiris belatedly and its payments to Osiris remained contingent upon the sale of product to end-users; therefore, the price was not fixed or determinable and revenue was not realized, realizable, or earned.

136.    The improper premature recognition of this revenue was material because a reasonable investor would consider it important to be informed of Osiris' actual revenue each

quarter and would consider it important that Osiris' officers were engaged in fraudulent conduct, including misstatements of revenue and a scheme to improperly inflate revenue.

137.     In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as his background, education, and job responsibilities, Debrabandere knew, was reckless in not knowing, and was negligent in not knowing that recording the Distributor D revenue described above during 2014 and the first three quarters of 2015 was improper and did not comply with GAAP.

138.     In light of all of the above-alleged facts, including the circumstances leading to the accounting entries, as well as their background, education, and job responsibilities, Jacoby and Law knew, were reckless in not knowing, and were negligent in not knowing that recording the Distributor D revenue described above during the first three quarters of 2015 was improper and did not comply with GAAP.

**B.      Osiris' Restatement of the 2014 Revenue Associated with Distributor D**

139.     In 2016, Osiris filed a Form 10-K/A for the year ended 2014.  Through this amended Form 10-K, Osiris restated approximately $7.6 million in revenue associated with Distributor D.

**C.      Other Deceptive Conduct Regarding Distributor D, Including Deceit of Auditors**

140.     On or about May 12, 2014, August 11, 2014, November 10, 2014, March 20, 2015, May 11, 2015, August 10, 2015, and November 16, 2015, Debrabandere signed or otherwise acknowledged letters to the Auditor in connection with the Auditor's 2014 audit and first, second, and third quarters of 2014 and 2015 reviews of Osiris' financial statements. Through these letters, as well as other interactions with the Auditors, Debrabandere made false and misleading representations and material omissions regarding transactions with Distributor D,

34

including falsely and misleadingly representing that:

     a.     He had fulfilled his responsibilities for the preparation and fair presentation of the financial statements in accordance with GAAP;

     b.     There were no material transactions that had not been properly recorded in the accounting records underlying the financial statements; and

     c.     He had no knowledge of any fraud or suspected fraud involving management, employees who have significant roles in internal control, or which could have a material effect on the financial statements.

141.    Additionally, in the March 20, 2015 letter, which was in connection with the Auditor's 2014 audit of Osiris' financial statements, Debrabandere falsely represented that he had fulfilled his responsibilities for the design, implementation, and maintenance of internal controls relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

142.    Additionally, in the May 11, 2015, August 10, 2015, and November 16, 2015 letters, which were in connection with the Auditor's first, second, and third quarter 2015 reviews of Osiris' financial statements, Debrabandere falsely represented that there were no material transactions, side agreements, or other arrangements (either written or oral) that had not been disclosed to the Auditor and properly recorded in the accounting records underlying the financial statements.

143.    On or about May 11, 2015, August 10, 2015, and November 16, 2015, Jacoby and Law signed or otherwise acknowledged letters to the Auditor in connection with the Auditor's first, second, and third quarters of 2015 reviews of Osiris' financial statements.  Through these letters, as well as other interactions with the Auditors, Jacoby and Law made false and

misleading representations and material omissions regarding transactions with Distributor D,
including falsely and misleadingly representing that:

    a.    They had fulfilled their responsibilities for the preparation and fair
presentation of the financial statements in accordance with GAAP;

    b.    There were no material transactions, side agreements, or other
arrangements (either written or oral) that have not been disclosed to the
Auditor and properly recorded in the accounting records underlying the
financial statements; and

    c.    They had no knowledge of any fraud or suspected fraud involving
management, employees who have significant roles in internal control, or
which could have a material effect on the financial statements.

144.   In 2015, Law also misrepresented to the Auditor that Osiris' collections issues
with Distributor D were the result of the loss of a collections employee.

145.   Jacoby also misrepresented to the Auditor that Distributor D was an end-user of
Osiris' products.

146.   Additionally, Debrabandere, Jacoby, and Law did not notify the Auditor that
Distributor E took over the payment obligations of Distributor D in September 2015, nor did they
disclose Distributor E's intended payment plan to the Auditor.  In fact, in October 2015 – the
month after the payment plan was established – Jacoby responded to an Auditor inquiry
regarding the relationship between Distributor D and Distributor E by stating that Osiris was
unaware of a "formal relationship" between the entities.

147.   In light of all of the above-alleged facts, including the circumstances leading to
the accounting entries, as well as their background, education, and job responsibilities, Jacoby,

Law, and Debrabandere knew, were reckless in not knowing, and were negligent in not knowing that their conduct was deceptive, including that their conduct resulted in additional materially false and misleading statements and omissions being made to Osiris' Auditor.

## VI.    Osiris, Jacoby, Law, and Debrabandere Made Material False and Misleading Statements

148.    As a result of the fraudulent and improper entries as described above, Osiris' financial results, including its revenue, were materially misstated for every period in 2014 and the first three quarters of 2015.  For the first, second, and third quarters of 2015, Osiris' SEC filings also contained misstatements and omissions regarding its revenue recognition policies and practices.

### A.    First Quarter of 2014

149.    On May 12, 2014, Osiris filed its Form 10-Q for the first quarter of 2014.  This filing materially misstated Osiris' revenue as a result of the fraudulent and improper accounting related to Distributor D.  Further, on May 12, 2014, Osiris filed a Form 8-K that included a press release that announced its financial results and attached financial tables for the first quarter of 2014.  The Form 8-K misstated Osiris' revenue.  For example, the first "highlight" in the press release was "[i]ncreased product revenue for the quarter to $10.1 million – a 146% increase over the first quarter of 2013 and 25% from previous quarter."  Osiris' revenue was also misstated in its May 13, 2014 earnings call when, among other things, Debrabandere stated, "I'm really pleased with the quarter-over-quarter growth rate of 25%, or revenue of $10 million."

150.    Osiris and Debrabandere made the misstatements concerning Osiris' revenue in the Form 10-Q for the first quarter of 2014, as well as the misstatements in the May 12, 2014 Form 8-K and May 13, 2014 earnings call.  As Osiris' CEO, Debrabandere reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results in the Form

10-Q, Form 8-K, and earnings call.  In addition, Debrabandere certified Osiris' Form 10-Q and announced Osiris' false revenue during the earnings call.

### B.      Second Quarter of 2014

151.      On August 11, 2014, Osiris filed its Form 10-Q for the second quarter of 2014. This filing materially misstated Osiris' revenue as a result of the fraudulent and improper accounting related to Distributor D.  Further, on August 7, 2014, Osiris filed a Form 8-K that included a press release that announced its financial results and attached financial tables for the second quarter of 2014.  The Form 8-K misstated Osiris' revenue for the second quarter of 2014. For example, the first "highlight" in the press release was "[i]ncreased product revenue for the quarter to $13.3 million – a 151% increase over Q2 2013 and a 32% increase over previous quarter."  Further, Debrabandere was quoted as stating "[i]t is very encouraging that the quarter-after-quarter revenue growth of 32% was largely driven by our new wound care sales team." Osiris' revenue was also misstated in its August 7, 2014 earnings call when, among other things, Debrabandere stated, "[w]e continued to experience very healthy growth and reported sales of $13.3 million …."

152.      Osiris and Debrabandere made the misstatements concerning Osiris' revenue in the Form 10-Q for the second quarter of 2014, as well as the misstatements in the August 7, 2014 Form 8-K and earnings call.  As Osiris' CEO, Debrabandere reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results in the Form 10-Q, Form 8-K, and earnings call.  In addition, Debrabandere certified Osiris' Form 10-Q and announced Osiris' false revenue during the earnings call.

### C.      Third Quarter of 2014

153.      On November 10, 2014, Osiris filed its Form 10-Q for the third quarter of 2014. This filing materially misstated Osiris' revenue as a result of the fraudulent and improper

accounting related to Distributor D.  Further, on November 7, 2014, Osiris filed a Form 8-K that included a press release that announced its financial results and attached financial tables for the third quarter of 2014.  The Form 8-K misstated Osiris' revenue for the third quarter of 2014.  For example, the first "highlight" in the press release stated, in part, "[i]ncreased product revenue for the quarter to $17.2 million – a 29% increase over previous quarter and 150% increase over the same period last year."  Osiris' revenue was also misstated in its November 7, 2014 earnings call when, among other things, Debrabandere stated "[f]irst, from a revenue perspective we had another record quarter for Osiris.  We continued to experience very healthy growth and reported sales of $17.2 million for the quarter …."

154.    Osiris and Debrabandere made the misstatements concerning Osiris' revenue in the Form 10-Q for the third quarter of 2014, as well as the misstatements in the November 7, 2014 Form 8-K and earnings call.  As Osiris' CEO, Debrabandere reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results in the Form 10-Q, Form 8-K, and earnings call.  In addition, Debrabandere certified Osiris' Form 10-Q and announced Osiris' false financial results during the earnings call.

### D.    Fourth Quarter and Year End 2014

155.    On March 20, 2015, Osiris filed its Form 10-K for 2014.  This filing materially misstated Osiris' revenue for the fourth quarter of 2014 and the year ended December 31, 2014 as a result of the fraudulent and improper accounting related to Distributor A and Distributor D.  Further, on March 5, 2015, Osiris filed a Form 8-K that included a press release that announced its financial results and attached financial tables for 2014.  The Form 8-K misstated Osiris' revenue for 2014.  For example, the first "highlight" in the press release stated "[r]eported product revenue of $59.9 million in 2014, up 146% from the prior year" and a later highlight stated, "[p]roduct revenue for the quarter rose to $19.3 million, a 138% increase compared to

39

fourth quarter 2013." Osiris' revenue was also misstated in its March 5, 2015 earnings call when, among other things, Debrabandere stated "[f]rom a revenue perspective, Osiris grew 146% year-over-year from $24 million in 2013 to about $60 million in 2014" and stated that fourth quarter revenue was $19.3 million. In addition, Jacoby stated that Osiris' revenue for the fourth quarter of 2014 was $19.3 million and that revenue was almost $60 million for fiscal year 2014.

156.     Osiris, Debrabandere, Jacoby, and Law made the misstatements concerning Osiris' revenue in the Form 10-K for the fourth quarter and year ended December 31, 2014, as well as the misstatements in the March 5, 2015 Form 8-K and earnings call. As Osiris' CEO, Debrabandere reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results in the Form 10-K, Form 8-K, and earnings call. In addition, Debrabandere signed and certified Osiris' Form 10-K and announced Osiris' false financial results during the earnings call. As Osiris' CFO, Jacoby reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results in the Form 10-K, Form 8-K, and earnings call. In addition, Jacoby signed and certified Osiris' Form 10-K and announced Osiris' false financial results during the earnings call. As Osiris' PAO, Law reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results in the Form 10-K, Form 8-K, and earnings call. In addition, Law signed Osiris' Form 10-K.

### E.     First Quarter of 2015

157.     On May 11, 2015, Osiris filed its Form 10-Q for the first quarter of 2015. This filing materially misstated its revenue as a result of the fraudulent and improper accounting related to Distributor A, Distributor B, Distributor C, and Distributor D. The Form 10-Q also contained material misstatements and omissions regarding Osiris' policy and practices regarding its recognition of revenue for transactions arranged by Distributor C, falsely stated that Osiris

would recognize as revenue the amounts charged to customers for the product, falsely stated that Osiris did not recognize revenue upon the placement of inventory into consignment, and omitted the material information that Osiris was recognizing revenue on all shipments of product for transactions arranged by Distributor C.  Further, on May 8, 2015, Osiris filed a Form 8-K that included a press release that announced its financial results and attached financial tables for the first quarter of 2015.  The Form 8-K misstated Osiris' revenue for the first quarter of 2015.  For example, the first "highlight" in the press release stated, "[i]ncreased product revenue for the quarter to $21.0 million – a 109% increase over Q1 2014."  Osiris' revenue was also misstated in its May 5, 2015 earnings call when, among other things, Debrabandere stated that Osiris "ended the first quarter with $21 million in revenue, more than double the revenue of $10 million in the first quarter of last year" and Jacoby reiterated that revenue "grew to $21 million" in the first quarter of 2015.

158.    Osiris, Debrabandere, Jacoby, and Law made the misstatements in the Form 10-Q for the first quarter of 2015, as well as the misstatements in the May 8, 2015 Form 8-K and May 5, 2015 earnings call.  As Osiris' CEO, Debrabandere reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition, Debrabandere certified Osiris' Form 10-Q and announced Osiris' false financial results during the earnings call.  As Osiris' CFO, Jacoby reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition, Jacoby signed and certified Osiris' Form 10-Q and discussed Osiris' false financial results during the earnings call.  As Osiris' PAO, Law reviewed, approved, and was ultimately

41

responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition, Law signed Osiris' Form 10-Q.

### F.      Second Quarter of 2015

159.      On August 10, 2015, Osiris filed its Form 10-Q for the second quarter 2015.  This filing materially misstated its revenue as a result of the fraudulent and improper accounting related to Distributor A, Distributor B, Distributor C, and Distributor D.  The Form 10-Q also contained material misstatements and omissions regarding Osiris' policy and practices regarding its recognition of revenue for transactions arranged by Distributor C, falsely stated that Osiris would recognize as revenue the amounts charged to customers for the product, falsely stated that Osiris did not recognize revenue upon the placement of inventory into consignment, and omitted the material information that Osiris was recognizing revenue on all shipments of product for transactions arranged by Distributor C.  Further, on August 5, 2015, Osiris filed a Form 8-K that included a press release that announced its financial results and attached financial tables for the second quarter of 2015.  The Form 8-K misstated Osiris' revenue for the second quarter of 2015. For example, the first "highlight" in the press release stated, "[i]ncreased product revenue for the quarter to $23.7 million – a 78% increase over Q2 2014 and a 13% increase over previous quarter."  Osiris' artificially inflated revenue was also misstated in its August 8, 2015 earnings call when, among other things, both Debrabandere and Jacoby stated that reported revenues were $23.7 million for the second quarter 2015.

160.      Osiris, Debrabandere, Jacoby, and Law made the misstatements concerning Osiris' revenue in the Form 10-Q for the second quarter 2015, as well as the misstatements in the August 5, 2015 Form 8-K and August 8, 2015 earnings call.  As Osiris' CEO, Debrabandere reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition,

Debrabandere certified Osiris' Form 10-Q and announced Osiris' false financial results during the earnings call.  As Osiris' CFO, Jacoby reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition, Jacoby signed and certified Osiris' Form 10-Q and discussed Osiris' false financial results during the earnings call.  As Osiris' PAO, Law reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition, Law signed Osiris' Form 10-Q.

### G.    Third Quarter of 2015

161.    Osiris' Form 10-Q for the third quarter of 2015 materially misstated its revenue as a result of the fraudulent and improper accounting related to Distributor C and Distributor D. The Form 10-Q also contained material misstatements and omissions regarding Osiris' policy and practices regarding its recognition of revenue in connection with transactions arranged by Distributor C, falsely stated that Osiris reconciled and recorded the difference, if any, between revenue previously recognized and the selling price when it received data from Distributor C on a monthly basis, falsely stated that Osiris did not recognize revenue upon the placement of inventory into consignment, and omitted the material information that Osiris was recognizing revenue on all shipments of product for transactions arranged by Distributor C.  The Form 10-Q also materially misstated information relevant to Osiris' restatement of prior periods, and included material omissions related to its restatement of prior periods.  Further, on November 6, 2015, Osiris filed a Form 8-K that included a press release that announced its financial results and attached financial tables for the third quarter of 2015.  The Form 8-K misstated Osiris' revenue for the third quarter of 2015.  For example, the first "highlight" in the press release stated, "[r]eported product revenue for the quarter of $24.3 million."  Osiris' revenue was also

misstated in its November 6, 2015 earnings call when, among other things, both Debrabandere and Law stated that revenues for the third quarter of 2015 were $24.3 million.

162.   Osiris, Debrabandere, Jacoby, and Law made the misstatements concerning Osiris' revenue in the Form 10-Q for the third quarter of 2015, as well as the misstatements in the November 6, 2015 Form 8-K and earnings call.  As Osiris' CEO, Debrabandere reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition, Debrabandere certified Osiris' Form 10-Q and announced Osiris' false financial results during the earnings call.  As Osiris' CFO, Law reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition, Law signed and certified Osiris' Form 10-Q and discussed Osiris' false financial results during the earnings call.  As Osiris' PAO, Jacoby reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported financial results and statements made in the Form 10-Q, Form 8-K, and earnings call.  In addition, Jacoby signed Osiris' Form 10-Q.

### H.   November 20, 2015 Form 8-K

163.   On November 20, 2015, Osiris filed a Form 8-K addressing the restatement of its financial results.  As detailed above, this Form 8-K included materially misstated information relevant to its restatement of prior periods and included material omissions related to its restatement of prior periods.

164.   Osiris, Jacoby, and Law made the misstatements and omissions concerning Osiris' restatement of prior periods in the November 20, 2015 Form 8-K.  As Osiris' CFO, Law reviewed, approved, and was ultimately responsible for the accuracy of Osiris' reported restatement information in the Form 8-K.  In addition, Law signed the Form 8-K.  As Osiris'

44

PAO, Jacoby reviewed, approved, and was ultimately responsible for the accuracy of Osiris'
reported restatement information in the Form 8-K.

## I.      The Misstatements Were Material

165.    Osiris' misstatements of revenue, misstatements and omissions regarding its
revenue recognition policies and practices, and misstatements and omissions regarding its
restatement information were material.  Osiris' revenue was important to the reasonable investor.
Revenue was an important financial metric to the company, analysts utilized the metric in
assessing the performance of the company, and it would have been important to a reasonable
investor to know Osiris' actual revenue, the fact that Osiris misstated revenue, and that Osiris did
not recognize revenue as described in its SEC filings.  It also would have been important to a
reasonable investor to know about the fraudulent scheme in which Osiris' executives engaged.

## J.      The Defendants Acted with Scienter and Negligently

166.    In light of all of the above-alleged facts, including the circumstances leading to
the accounting entries, as well as their own background, education, and job responsibilities,
Jacoby, Law, and Debrabandere knew, were reckless in not knowing, and were negligent in not
knowing that the financial misstatements were improper and did not comply with GAAP.  The
knowledge, recklessness, and negligence of Osiris' former executives may be imputed to Osiris.

## VII.     Osiris, Jacoby, Law, Debrabandere, and Montgomery Engaged in a Scheme to Defraud

167.    As detailed above, the Defendants engaged in a scheme to defraud Osiris'
investors from learning about Osiris' true financial condition, to conceal Osiris' improper
accounting practices from its Auditor, and to artificially increase revenue to show quarter-over-
quarter revenue growth.  The scheme materially impacted Osiris' financial statements.

168.   As detailed above, Jacoby, Law, and Debrabandere all made misstatements in Osiris' SEC filings.

169.   As detailed above, Jacoby committed additional, deceptive acts in furtherance of this scheme.  Among other things, Jacoby:

a.    Created and backdated a false document regarding the fourth quarter 2014 transaction with Distributor A and caused the backdated and false document to be provided to the Auditor;

b.    Caused Osiris to store and pay for Grafix that Distributor B had not ordered for the first quarter 2015 transaction;

c.    Caused Osiris to book $1.9 million in revenue in the third quarter of 2015 related to purported transactions with Distributor B when Distributor B had not requested additional product in the third quarter, had not obtained regulatory approval to import any product, and had not yet purchased the product Osiris was storing in connection with the first quarter 2015 transaction;

d.    Ignored information from Distributor C that showed that Distributor C was not selling product at the price or quantity Osiris used to record revenue, and told the Auditor that Osiris did not receive this information prior to the third quarter of 2015;

e.    Accepted a side agreement with Distributor D and Distributor E, whereby Distributor E took over Distributor D's delinquent payment obligations in September 2015, without disclosing the agreement or its implications to the Auditor;

46

     f.     Falsely represented to the Auditor that there was no relationship between Distributor E and Distributor D and that Distributor D was an end-user of Osiris' products;

     g.     Knew, recklessly failed to understand, and should have known about the above-referenced improper and unsupported accounting entries as detailed above, and the manner in which they were booked, but failed to inform Osiris' Audit Committee or Board of Directors about the improper entries;

     h.     Failed to disclose to investors Osiris' true financial condition;

     i.     Signed the management representation letter to Osiris' auditor for the year ended 2014 and the first, second, and third quarters of 2015, which letters contained material false and misleading statements and omissions;

     j.     Provided to Osiris' accounting consultant and Auditor accounting memos regarding Distributors A and C that included false and misleading statements and material omissions;

     k.     Signed Osiris' Form 10-K for the year ended 2014 and Forms 10-Q for the first, second, and third quarters of 2015 and Osiris' Forms 8-K filed on March 5, 2015, May 8, 2015, and August 5, 2015; and

     l.     In May 2015, profited by selling stock at inflated prices.

170.    As detailed above, Law also committed additional, deceptive acts in furtherance of this scheme.  Among other things, Law:

     a.     Caused Osiris to book $1.9 million in revenue in the third quarter of 2015 related to purported transactions with Distributor B when Distributor B had not requested additional product in the third quarter, had not obtained

47

regulatory approval to import any product, and had not yet purchased the
product Osiris was storing in connection with the first quarter 2015
transaction;

b.　　Ignored information from Distributor C that showed that Distributor C was
not selling product at the price or quantity Osiris used to record revenue,
and told the Auditor that Osiris did not receive this information prior to
the third quarter of 2015;

c.　　Knew of a side agreement with Distributor D and Distributor E, whereby
Distributor E took over Distributor D's delinquent payment obligations in
September 2015, without disclosing the agreement or its implications to
the Auditor;

d.　　Knew about the above-referenced improper and unsupported accounting
entries as detailed above, and the manner in which they were booked, but
failed to inform Osiris' Audit Committee or Board of Directors about the
improper entries;

e.　　Failed to disclose to investors Osiris' true financial condition;

f.　　Signed the management representation letter to Osiris' auditor for the year
ended 2014 and the first, second, and third quarters of 2015, which
contained material false and misleading statements and omissions;

g.　　Provided to Osiris' accounting consultant and Auditor accounting memos
regarding Distributors A and C that included material false and misleading
statements and material omissions; and

48

h.      Signed Osiris' Form 10-K for the year ended 2014 and Forms 10-Q for the
first, second, and third quarters of 2015 and Form 8-Ks filed on
November 6, 2015 and November 20, 2015.

171.    As detailed above, Debrabandere committed additional, deceptive acts in
furtherance of this scheme.  Among other things, Debrabandere:

a.      Directed that Osiris substitute product Distributor B had not ordered for
the first quarter 2015 transaction.

b.      Made large sales of product to Distributor D without notifying the Auditor
of the agreement that Osiris would not pursue collection of payments until
Distributor D made sales to end-users;

c.      Knew of a side agreement with Distributor D and Distributor E, whereby
Distributor E took over Distributor D's delinquent payment obligations in
September 2015, without disclosing the agreement or its implications to
the Auditor;

d.      Knew about the above-referenced improper and unsupported accounting
entries as detailed above, and the manner in which they were booked, but
failed to inform Osiris' Audit Committee or Board of Directors about the
improper entries;

e.      Failed to disclose to investors Osiris' true financial condition;

f.      Signed the management representation letter to Osiris' Auditor for the
first, second, and third quarters of 2014 and 2015 and the year ended 2014,
which contained material false and misleading statements and omissions;
and

g.      Signed Osiris' Form 10-K for the fourth quarter and year ended

December 31, 2014.

172.    In light of all of the above-alleged facts, as well as their background, education,

and job responsibilities, Jacoby, Law, and Debrabandere knew, were reckless in not knowing,

and were negligent in not knowing, that their conduct was deceptive, resulted in misstatements,

and resulted in materially false and misleading statements and omissions being made to Osiris'

Auditor.

173.    As detailed above, Montgomery substantially assisted this scheme by engaging in

the following deceptive conduct:  (a) purporting to arrange a sale to Distributor B for the third

quarter of 2015, (b) creating a false and backdated letter purporting to document the sale, and

(c) indirectly providing the document to the Auditor.

174.    In light of all of the above-alleged facts, as well as his background, education, and

job responsibilities, Montgomery knew and was reckless in not knowing that his conduct was

deceptive and resulted in materially false and misleading statements and omissions being made

to Osiris' Auditor.

**VIII.     Osiris, Jacoby, and Debrabandere Obtained Money or Property From Their Fraudulent Practices**

175.    Osiris has an employee stock plan entitled Osiris Therapeutics, Inc. Amended and

Restated 2006 Omnibus Plan ("Plan"), pursuant to which employees were granted stock options

or other awards.  Pursuant to the Plan, Osiris has filed Forms S-8 to register shares of stock,

including the most recent Form S-8, which was filed on October 3, 2014.  This Form S-8

incorporated by reference Osiris' prior and subsequent periodic filings.  During the relevant

period, Osiris obtained money as a result of its fraudulent conduct through sales of stock upon

option exercise.

50

176.    Jacoby obtained money as a result of his fraudulent conduct.  In May 2015, Jacoby sold Osiris' stock at artificially inflated prices, earning profits from his fraud.  In addition, in 2015, Jacoby obtained salary and bonus from Osiris and, upon information and belief, his 2015 salary increase and bonus were influenced by Osiris' 2014 financial metrics, including revenue.

177.    Debrabandere obtained money as a result of his fraudulent conduct. Debrabandere obtained salary and bonus from Osiris and, upon information and belief, his 2015 salary increase and bonus were influenced by Osiris' 2014 financial metrics, including revenue.

**IX.    Jacoby, Law, Debrabandere, and Montgomery Misled Osiris' Auditor**

178.    Jacoby, Law, Debrabandere, and Montgomery also misled Osiris' Auditor about Osiris' financial statements, Osiris' transactions with Distributors A, B, C, and D, and Osiris' revenue recognition practices in connection with the Auditor's audit and review work during the time period relevant to this Complaint.

179.    As discussed above, among other things, Debrabandere, Jacoby, and Law signed management representation letters through which they made material false and misleading statements and omissions to the Auditor, including falsely and misleadingly representing that:

    a.    They had fulfilled their responsibilities for the preparation and fair presentation of the financial statements in accordance with GAAP;

    b.    They had fulfilled their responsibilities for the design, implementation, and maintenance of internal controls relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error;

    c.    There were no material transactions, side agreements, or other arrangements that had not been disclosed to the Auditor and properly

51

recorded in the accounting records underlying the financial statements; and

    d.    They had no knowledge of any fraud or suspected fraud involving management, employees who have significant roles in internal control, or which could have a material effect on the financial statements.

180.    Among other things, Jacoby, Law, and Debrabandere also omitted material information in communications with Osiris' Auditor, including that Osiris was recognizing revenue on product consigned to Distributor C's customers and that Osiris had agreed or otherwise knew that Distributors A and D would not pay Osiris for product sold to them unless and until Distributors A and D sold the product to end-users.

181.    Among other things, Jacoby and Law also made material false and misleading statements and omissions to the Auditor by:

    a.    During the year-end 2014 audit of Osiris' financial statements and the third quarter 2015 review of Osiris' financial statements, falsely representing that the $1.1 million transaction with Distributor A occurred in December 2014.

    b.    During the third quarter 2015 review of Osiris' financial statements, falsely and misleadingly telling Osiris' Auditor that Osiris had not obtained information from Distributor C reflecting actual revenue generated from product sales until the third quarter 2015.

    c.    During the first and second quarters of 2015, omitting the material information that by the end of the first quarter, Distributor B had paid Osiris only $100,000, had not received regulatory approval for the

shipment of Osiris products into a foreign country, and had not physically

received any of Osiris' products.

182.     Among other things, Montgomery made material false and misleading statements

and omissions to the Auditor by, directly or indirectly, providing the false and backdated letter

regarding the purported $1.7 million transaction with Distributor B to the Auditor.

183.     Jacoby's, Law's, Debrabandere's, and Montgomery's misstatements and

omissions to the Auditor were material because a reasonable auditor would consider it important

that:

    a.   Osiris' financial statements were not prepared in accordance with GAAP;

    b.   Osiris' accounting officers had not fulfilled their responsibilities for the design,

       implementation, and maintenance of internal controls;

    c.   There were material transactions that were not properly recorded; and

    d.   Osiris officers were engaged in fraud and were aware of fraud.

A reasonable auditor would also consider it important to obtain complete and accurate

information regarding Osiris' relationships with and revenue recognition practices regarding all

of its distributors and sales agents.  Osiris' Auditor relied upon the management representation

letter and considered the statements made within the letter important to its audit and quarterly

reviews of Osiris' financial statements.

## X.      Osiris Violated Various Reporting Provisions of the Federal Securities Laws; and Jacoby, Law, and Debrabandere Aided and Abetted Those Violations

184.     Section 13(a) of the Exchange Act and Rules 13a-1, 13a-11, and 13a-13

thereunder require issuers like Osiris to file reports with the SEC containing such information as

the SEC's rules prescribe.  Further, Rule 12b-20 requires that an issuer's statement or report

contain such further material information as may be necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

185.    As detailed above, Osiris violated these reporting provisions by filing false and misleading annual, quarterly, and current reports during the time period at issue in this Complaint.  Specifically, as detailed above, Osiris filed false and misleading Forms 10-Q for the first, second, and third quarters of 2014 and 2015, a false and misleading Form 10-K for 2014, and false and misleading Forms 8-K on May 12, 2014, August 7, 2014, November 7, 2014, March 5, 2015, May 8, 2015, August 5, 2015, November 6, 2015, and November 20, 2015.

186.    As also detailed above, Jacoby, Law, and Debrabandere aided and abetted these violations by knowingly or recklessly providing substantial assistance to those violations. Among other things, Jacoby, Law, and Debrabandere provided false and misleading information for Osiris' reports and omitted material information from Osiris' reports.  Further, Jacoby signed and certified Osiris' Form 10-K for the year ended 2014 and Forms 10-Q for the first and second quarters of 2015, and signed Osiris' Form 10-Q for the third quarter of 2015 and Osiris' Forms 8-K filed on March 5, 2015, May 8, 2015, and August 5, 2015; Law signed Osiris' Form 10-K for the year ended 2014 and Forms 10-Q for the first and second quarters of 2015 and Form 8-Ks filed on November 6, 2015 and November 20, 2015, and signed and certified Osiris' Form 10-Q for the third quarter of 2015; and Debrabandere certified Osiris' Forms 10-Q for the first, second, and third quarters of 2014 and 2015, and signed and certified Osiris' Form 10-K for 2014.

XI.    **Osiris Violated Various Books and Records and Internal Controls Provisions of the Federal Securities Laws; and Jacoby, Law, and Debrabandere Aided and Abetted Those Violations**

187.    Section 13(b)(2)(A) of the Exchange Act requires issuers like Osiris to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the company's transactions and dispositions of the assets.  Section 13(b)(2)(B) of the Exchange Act

requires issuers like Osiris to devise and maintain a system of sufficient internal accounting controls.

188.     As detailed above, Osiris violated these provisions.  Osiris did not have effective controls over revenue recognition, including a lack of effective controls:

> a.  To ensure that revenue was not recognized prior to the company obtaining written documentation demonstrating that persuasive evidence of an arrangement existed and the terms were fixed or determinable;
>
> b.  To ensure that adequate analysis and documentation existed for distributor contracts to ensure timely and accurate recording of revenue in accordance with GAAP;
>
> c.  To ensure proper compliance with bill and hold criteria; and
>
> d.  To ensure appropriate accounting for consignment arrangements.

189.     Jacoby, Law, and Debrabandere aided and abetted Osiris' violations of these provisions by knowingly or recklessly providing substantial assistance to those violations. Among other things, Jacoby, Law, and Debrabandere failed to implement an appropriate system of internal accounting controls; Jacoby, Law, Debrabandere, and Montgomery engaged in the conduct described above that led to Osiris' false accounting books, records, and accounts; Jacoby, Law, and Montgomery created and used falsified and backdated records including letters purporting to support transactions and accounting memoranda that included false and misleading statements; and Jacoby, Law, and Debrabandere participated in, failed to take action to prevent, and failed to disclose to the Auditor or Osiris' audit committee the extra-contractual or undocumented terms of arrangements with distributors.

**XII.      The Defendants Violated Internal Control and Record Falsification Provisions of the Federal Securities Laws**

190.    Section 13(b)(5) of the Exchange Act prohibits any person from knowingly circumventing or failing to implement a system of internal accounting controls or knowingly falsifying books, records, or accounts.  Similarly, Rule 13b2-1 prohibits any person from directly or indirectly falsifying or causing to be falsified books, records, or accounts.

191.    Among other things, Osiris did not have effective controls over revenue recognition, including a lack of effective controls:  (i) to ensure that revenue was not recognized prior to the company obtaining written documentation demonstrating that persuasive evidence of an arrangement existed and the terms were fixed or determinable; (ii) to ensure that adequate analysis and documentation existed for distributor contracts to ensure timely and accurate recording of revenue in accordance with GAAP; (iii) to ensure proper compliance with bill and hold criteria; (iv) to ensure appropriate accounting for consignment arrangements.

192.    Jacoby, Law, and Debrabandere knowingly failed to implement an appropriate system of internal accounting controls.  Jacoby, Law, and Debrabandere were responsible for Osiris' internal control structure, and were aware of the issues underlying Osiris' internal control failures and misstated accounts.

193.    Further, internal controls were circumvented by the Defendants.  For example, Jacoby, Law, and Montgomery created and used falsified and backdated records including letters purporting to support transactions and accounting memoranda that included false and misleading statements.  Also, Jacoby, Law, and Debrabandere participated in, failed to take action to prevent, and failed to disclose to the Auditor or audit committee the extra-contractual or undocumented terms of arrangements with distributors and signed false management representation letters to the Auditor.

56

194.    Based on the conduct of the Defendants, Osiris' books, records, and accounts were falsified by improperly accounting for Osiris' revenue, as detailed above.  Additionally, Jacoby and Montgomery directly or indirectly falsified or caused to be falsified books, records, or accounts of Osiris by creating and using falsified, backdated documents.

### XIII.    Jacoby, Law, and Debrabandere Made False Certifications in Connection with Osiris' Forms 10-Q and 10-K

195.    Rule 13a-14 of the Exchange Act requires an issuer's principal executive and financial officers to sign certifications which are included as exhibits to each periodic report containing financial statements.  As required by Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX") [15 U.S.C. § 7241(a)], the certifications must state that, among other things:  (1) the signing officer has reviewed the report; (2) based on the officer's knowledge, the report does not contain any untrue statement of material fact or omit to state any material fact; and (3) based on the officer's knowledge, the financial statements, and other financial information included in the report, fairly present, in all material respects, the financial condition, results of operations and cash flows for the period presented.

196.    As detailed above, Jacoby certified Osiris' Form 10-K for the period ended December 31, 2014 and Forms 10-Q for the first and second quarters of 2015.  Jacoby violated Exchange Act Rule 13-a14 in Osiris' 2014 Form 10-K, filed on March 20, 2015, and Forms 10-Q for the first and second quarters of 2015, filed on May 11, 2015 and August 10, 2015, by falsely certifying paragraphs 2 and 3 of the SOX 302 certifications.

197.    As detailed above, Law certified Osiris' Form 10-Q for the third quarter of 2015. Law violated Exchange Act Rule 13-a14 in Osiris' Form 10-Q for the third quarter of 2015, filed on November 16, 2015, by falsely certifying paragraphs 2 and 3 of the SOX 302 certifications.

198.     As detailed above, Debrabandere certified Osiris' Form 10-K for 2014 and Osiris'

Forms 10-Q for the first, second, and third quarters of 2014 and 2015.  Debrabandere violated

Exchange Act Rule 13-a14 in Osiris' 2014 Form 10-K, filed on March 20, 2015, and Forms

10-Q for the first, second, and third quarters of 2014 and 2015, filed on May 12, 2014, August 7,

2014, November 7, 2014, May 11, 2015, August 10, 2015, and November 16, 2015, by falsely

certifying paragraphs 2 and 3 of the SOX 302 certifications.

**XIV.        Debrabandere was a Control Person of Osiris**

199.     Debrabandere had significant control over Osiris during the time period relevant

to this Complaint.

200.     Debrabandere was CEO of Osiris.  He exercised control over Osiris' general

operations, set and communicated Osiris' financial targets, and signed and/or certified Osiris'

period filings.  Moreover, as detailed above, he exercised control over much of the specific,

violative activity that is the subject of this Complaint, including transactions with Distributor B,

C, and D, and had a substantial role in that conduct.

## FIRST CLAIM FOR RELIEF

**Fraud – Violation of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]
(Against Osiris, Jacoby, Law, And Debrabandere)**

201.     The SEC realleges and incorporates by reference paragraphs 1 through 200, as

though fully set forth herein.

202.     By virtue of the foregoing, Osiris, Jacoby, Law, and Debrabandere, directly or

indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce,

or of the mails, or of a facility of a national securities exchange, in connection with the purchase

or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue

statements of material fact or omitted to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person.

203.    By virtue of the foregoing, Osiris, Jacoby, Law, and Debrabandere, directly or indirectly, violated, and unless restrained and enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(b)].

## SECOND CLAIM FOR RELIEF

### Fraud – Aiding and Abetting Osiris' Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5] (Against Montgomery and, Alternatively, Against Jacoby, Law, and Debrabandere)

204.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

205.    By virtue of the foregoing, Osiris directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person.

206.    By engaging in the conduct described above, Montgomery aided and abetted the fraud violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) of Osiris, in that he knowingly or recklessly provided substantial assistance to Osiris in committing these violations.

207.    By engaging in the conduct described above, Jacoby, Law, and Debrabandere each aided and abetted the fraud violations of Section 10(b) of the Exchange Act and Rule 10b-

5(a), (b), and (c) of Osiris, in that they knowingly or recklessly provided substantial assistance to Osiris in committing these violations.

208.    By reason of the foregoing, Jacoby, Law, Debrabandere, and Montgomery have aided and abetted and, unless restrained and enjoined, will again aid and abet, violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### THIRD CLAIM FOR RELIEF

**Fraud - Control Person Liability under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for Osiris' Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5] (Alternatively, Against Debrabandere)**

209.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

210.    Osiris, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person.

211.    Debrabandere, as CEO of Osiris, exercised control over the management, general operations and polices of Osiris, as well as the specific activities upon which Osiris' violations are based.

212.    By reason of the foregoing, Debrabandere is liable as a control person under Section 20(a) of the Exchange Act for Osiris' violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## FOURTH CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities - Violations of
Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]
(Against Osiris, Jacoby, Law, and Debrabandere)**

213.     The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

214.     By engaging in the conduct described above, Osiris, Jacoby, and Debrabandere have, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, (1) employed a device, scheme or artifice to defraud with scienter; (2) obtained money or property by means of an untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (3) engaged in transactions, practices or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

215.     By engaging in the conduct described above, Law has, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, (1) employed a device, scheme or artifice to defraud with scienter and/or (3) engaged in transactions, practices or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

216.     By reason of the foregoing, Osiris, Jacoby, Law, and Debrabandere violated and, unless restrained and enjoined, will again violate Section 17(a) of the Securities Act.

## FIFTH CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities – Aiding and Abetting Osiris' Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]**
**(Against Montgomery as to 17(a)(1) and (3); Against Law as to 17(a)(2) and alternatively against Law as to 17(a)(1) and (3); and Alternatively, against Jacoby and Debrabandere as to 17(a)(1), (2), and (3))**

217.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

218.    Osiris, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, (1) employed a device, scheme or artifice to defraud with scienter; (2) obtained money or property by means of an untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (3) engaged in transactions, practices or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

219.    By engaging in the conduct described above, Montgomery aided and abetted the fraud violations of Section 17(a)(1) and 17(a)(3) of the Securities Act of Osiris, in that he knowingly or recklessly provided substantial assistance to Osiris in committing these violations.

220.    By engaging in the conduct described above, Jacoby, Law, and Debrabandere each aided and abetted Osiris' violations of Section 17(a)(1), (2), and (3) of the Securities Act, in that they knowingly or recklessly provided substantial assistance to Osiris in committing these violations.

221.    By reason of the foregoing, Jacoby, Law, Debrabandere, and Montgomery have aided and abetted and, unless restrained and enjoined, will again aid and abet, violations of Section 17(a) of the Securities Act.

## SIXTH CLAIM FOR RELIEF

**Deceit of Auditors – Violations of Rule 13b2-2 of the Exchange Act
[17 C.F.R. § 240.13b2-2]
(Against Jacoby, Law, Debrabandere, and Montgomery)**

222.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

223.    By engaging in the conduct described above, Jacoby, Law, Debrabandere, and Montgomery each directly or indirectly made or caused to be made materially false or misleading statements to an accountant in connection with audits, reviews or examinations of Osiris' financial statements or in the preparation or filing of Osiris' documents or reports required to be filed with the SEC; or omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with audits, reviews or examinations of financial statements or in the preparation or filing of Osiris' documents or reports required to be filed with the SEC.

224.    By reason of the foregoing, Jacoby, Law, Debrabandere, and Montgomery each violated and, unless restrained and enjoined, will again violate Rule 13b2-2 of the Exchange Act.

## SEVENTH CLAIM FOR RELIEF

**Falsified Books, Records, or Accounts – Violations of Section 13(b)(5) of the Exchange Act
and Rule 13b2-1 Thereunder [15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1]
(Against Jacoby, Law, Debrabandere, and Montgomery)**

225.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

226.    By engaging in the conduct described above, Jacoby, Law, Debrabandere, and Montgomery knowingly circumvented or knowingly failed to implement a system of internal

accounting controls to assure that Osiris' financial statements were prepared in conformity with

GAAP or knowingly falsified or caused to be falsified books, records or accounts of Osiris.

227.    By reason of the foregoing, Jacoby, Law, Debrabandere, and Montgomery

violated and, unless restrained and enjoined, will again violate Section 13(b)(5) of the Exchange

Act and Rule 13b2-1 thereunder.

## EIGHTH CLAIM FOR RELIEF

**False Certifications – Violations of Rule 13a-14 of the Exchange Act**
**[17 C.F.R. § 240.13a-14]**
**(Against Jacoby, Law, and Debrabandere)**

228.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as

though fully set forth herein.

229.    As detailed above, Jacoby certified Osiris' Form 10-K for the period ended

December 31, 2014 and Forms 10-Q for the first and second quarters of 2015.  Jacoby violated

Exchange Act Rule 13-a14 in Osiris' 2014 Form 10-K, filed on March 20, 2015, and Forms

10-Q for the first and second quarters of 2015, filed on May 11, 2015 and August 10, 2015, by

falsely certifying paragraphs 2 and 3 of the SOX 302 certifications.

230.    As detailed above, Law certified Osiris' Form 10-Q for the third quarter of 2015.

Law violated Exchange Act Rule 13-a14 in Osiris' Form 10-Q for the third quarter of 2015, filed

on November 16, 2015, by falsely certifying paragraphs 2 and 3 of the SOX 302 certifications.

231.    As detailed above, Debrabandere certified Osiris' Form 10-K for 2014 and Osiris'

Forms 10-Q for the first, second, and third quarters of 2014 and 2015.  Debrabandere violated

Exchange Act Rule 13-a14 in Osiris' 2014 Form 10-K, filed on March 20, 2015, and Forms

10-Q for the first, second, and third quarters of 2014 and 2015, filed on May 12, 2014, August 7,

2014, November 7, 2014, May 11, 2015, August 10, 2015, and November 16, 2015, by falsely

certifying paragraphs 2 and 3 of the SOX 302 certifications.

232.    By reason of the foregoing, Jacoby and Debrabandere violated and, unless

restrained and enjoined, will again violate Rule 13a-14 of the Exchange Act.

## NINTH CLAIM FOR RELIEF

**False SEC Filings – Violations of Section 13(a) of the Exchange Act and Rules 12b-20,
13a-1, 13a-11, and 13a-13 [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1,
240.13a-11, and 240.13a-13]
(Against Osiris)**

233.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as

though fully set forth herein.

234.    Osiris, which was an issuer of securities registered pursuant to Section 12 of the

Exchange Act, filed materially false and misleading current reports, materially false and

misleading quarterly reports, and a materially false and misleading annual report with the SEC

that made untrue statements of material fact or omitted to state material facts necessary in order

to make the statements made, in light of the circumstances under which they were made, not

misleading, in violation of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11,

and 13a-13.

235.    By reason of the foregoing, Osiris violated and, unless restrained and enjoined,

will again violate Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-

13 thereunder.

## TENTH CLAIM FOR RELIEF

**False SEC Filings – Aiding and Abetting Osiris' Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11 and 13a-13 [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13] (Against Jacoby, Law, and Debrabandere)**

236.     The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

237.     Osiris, which was an issuer of securities registered pursuant to Section 12 of the Exchange Act, filed materially false and misleading current reports, materially false and misleading quarterly reports, and a materially false and a misleading annual report with the SEC that made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13.

238.     By engaging in the conduct described above, Jacoby, Law, and Debrabandere each aided and abetted the reporting violations of Osiris, in that they knowingly or recklessly provided substantial assistance to Osiris in committing these reporting violations.

239.     By reason of the foregoing, Jacoby, Law, and Debrabandere each aided and abetted and, unless restrained and enjoined, will again aid and abet, violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder.

## ELEVENTH CLAIM FOR RELIEF

**False SEC Filings – Control Person Liability under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for Osiris' Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11 and 13a-13 [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13]
(Alternatively, Against Debrabandere)**

240.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

241.    Osiris, which was an issuer of securities registered pursuant to Section 12 of the Exchange Act, filed materially false and misleading current reports, materially false and misleading quarterly reports, and a materially false and misleading annual report with the SEC that made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13.

242.    Debrabandere, as CEO of Osiris, exercised control over the management, general operations and polices of Osiris, as well as the specific activities upon which Osiris' violations are based.

243.    By reason of the foregoing, Debrabandere is liable as a control person under Section 20(a) of the Exchange Act for Osiris' violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder.

## TWELFTH CLAIM FOR RELIEF

**False Books and Records – Violations of Section 13(b)(2)
of the Exchange Act [15 U.S.C. § 78m(b)(2)]
(Against Osiris)**

244.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

67

245.    By engaging in the conduct described above, Osiris, in violation of Section 13(b)(2) of the Exchange Act, failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected Osiris' transactions and dispositions of its assets and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and any other criteria applicable to such statements.

246.    By reason of the foregoing, Osiris violated and, unless restrained and enjoined, will again violate Section 13(b)(2).

**THIRTEENTH CLAIM FOR RELIEF**

**False Books and Records – Aiding and Abetting of Osiris' Violations of Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)]**
**(Against Jacoby, Law, and Debrabandere)**

247.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

248.    By engaging in the conduct described above, Osiris, in violation of Section 13(b)(2) of the Exchange Act, failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected Osiris' transactions and dispositions of its assets and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and any other criteria applicable to such statements.

249.    By engaging in the conduct described above, Jacoby, Law, and Debrabandere aided and abetted Osiris, in that they knowingly or recklessly provided substantial assistance to Osiris in committing these violations.

250.    By reason of the foregoing, Jacoby, Law, and Debrabandere aided and abetted and, unless restrained and enjoined, will again aid and abet, violations of Section 13(b)(2).

### FOURTEENTH CLAIM FOR RELIEF

**False Books and Records – Control Person Liability under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for Osiris' Violations of Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)]**
**(Alternatively, Against Debrabandere)**

251.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

252.    By engaging in the conduct described above, Osiris, in violation of Section 13(b)(2) of the Exchange Act, failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected Osiris' transactions and dispositions of its assets and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and any other criteria applicable to such statements.

253.    Debrabandere, as CEO of Osiris, exercised control over the management, general operations and polices of Osiris, as well as the specific activities upon which Osiris' violations are based.

254.    By reason of the foregoing, Debrabandere is liable as a control person under Section 20(a) of the Exchange Act for Osiris' violations of Section 13(b)(2) of the Exchange Act.

## FIFTEENTH CLAIM FOR RELIEF

**Failure to Reimburse – Violation of Section 304(a) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243(a)]**
**(Against Jacoby and Debrabandere)**

255.    The SEC realleges and incorporates by reference paragraphs 1 through 200, as though fully set forth herein.

256.    As a result of the misconduct described above, Osiris filed reports that were in material non-compliance with its financial reporting requirements under the federal securities laws from May 12, 2014, when Osiris' Form 10-Q for the first quarter of 2014 was filed until November 16, 2015, when Osiris' Form 10-Q for the third quarter of 2015 was filed.  Osiris' material non-compliance with its financial reporting requirements resulting from the misconduct required the company to prepare accounting restatements.

257.    Jacoby and Debrabandere received or obtained, during the statutory time periods established by the Sarbanes-Oxley Act of 2002, bonuses, incentive and/or equity-based compensation or profits from their sale of Osiris stock, which they have failed to reimburse Osiris.

258.    The SEC has not exempted Jacoby or Debrabandere, pursuant to Section 304(b) of the Sarbanes-Oxley Act of 2002, from its application under Section 304(a).

259.    By engaging in the conduct described above, Jacoby and Debrabandere violated, and unless ordered to comply will continue to violate, Section 304(a) of the Sarbanes-Oxley Act of 2002.

## RELIEF SOUGHT

**WHEREFORE**, the SEC respectfully requests that this Court:

### I.

Find that each of the Defendants committed the violations alleged in this Complaint;

### II.

Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining each of the Defendants from violating, directly or indirectly, the laws and rules they are alleged to have violated in this Complaint;

### III.

Order that Jacoby, Law, Debrabandere, and Montgomery be permanently prohibited from acting as an officer or director of any public company;

### IV.

Order that each of the Defendants disgorge any and all ill-gotten gains, together with pre-judgment interest, derived from the improper conduct set forth in this Complaint;

### V.

Order that each of the Defendants pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 20(d) of the Exchange Act [15 U.S.C. § 78u(d)], in an amount to be determined by the Court, plus post-judgment interest;

### VI.

Order that Jacoby and Debrabandere reimburse Osiris for all bonuses, incentive-based and equity-based compensation, and/or profits realized from their sale of Osiris stock pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243(a)];

71

## VII.

Grant such other relief as this Court may deem just or appropriate.

## <u>JURY DEMAND</u>

The SEC demands a trial by jury on all claims so triable.

Respectfully submitted this 27th day of February 2018.

_____/s/_____
Danielle R. Voorhees
Polly A. Atkinson
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000
voorheesd@sec.gov
atkinsonp@sec.gov

**CERTIFICATE OF SERVICE**

I certify that on February 27, 2018, I caused the foregoing document to be electronically filed with the Court using the ECF system, which will send notification of such filing to ECF-registered counsel. I further certify that on February 27, 2018, I caused a copy of the foregoing document to be emailed and mailed via UPS to Defendant Philip R. Jacoby, Jr.


                              /s/
                              Danielle R. Voorhees