IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SECURITIES AND EXCHANGE COMMISSION    *

       v.    *    Case No. 17-cv-03230-CCB

<u>OSIRIS THERAPEUTICS, INC., *et al*.</u>,    *

           *

<u>PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM IN OPPOSITION TO DEFENDANT DEBRABANDERE'S
MOTION TO DISMISS</u>

<u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     LEGAL STANDARD ........................................................................................3

III.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES THAT
        DEBRABANDERE ENGAGED IN SECURITIES FRAUD ............................5

        A.      The Amended Complaint Sets Forth The "What," "When," And
                "Where" Of The Fraud...........................................................................7

        B.      The Amended Complaint Sets Forth The "Who" Of The Fraud. ...........7

        C.      The Amended Complaint Explains "How" Or "Why"
                Debrabandere's Conduct Was Fraudulent. ............................................8

                1.      The Amended Complaint's Allegations Regarding
                        Distributor B Are Sufficiently Pled. .........................................9

                2.      The Amended Complaint's Allegations Regarding
                        Distributor C Are Sufficiently Pled. ........................................12

                3.      The Amended Complaint's Allegations Regarding
                        Distributor D Are Sufficiently Pled. ........................................14

        D.      The SEC Has Sufficiently Pled Scienter...............................................15

IV.     THE AMENDED COMPLAINT ADEQUATELY ALLEGES
        AIDING AND ABETTING.................................................................................19

V.      THE AMENDED COMPLAINT ADEQUATELY ALLEGES
        DEBRABANDERE'S CONTROL PERSON LIABILITY .............................21

VI.     THE AMENDED COMPLAINT ADEQUATELY ALLEGES
        DEBRABANDERE'S LIABILITY UNDER SOX 304....................................23

VII.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES
        DEBRABANDERE'S INTERNAL CONTROLS AND CERTIFICATION
        VIOLATIONS ....................................................................................................25

        A.      Section 13(b)(5) And Rule 13b2-1 Are Adequately Alleged. ...............25

        B.      Rule 13a-14 Is Adequately Alleged.......................................................27

VIII.   THE AMENDED COMPLAINT ADEQUATELY ALLEGES
        DEBRABANDERE'S VIOLATIONS OF RULE 13b2-2 ...............................................28

IX.     CONCLUSION.................................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Aaron v. SEC*, 446 U.S. 680 (1980) ......................................................... 6

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002) ........................ 22

*Andrew v. Clark*, 561 F.3d 261 (4th Cir. 2009) ..................................... 5, 11

*A.S. Abell Co. v. Chell*, 412 F.2d 712 (4th Cir. 1969) ................................ 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... 4

*Baxter v. Palmigiano,* 425 U.S. 308, 319 (1976).....................................25

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).........................4

*Bosiger v. US Airways, Inc.*, 510 F.3d 442 (4th Cir. 2007) .......................... 4

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ................. 23

*Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) ....... 13, 14, 16

*Cadle Co. v. Schultz*, 779 F. Supp. 392 (N.D. Tex. 1991) .......................... 24

*Cohen v. Viray,* 622 F.3d 188, 193 (2d Cir. 2010) ...................................24

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435 (4th Cir. 2011) ....... 3-4

*ePlus Tech., Inc. v. Aboud*, 313 F.3d 166 (4th Cir. 2002) .......................... 25

*Erickson v. Pardus*, 551 U.S. 89 (2007) .......................................... 3, 4, 7

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ................................. 3

*Goodman v. PraxAir, Inc.*, 494 F.3d 458 (4th Cir. 2007) ................... 23Ha r

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) .......... 16

*Hoffman v. United States*, 341 U.S. 479 (1951) ........................................ 8

*Howard v. Everex Sys.*, 228 F.3d 1057 (9th Cir. 2000) ............................. 11

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012) ........... 23

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474 (S.D.N.Y. 2004) ..... 17

*In re Ciena Corp. Sec. Litig.*, 99 F. Supp. 2d 650 (D. Md. 2000) ............... 16

*In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 614 (D. Md. 2010) .............. 22

*In re Dennis J. Malouf,* Securities. Act Release No. 10115, 2016 WL 4035575 (July 27, 2016) . 6

*In re Edmond*, 934 F.2d 1304 (4th Cir. 1991) ........................................ 10

*In re ForceField Energy Inc. Sec. Litig.*, 15 Civ. 3020, 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) ............................................................. 22

*In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90 (D.C. Cir. 2015) ................. 22

*In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) ............... 16

*In re Mutual Funds Inv. Litig.*, 566 F.3d 111, 129–30 (4th Cir. 2009),
*rev'd on other grounds sub nom. Janus Capital Grp., Inc. v. First Derivative Traders,*
131 S. Ct. 2296 (2011)......................................................................................22

*In re Orbital Scis. Corp. Secs. Litig.)*, 58 F. Supp. 2d 682 (E.D. Va. 1999) ..............................16

*In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334 (D. Md. 2004) ..........5, 22-23

*In re ViroPharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458 (E.D. Pa. 2014) ......................................22

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541 (4th Cir. 2017) ..............................16

*Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) ..........................................................12

*Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824 (E.D. Va. 2014) ................22

*McConville v. U.S. SEC*, 465 F.3d 780 (7th Cir. 2006) ..............................................................28

*Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674 (6th Cir. 1988) ........................................24

*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993) ..........................................................3

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)..............4

*Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999) ......................................................................3

*Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338 (4th Cir. 2003) ...........................16-17

*Republican Party of N.C. v. Martin*, 980 F.2d 943 (4th Cir. 1992) ............................................3

*Saravia v. Select Portfolio Servicing, Inc.*, No. 1:13-cv-01921-RDB, 2014 WL 2865798 (D. Md. June 23, 2014) ............................................................................................................................13

*Schatz v. Rosenberg*, 943 F.2d 485 (4th Cir. 1991) ....................................................................19

*Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974) ............................................24

*SEC v. Falor*, No. 1:09-CV-5644, 2010 WL 3385510 (N.D. Ill. Aug. 19, 2010) ......................3

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) ....................................................22

*SEC v. Guardian Oil & Gas, Inc.*, No. 3:14-cv-1533-BN, 2014 WL 7330451 (N.D. Tex. Dec. 23, 2014) ..........................................................................................................................3, 17, 19

*SEC v. ICN Pharms., Inc.*, 84 F. Supp. 2d 1097 (C.D. Cal. 2000) ............................................3

*SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708 (D.N.J. 2005) ................................................3

*SEC v. Lucent Techs., Inc.*, 2005 WL 1206841 (D.N.J. 2005) ..................................................17

*SEC v. Oglebay*, No. HAR 90-2385, 1991 WL 149890 (D. Md. July 31, 1991) .................16, 19

*SEC v. Patel*, Civ. No. 07-cv-39-SM, 2008 WL 781912, at *12 (DN.H. Mar. 24, 2008) ..............11

*SEC v. Pentagon Capital Mgmt. Pub. Ltd. Co.*, 612 F. Supp. 2d 241 (S.D.N.Y. 2009) ..............3

*SEC v. Pirate Inv'r L.L.C.*, 580 F.3d 233 (4th Cir. 2009) ....................................................6, 10

*SEC v. Prater*, 296 F. Supp. 2d 210 (D. Conn. 2003) ................................................................3

*Spencer v. Earley*, 278 F. App'x 254 (4th Cir. 2008) ................................................................4

*Svezzese v. Duratek, Inc.*, No. CIVIL ACTION NO. MJG-01-1830, 2002 U.S. Dist. LEXIS 20967 (D. Md. Apr. 30, 2002) ......................................................................................................10

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ....................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007) ............................................ 16

*Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012) ................................................. 4

*Wilkof v. Caraco Pharm. Labs., Ltd.*, No. 09-12830, 2010 WL 4184465 (E.D. Mich. Oct. 21, 2010) ................................................................................................. 22

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) ............................................ 24

## UNITED STATES CODE

15 U.S.C. § 77q(a) ......................................................................................... passim

15 U.S.C. § 78j(b) ......................................................................................... passim

15 U.S.C. §§ 78u –4(b)(2) ............................................................................. 16

15 U.S.C. § 7243(a) ....................................................................................... 23

## RULES

Fed. R. Civ. P. 8 ........................................................................................... passim

Fed. R. Civ. P. 9(b) ....................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ................................................................................. 3, 4, 5

17 C.F.R. § 240.10b-5 .................................................................................... passim

17 C.F.R. § 240.12b-20 .................................................................................. 21

17 C.F.R. § 240.13a-1 .................................................................................... 21

17 C.F.R. § 240.13a-11 .................................................................................. 21

17 C.F.R. § 240.13a-13 .................................................................................. 21

17 C.F.R. § 240.13b2-1 .................................................................................. 25

17 C.F.R. § 240.13b2-2 .................................................................................. 28

## I. INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") submits this memorandum in opposition to Defendant Dr. Lode Debrabandere's ("Defendant" or "Debrabandere") Motion to Dismiss (ECF No. 17) and Supplemental Memorandum in Support of Motion to Dismiss (ECF No. 31) (collectively, "Motion"). Debrabandere's Motion seeks dismissal of all of the Commission's claims against him. In doing so, Debrabandere fails to address the proper legal standards, ignores numerous relevant paragraphs of the Amended Complaint,[1] and improperly attempts to raise factual disputes. The Commission has sufficiently pled its claims as to Debrabandere, the Motion should be denied, and the case should proceed to discovery.

Debrabandere does not challenge that a financial fraud occurred at Osiris and that the fraud resulted in misstatements in nearly two years' worth of SEC filings and earnings calls. Instead, Debrabandere claims to not understand the Commission's allegations regarding *his role* in the numerous securities laws violations that stem from this conduct. Debrabandere suggests that the Commission charged him simply because he was the CEO of a public company that engaged in fraud. That is wrong. As the Amended Complaint makes clear, while there are also charges arising from his role as CEO, Debrabandere was directly involved in the fraudulent scheme at Osiris, as well as certain distributor transactions that led to the misrepresentations and omission in Osiris' SEC filings.

---

[1] Debrabandere filed his Motion to Dismiss on January 31, 2018 (ECF No. 17). On February 28, 2018, the Court granted the SEC's motion to amend its Complaint (ECF No. 29) and the Amended Complaint was docketed on March 13, 2018 (ECF No. 38). The Amended Complaint maintains the same paragraph numbering as the original Complaint, but added allegations regarding Debrabandere to paragraphs 58 and 60. Therefore, while Debrabandere's Motion generally refers to the "Complaint" and the SEC's Response refers to the "Amended Complaint," all paragraph citations are consistent.

Specifically, as the CEO of Osiris, Debrabandere set aggressive "top line" revenue targets and "engaged in a scheme to defraud Osiris' investors from learning about Osiris' true financial condition, to conceal Osiris' improper accounting practices from its Auditor, and to artificially increase revenue to show quarter-over-quarter revenue growth." Am. Compl. ¶¶ 4 – 6, 167, 171. Debrabandere was directly involved in the distributor transactions through which the financial fraud at Osiris occurred. With respect to Distributor B, Debrabandere determined that Osiris could "swap" product that Distributor B did not want for product that it might want at a later point, and that Osiris would accept less than full payment for product. *Id*. ¶¶ 65, 75.[2] With respect to Distributor C, Debrabandere directed that all shipments related to Distributor C be booked as "sales," despite having executed the contract with Distributor C which provided for consignment transactions and certifying SEC filings that stated that revenue was not recognized on consignment. *Id*. ¶¶ 92, 108-110. Further, he participated in, or failed to take action to prevent or disclose the extra-contractual or undocumented terms of arrangements with Distributor D. *Id*. ¶¶ 27, 131. Debrabandere also made misrepresentations and omitted material information to Osiris' Auditor, including directing Jacoby to come up with documentation to satisfy the Auditor's questions regarding a fraudulent transaction with Distributor A. *Id*. ¶¶ 58, 60, 63, 76, 123, 124, 128, 140, 141, 142, 146. Finally, Debrabandere signed and/or certified all of the

---

[2] The Amended Complaint quotes from emails, some of which Debrabandere attaches to his Motion. While Debrabandere accuses the Commission of "selective quotation[s]," see Mot. at 17, the Amended Complaint's quotations are entirely appropriate. It is unnecessary to set forth entire email chains in a complaint. For purposes of the Court's consideration of the Motion, the Commission does not dispute the authenticity of the Exhibits to the Motion. However, attached as Exhibit 1 is the email chain relevant to the facts added to paragraphs 58 and 60 of the Amended Complaint, regarding Distributor A. Exhibit 1 demonstrates that the fraudulent letter was forwarded to the Auditor. In Exhibit 1, the Commission has redacted contact information for non-defendant witnesses.

relevant SEC filings, and made false statements during Osiris' earnings calls. *See id.* ¶¶ 18, 149-162.

The Commission's Amended Complaint is legally sufficient with respect to all of its claims and Debrabandere is on sufficient notice of the claims against him. The Commission therefore respectfully requests that the Court deny the Motion in its entirety.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, a party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).[3]

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, take the facts asserted therein as true, and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *E.I. du*

---

[3] The more rigorous pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, which go beyond the requirements of Fed. R. Civ. P. 9(b), only apply to securities fraud actions brought by private plaintiffs and do not apply to a case brought by the SEC. *See, e.g.*, *SEC v. Guardian Oil & Gas, Inc.*, No. 3:14-cv-1533-BN, 2014 WL 7330451, at *7 (N.D. Tex. Dec. 23, 2014); *SEC v. Falor*, No. 1:09-cv-5644, 2010 WL 3385510 (N.D. Ill. Aug. 19, 2010); *SEC v. Pentagon Capital Mgmt. PLC*, 612 F. Supp. 2d 241, 263-64 (S.D.N.Y. 2009); *SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005); *SEC v. Prater*, 296 F. Supp. 2d 210, 216 (D. Conn. 2003); *SEC v. ICN Pharms., Inc.*, 84 F. Supp. 2d 1097, 1099 (C.D. Cal. 2000).

*Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) ("like the district court, [we] draw all reasonable inferences in favor of the plaintiff") (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009)). The court must disregard any contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). And a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

To survive a motion to dismiss, a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (internal quotation marks omitted). A plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-15 (2002). Moreover, to state a claim, "a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "[W]hile a complaint comprised solely of labels and conclusions is insufficient to satisfy this rule, specific facts, elaborate arguments, or fanciful language are not necessary." *Spencer v. Earley*, 278 F. App'x 254, 259 (4th Cir. 2008) (citing *Erickson*, 551 U.S. at 127).

In sum, a Rule 12(b)(6) motion should not be granted unless a complaint does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. To determine whether a complaint has

crossed "the line from conceivable to plausible," a court must employ a "context-specific" inquiry, drawing on the court's "experience and common sense." *Id.* at 679.

### III. THE AMENDED COMPLAINT ADEQUATELY ALLEGES THAT DEBRABANDERE ENGAGED IN SECURITIES FRAUD.

Debrabandere alleges that the SEC's First and Fourth claims should be dismissed for failure to allege that he engaged in "fraudulent or deceptive conduct" and for insufficiently pleading scienter. *See* Mot at 14 – 27. Debrabandere does not argue that the Amended Complaint fails to provide him with "the time, place, speaker, and contents, as well as the manner in which statements are false and the specific acts raising an inference of fraud—the 'who, what, where, why and when.'" *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334. 368 (D. Md. 2004) (Blake, J.) (internal quotation marks omitted). Instead, he disagrees with the facts pled. However, factual disputes are an inappropriate basis for a motion to dismiss. *Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir. 2009) ("disputed issue[s] of material fact [] cannot be decided on a motion to dismiss pursuant to Rule 12(b)(6)"). Debrabandere also disregards the relevant legal standard for pleading scienter by relying on cases applying the PSLRA. The Amended Complaint details an extensive securities fraud at Osiris, describes Debrabandere's role in the fraud, and adequately alleges scienter.

The SEC's First Claim is for Defendant's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Am. Compl. at 58. Section 10(b) prohibits the use or employment, in connection with the purchase or sale of any security, any manipulative or deceptive device in violation of rules prescribed by the SEC. 15 U.S.C. § 78j(b). Rule 10b-5, in turn, prohibits any person from directly or indirectly, by use of jurisdictional means:

> (a) [employing] any device, scheme, or artifice to defraud,
> (b) [making] any untrue statement of a material fact or to omit[ting] to state a material fact necessary in order to make the

> statements made, in the light of the circumstances under which
> they were made, not misleading, or
> (c) [engaging] in any act, practice, or course of business which
> operates or would operate as a fraud or deceit upon any person[.]

17 C.F.R. § 240.10b-5. Violations of Section 10(b) involve deceptive conduct and require

scienter. *SEC v. Pirate Inv'r LLC*, 580 F.3d 233, 239 (4th Cir. 2009). "Deceptive acts include

misstatements, omissions by those with a duty to disclose, manipulative trading practices, and

deceptive courses of conduct." *Id*. at 240.

The SEC's Fourth Claim is for Defendant's violations of Section 17(a) of the Securities

Act. Am. Compl. at 61-62. This provision similarly prohibits any person from directly or

indirectly, in the offer or sale of any securities and by jurisdictional means:

> (1) [employing] any device, scheme, or artifice to defraud, or
> (2) [obtaining] money or property by means of any untrue
> statement of a material fact or any omission to state a material fact
> necessary in order to make the statements made, in light of the
> circumstances under which they were made, not misleading; or
> (3) [engaging] in any transaction, practice, or course of business
> which operates or would operate as a fraud or deceit upon the
> purchaser.

15 U.S.C. § 77q(a). Scienter is required to establish violations of Section 17(a)(1), but is not an

element of violations of Section 17(a)(2) and 17(a)(3). *Aaron v. SEC*, 446 U.S. 680, 697 (1980).

Conduct does not have to be "deceptive" or "manipulative" to violate Section 17(a). *See In re

Dennis J. Malouf*, Securities Act Release No. 10115, 2016 WL 4035575, at *10 (July 27, 2016).

The SEC's Amended Complaint details the violations of these provisions by describing a

financial fraud at Osiris that spanned nearly two years and resulted in at least seven quarters of

materially false filings with the SEC and additional deceptive conduct and fraudulent acts.[4]

---

[4] Debrabandere does not – and cannot – allege that the SEC has failed to plead
misstatements or omissions, that were material and in connection with the purchase or sale of
securities or in the offer or sale of securities, and that by which he obtained money or property.
*See* Rule 10b-5(b) (17 C.F.R. § 240.10b-5(b)) and Section 17(a)(2) (15 U.S.C. § 77q(a)). Instead,

Specifically, the Amended Complaint sets forth the what, when, where, why, and who of the fraud and provides Debrabandere with fair notice of what the SEC's claims are, and the grounds upon which the claims rest. *See Erickson*, 551 U.S. at 93.

A. The Amended Complaint Sets Forth The "What," "When," And "Where" Of The Fraud.[5]

The SEC has pled each false SEC filing and earnings call, including specific statements made by Debrabandere. *See* Am. Compl. at §VI, ¶¶ 148 - 166. The Amended Complaint also details the fraudulent scheme in which the Defendants engaged and the specific acts taken in furtherance of the scheme by each Defendant, including Debrabandere. *See id*. ¶¶ 167 – 174 (paragraph 171 is specific to Debrabandere).

B. The Amended Complaint Sets Forth The "Who" Of The Fraud.

The Amended Complaint neither engages in "[u]ndifferentiated group pleading against multiple defendants," Mot. at 2, nor asserts Debrabandere's liability based merely on his role as Osiris' CEO, *id*. at 1; *see also* Supp. Memo. at 5. Instead, as recognized by the Motion itself (Mot. at 4), the Amended Complaint charges Debrabandere with engaging in violations of the federal securities laws with respect to a specific *portion* of the unlawful conduct set forth in the Amended Complaint. With respect to *his* specific conduct, the SEC has pleaded with sufficient particularity that Debrabandere violated the federal securities laws as is detailed in Section III.C, below.[6]

---

he attempts to avoid responsibility for the fraud by downplaying his participation, challenging the "deceptive" nature of his conduct (which is relevant to the SEC's claims under Section 10(b) and Rules 10b-5(a) and (c) of the Exchange Act), and raising questions about his scienter. As detailed *infra*, such arguments are inappropriate at this stage of the proceedings.

[5] The SEC addresses only the transactions discussed in Debrabandere's Motion.

[6] Debrabandere implies that the Commission failed to investigate him. *See* Mot. at 3 ("the SEC typically comes to federal court only after conducting an extensive investigation, armed with subpoena power and backed by the resources of the federal government"). As Debrabandere is well aware, the Commission did conduct an investigation prior to initiating this litigation. During that investigation, Debrabandere was a recipient of an SEC testimony subpoena and, in

C.  The Amended Complaint Explains "How" Or "Why" Debrabandere's Conduct Was Fraudulent.

The SEC's fraud claims are based on Osiris' transactions with various Distributors. The SEC has set forth the manner in which statements are false and the specific acts raising an inference of fraud by detailing the improper accounting related to each Distributor transaction charged in the Amended Complaint. *See* Am. Compl. ¶¶ 63-76 (Distributor B); 91-93, 108-117, and 123-127 (Distributor C); 128-147 (Distributor D); 149-162 (stating the Distributor transactions at issue in each false filing and earnings call). The Amended Complaint also explains that Debrabandere set and communicated aggressive revenue targets. *Id.* ¶¶ 4-6. But, contrary to Debrabandere's assertion that the SEC has *only* alleged that he set and communicated the culture that drove the fraudulent scheme, Mot. at 14, the SEC has alleged that he personally engaged in additional specific deceptive conduct sufficient to establish liability under Rule 10b-5 and Section 17(a). Specifically, the SEC sets forth the fraudulent scheme in which Debrabandere and the other Defendants engaged: "a scheme to defraud Osiris' investors from learning about Osiris' true financial condition, to conceal Osiris' improper accounting practices from its Auditor, and to artificially increase revenue to show quarter-over-quarter revenue growth" and then details Debrabandere's specific conduct in furtherance of the scheme. Am. Compl. ¶¶ 167, 171.

response to that subpoena, Debrabandere invoked his Fifth Amendment privilege against self-incrimination in response to all substantive questions regarding Osiris. Am. Compl. ¶ 18. Despite Debrabandere's decision that substantively answering the SEC's questions during the investigation "would in themselves support a conviction under a federal criminal statute" or "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime," *Hoffman v. United States*, 341 U.S. 479, 486 (1951), the SEC did investigate the financial fraud that occurred at Osiris, uncovered Debrabandere's role in that fraud, and has sufficiently pled its fraud claims against Debrabandere.

1.  <u>The Amended Complaint's Allegations Regarding Distributor B Are Sufficiently Pled</u>.

The SEC's fraud claims against Debrabandere are based in part on Osiris' transactions related to Distributor B. The Amended Complaint explains why it was fraudulent and improper to recognize revenue during the first quarter of 2015 in connection with Distributor B and explains the role of the relevant Defendants, including Debrabandere. *Id*. ¶¶ 64 – 73. As to Debrabandere, he set a quarterly revenue target that was to be met, in part, by revenue from Distributor B. Am. Compl. ¶ 64. Days before the quarter ended, Debrabandere emailed Defendant Montgomery and made it clear that he understood the Distributor was not paying in full and that the Distributor wanted one product, but Osiris did not have enough so Debrabandere stated the product could be "swap[ped]" later. *Id*. ¶¶ 65, 75. The Amended Complaint further explains that Osiris improperly recognized at least $650,000 in revenue associated with this transaction, *id*. at ¶ 71, and this improper revenue was incorporated into Osiris' financial statements within a Form 10-Q and was also incorporated into a Form 8-K and earnings call, *id*. ¶ 157. Further, Debrabandere reviewed, approved, certified, and was responsible for the false financial statements and statements in the Form 8-K and earnings call. *Id*. ¶¶ 157-158.

Debrabandere disclaims responsibility for this transaction by first arguing that his "conduct is not alleged to have been inherently fraudulent or deceptive." Mot. at 16. This is incorrect. Paragraphs 64 through 73 fall under the heading "The Fraudulent and Improper Recognition of Revenue in the First Quarter of 2015." Paragraphs 64 and 65 then address Debrabandere's conduct (as discussed further below). Similarly, paragraph 75 immediately follows the heading "Additional Deceptive Conduct Regarding Distributor B … " and states "[a]s described above, Debrabandere directed that Osiris include Grafix in the purported sale to Distributor B, despite the fact that Distributor B did not want to purchase that product at that

time." Debrabandere's instruction that a product that Distributor B did not want at that time could be "sold" to Distributor B and then "swapped" later is inherently deceptive – no product was actually sold at the time the transaction was recorded – as is the financial statement misstatement that resulted from the booking of revenue associated with Distributor B. *See Pirate Inv'r LLC*, 580 F.3d at 240 ("Deceptive acts include misstatements, omissions by those with a duty to disclose, manipulative trading practices, and deceptive courses of conduct.").

Debrabandere then argues that his email was "premised on the understanding" that Osiris' CFO would be consulted and "revenue would only be recorded if [the CFO] determined that the accounting was proper." Mot. at 16. First, Debrabandere's use of the Motion to attempt to explain the "premise" of his emails should be flatly rejected, especially given that he asserted his Fifth Amendment right against self-incrimination as to all questions related to Osiris during the SEC's investigation. Am. Compl. ¶ 18. Debrabandere should not be allowed to simultaneously refuse to answer questions and then provide self-serving and selective testimony, through his lawyers, on what he meant by certain emails, as it is impermissible to use the Fifth Amendment privilege as a sword and a shield. *See, e.g., In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991) ("the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion").

Further, Debrabandere's citation to *Svezzese v. Duratek, Inc*., No. MJG-01-1830, 2002 U.S. Dist. LEXIS 20967, at *12 (D. Md. Apr. 30, 2002), which evaluated the pleading of scienter under the inapplicable standard required by the PSLRA, provides no useful guidance. While a complaint may not "mischaracterize" events, the SEC does not. Debrabandere's argument does nothing but attempt to raise a factual dispute regarding what was in his head when he wrote his

email, and disputes of fact are not to be decided on motions to dismiss. *See Andrew*, 561 F.3d at 267.

Moreover, on its face, Debrabandere's email (copied below) does *nothing* to "premise" his direction on the CFO being consulted and determining that the accounting was proper.

> We have flexibility.    We can include grafix and later swap to cartiform, when we have it
>
> If he pays 250 for a 500 order, I would be fine with that.    If he can pay 375 for a 750 order, that would be great
>
> I'm still on the phone.
> Can we meet around 9.25 ?

Ex. A to Mot. at 1; *see also* Am. Compl. ¶ 65. In fact, instead of asking for an update after the CFO is consulted, Debrabandere offers his own solution to the problems of Osiris not having the product that the Distributor wants and the Distributor not being in a position to make full payment. This email evidences Debrabandere's knowledge of and participation in the fraud alleged by the SEC.

Finally, Debrabandere claims he should not be liable for the fraudulent financial statement that stemmed from this transaction because he was not involved in "the execution of the agreement, shipment of the product, or recording of the revenue[.]" Mot. at 17. Of course, such involvement by a CEO is unnecessary; high-level executives cannot hide behind their lack of direct involvement in all aspects of a business to avoid liability for fraud. "Key corporate officers should not be allowed to make important false financial statements knowingly or recklessly, yet still shield themselves from liability to investors simply by failing to be involved in the preparation of those statements." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1062 (9th Cir. 2000).[7]

---

[7] *SEC v. Patel*, cited by Debrabandere, is distinguishable. In that case, with respect to one defendant, the court found that the alleged false statements were immaterial (an argument not advanced by Debrabandere) and that there was no basis for attributing knowledge of a shipment to that defendant. Civ. No. 07-cv-39-SM, 2008 WL 781912, at *12 (D.N.H. Mar. 24, 2008).

Finally, the fact that Debrabandere's email pre-dates the contract and anticipated "shipping" of the product does not excuse his conduct. Indeed, the fact that the product could not be shipped because: (1) Osiris did not have the product the Distributor wanted, Am. Compl. ¶ 65, and (2) the Distributor did not have regulatory approval to have the product delivered to Turkey, *id*. ¶ 69, provides further evidence of the fraudulent nature of Osiris recording revenue on this transaction. Osiris improperly recognized revenue on product that it had sitting in storage. *Id*. ¶¶ 68 – 70.

      2.   <u>The Amended Complaint's Allegations Regarding Distributor C Are Sufficiently Pled</u>.

The SEC's fraud claims are based in part on Osiris' transactions related to Distributor C. The Amended Complaint explains why it was fraudulent and improper for Osiris to recognize revenue on consigned product in connection with Distributor C during the first three quarters of 2015 and explains the role of the relevant Defendants, including Debrabandere. *Id*. ¶¶ 91 – 93, 108 – 117. Intentionally or negligently overstating revenues by reporting consignment transactions as sales violates the antifraud provisions. *See Malone v. Microdyne Corp.*, 26 F.3d 471, 478 (4th Cir. 1994) ("We cannot find a single precedent, however, holding that a company may violate FAS 48 and substantially overstate its revenues by reporting consignment transactions as sales without running afoul of Rule 10b-5.").

Debrabandere claims he cannot be liable for the fraudulent recognition of revenue regarding Distributor C because his only involvement in the transaction was a single email. Mot. at 17. In doing so, Debrabandere completely ignores numerous other allegations of the Amended

---

Here, however, Debrabandere's *direct involvement* in communications regarding the transaction with Distributor B – as evidenced by Ex. A to the Motion (ECF No. 18) – sufficiently pleads his awareness of the transaction. Am. Compl. ¶ 65.

Complaint that directly tie to his conduct.[8] Specifically, Debrabandere fails to acknowledge that he signed the agreement with Distributor C. Am. Compl. ¶ 92. That agreement provided that Osiris would sometimes supply the product to end-user customers on consignment and in such cases, title remained with Osiris until the end-user customer used the inventory. *Id*. ¶ 109. Debrabandere also fails to acknowledge that Osiris' SEC filings – including *three separate* Forms 10-Q certified by Debrabandere (*id*. ¶¶ 108, 157-162) – specifically stated that for consigned product, revenue was recognized when Osiris received appropriate notification that the product had been used in a surgical procedure. *Id*. ¶ 108. In other words, not when the product *was shipped*, but when it was *used*. Aware of the contract and the SEC filings, Debrabandere directed that Osiris account for all *shipments* as sales so that revenue could be recognized. *Id*. at ¶ 110.[9]

Again, Debrabandere improperly uses the Motion to attempt to explain his thought process in sending an email by claiming that he did not believe the company was violating GAAP or the company's accounting policy. Mot. at 18.[10] Once again, the email itself (copied

---

[8] Throughout the Motion, Defendant ignores relevant paragraphs of the Amended Complaint on the apparent basis that he views them as "conclusory." Improperly conclusory pleadings are those that "amount to nothing more than a 'formulaic recitation of the elements' of a claim." *See Saravia v. Select Portfolio Servicing, Inc*., Civ. A. No. 1:13-cv-01921-RDB, 2014 WL 2865798, at *6 (citing *Iqbal*, 556 U.S. at 680-81). It is not improperly "conclusory" to allege that Debrabandere was the CEO of Osiris, he had responsibility for Osiris' SEC filings, he signed and certified the specific filings at issue here, he made statements in earnings calls, and he made representations to the Auditor. Those allegations are *factual*, case-specific, plausible, and directly relevant to assessing his liability.

[9] Debrabandere's claim that he had nothing to do with the accounting violations after sending his March 9 email is obviously incorrect given that he certified the financial statements alleged to be false and made false statements in press releases and earnings calls. *See* Am. Compl. ¶¶ 157-162.

[10] Debrabandere's citation to *In re Bristol-Myers Squibb Sec. Litig.*, yet another PSLRA case, is irrelevant. In the cited portion of that case, the court declined to infer scienter based on a Restatement alone when the complaint alleged that transactions were "nothing more than consignment sales" but conceded at oral argument "that the sales at issue were not within the

below) shows that the SEC's view of the facts is *at least* plausible: Debrabandere was directing

accounting treatment, and was doing so to hit his "goal."

> Can you guys figure out what the shipments to Stryker are and account for those as "sales". These reports and Amy's need to be sync'ed, and reflect what we will account for in terms of revenue for he quarter. We discussed last week to consider shipments to stryker customers as "a sale". It might include some consignment at Stryker's level, but not at ours. We cannot wait until we receive PO's to book these as a sale.
>
> Thx.
> Goal is to get to $1 million bio4 this quarter.

Ex. C to Mot. at 2; *see also* Am. Compl. ¶ 110. Given the plausibility of the SEC's allegations,

the Motion should be denied. If Debrabandere chooses to provide substantive information during

the course of this litigation he is, of course, free to argue his view of his emails as this case

proceeds to the merits; but at this stage, inferences are drawn in favor of the SEC and the SEC

has set forth plausible fraud claims.

      3.   <u>The Amended Complaint's Allegations Regarding Distributor D Are Sufficiently Pled</u>.

      The SEC's fraud claims are based in part on Osiris' transactions related to Distributor D.

Debrabandere does not assert that the alleged transactions related to Distributor D were not

fraudulent. Indeed, Osiris has already restated the transactions relevant to 2014. Am. Compl.

¶ 139. In that Restatement, Osiris explained that, among other things:

> [E]rrors and irregularities in the Company's previous accounting in 2014 occurred on the basis of, among other things, (1) with respect to sales transactions with two distributors that were affiliated with each other, the existence of extra-contractual or undocumented terms or arrangements initiated by former executives of the Company at the onset of the transactions and concessions agreed to by former executives of the Company subsequent to the initial transaction, such as unusually long payment terms. …

---

traditional (and undisputed) definition of consignment sales …." 312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004). Unlike the situation in *Bristol-Myers*, the parties here are not currently disputing whether the sales at issue were consignments and Osiris' SEC filings do not contradict the SEC's position. Indeed, Osiris has explained that its financial statements issued for the first three quarters of 2015 should not be relied upon and it intends to restate those financials. Am. Compl. ¶ 30.

Ex. 2 at 2, Excerpts of Osiris Form 10-K/A, Amendment No. 1 for the fiscal year ended Dec. 31, 2014 (Mar. 27, 2017); *see also* Am. Compl. ¶ 139 (citing the Form 10-K/A and Osiris' restatement of $7.6 million in revenue associated with Distributor D).[11]

Instead, Debrabandere asserts that the Amended Complaint does not adequately allege the "who, what, when, where, and how" of the fraud with respect to Distributor D. *See* Mot. at 19. As with the other distributors, this argument is unconvincing. As set forth above, each false statement in Osiris' SEC filings and earnings calls is specifically set forth in the Amended Complaint, as is a description of the fraudulent scheme and Debrabandere's acts in furtherance. Am. Compl. ¶¶ 167-168, 171. Further, paragraphs 128 to 147 of the Amended Complaint set forth the fraudulent conduct and improper accounting related to Distributor D, which resulted in a restatement of approximately $7.6 million (Am. Compl. ¶¶ 135, 139) and explain the role of the relevant Defendants, including Debrabandere. As alleged in the Amended Complaint, Osiris prematurely recognized revenue on product sold to Distributor D. *Id*. ¶¶ 130, 135. Debrabandere agreed and/or was aware that Distributor D would not make payments to Osiris until product was sold to an end-user." *Id*. ¶ 131. Debrabandere is therefore on notice of the "why" or "how" of the alleged fraud with respect to Distributor D, and he is aware of the basis of the SEC's claims against *him* for this portion of the fraud.

D.  The SEC Has Sufficiently Pled Scienter.

Debrabandere argues that the SEC has failed to adequately plead scienter. *See* Mot. at 20-27. Debrabandere once again relies on the incorrect legal standard and ignores allegations in

---

[11] Due to its size, the Commission is attaching the cover page and pages one through seven (Explanatory Note and Index) and the signature page of the Form 10-K/A. The entire file is available at https://www.sec.gov/Archives/edgar/data/1360886/000110465917019408/a16-8011_110ka.htm.

the Amended Complaint. The SEC has adequately pled scienter and negligence and the Motion should be denied.

First, Debrabandere's scienter argument is based nearly exclusively on a host of cases brought under the Private Securities Litigation Reform Act ("PSLRA"),[12] which is inapplicable to SEC enforcement actions such as this one. *See supra*, note 3. The PSLRA requires *private* plaintiffs to "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added). On the other hand, Federal Rule of Civil Procedure 9(b), which is applicable here, provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. *Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally*." (Emphasis added). "The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). *See also SEC v. Oglebay*, Civ. A. No. HAR-90-2385, 1991 WL 149890, at *4-6 (D. Md. July 31, 1991) (finding three separate basis for ruling that the SEC pled scienter: (1) the complaint pled scienter "in the language of Section 10(b) and Rule 10b-5"; (2) the complaint alleged that the defendants "knew or should have known" that their actions amounted to fraudulent conduct; and (3) the facts stated in the complaint set forth fraudulent intent.).[13]

---

[12] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 547 (4th Cir. 2017); *In re Orbital Scis. Corp. Sec. Litig.*, 58 F. Supp. 2d 682, 686 (E.D. Va. 1999); *In re Ciena Corp. Sec. Litig.*, 99 F. Supp. 2d 650, 662 (D. Md. 2000); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d at 561; *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 643 (E.D. Va. 2000).

[13] Counsel for the SEC is unaware of Fourth Circuit authority addressing the pleading standard for the SEC in post-PSLRA cases. Even in PSLRA cases, however, the Fourth Circuit has rejected a restrictive scienter inquiry "focusing on specific categories of fact, such as those relating to motive and opportunity." *Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338,

Debrabandere is also incorrect that it is improper for the SEC to plead knowledge and recklessness, as well as negligence. Mot. at 21. With respect to scienter, "[the SEC] is under no obligation to plead only one possible basis for meeting the scienter requirement." *SEC v. Guardian Oil & Gas, Inc*., No. 3:14-cv-1533-BN, 2014 WL 7330451, at *7 (N.D. Tex. Dec. 23, 2014) (citing Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alterative statements, the pleading is sufficient if any one of them is sufficient.")).

Debrabandere's claim that he cannot be liable for Osiris' securities fraud because he is not an accountant along, with his reliance on *SEC v. Lucent Techs., Inc*. is also misplaced. *See* Mot. at 21-22. In *Lucent*, the court declined to find that the SEC adequately pled scienter as to a vice president of indirect sales, who the court found to be a "regular business [person]." No. Civ. 04-2315 (WHW), 2005 WL 1206841, at *5, (D.N.J. May 20, 2005). Debrabandere was not a regular business person at Osiris – he was the CEO who signed and/or certified the false SEC filings, made false statements on earnings calls, and was directly involved in certain distributor transactions that led to the fraud set forth in the Amended Complaint.[14]

---

345 (4th Cir. 2003). Instead, the *Ottmann* court determined that courts should "examine all of the allegations in each case to determine whether they collectively establish a strong inference of scienter. And, while particular facts demonstrating a motive and opportunity to commit fraud (or lack of such facts) may be relevant to the scienter inquiry, the weight accorded to those facts should depend on the circumstances of each case." *Id.* at 345-46.

[14] To the extent Debrabandere disclaims *any* understanding of accounting or financial statements (*see* Mot. at 22), his decision to act as CEO and certify Osiris' SEC filings was itself reckless and negligent. As the highest-level executive of Osiris and person certifying its financial statements published to investors, he was required to familiarize himself with Osiris' accounting and the material statements made within the filings. *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 491 (S.D.N.Y 2004) ("As signatories to the SEC filings that contained the company's financials, each individual defendant who served as a high-level officer had a duty to familiarize himself with the facts relevant to the core operations of the company and the financial reporting of those operations.").

Here, the Amended Complaint pleads the language of Section 10(b) and Rule 10b-5 of the Exchange Act and Section 17(a) of the Securities Act (Am. Compl. ¶¶ 202, 214), asserts that Debrabandere "knew, was reckless in not knowing, and was negligent in not knowing" of the fraudulent conduct (*id*. ¶¶ 73, 117, 127, 147), and more than adequately states facts giving rise to a reasonable inference that Debrabandere acted with scienter and was negligent. Specifically, the Amended Complaint explains that Debrabandere was the CEO of Osiris, *id*. ¶ 18. He signed and/or certified all of the relevant SEC filings, and made false statements during Osiris' earnings calls. *See id*. ¶¶ 18, 149-162. As described above with respect to Distributors B, C, and D, he was directly involved in and had knowledge of certain distributor transactions that led to the misrepresentations and omissions in Osiris' SEC filings. This included stating that Osiris could "swap" product that Distributor B did not want for product that it might want at a later point, and determining that Osiris would accept less than full payment for product. *Id*. ¶¶ 65, 75. It also included directing that all shipments related to Distributor C be booked as "sales," despite having executed the contract with Distributor C, which provided for consignment transactions and certifying SEC filings that stated that revenue was not recognized on consignment. *Id*. ¶¶ 92, 108-110. Further, he participated in, or failed to take action to prevent or disclose the extra-contractual or undocumented terms of arrangements with Distributor D. *Id*. ¶ 27, 130-131. He also made misrepresentations and omitted material information to Osiris' Auditor. *Id*. ¶¶ 58, 60, 63, 76, 123, 124, 128, 140, 141, 142, 146. The Amended Complaint further alleges that Debrabandere "engaged in a scheme to defraud Osiris' investors from learning about Osiris' true financial condition, to conceal Osiris' improper accounting practices from its Auditor, and to artificially increase revenue to show quarter-over-quarter revenue growth." *Id*. ¶ 167. All of these

allegations more than satisfy the requirements of Rules 8 and 9(b). *See Oglebay*, 1991 WL 149890, at *4-6.

Finally, other than one footnote, which fails to cite any authority or specific allegations (Mot. at 27 n.14), Debrabandere completely ignores the negligence standard of Sections 17(a)(2) and (3). The Amended Complaint pleads that Debrabandere acted negligently (Am. Compl. ¶¶ 73, 117, 127, 147) and sets forth Debrabandere's specific, unreasonable conduct as described above with respect to scienter. Moreover:

> Defendant also confuses negligence with scienter where negligence is conduct, not a state of mind. To plead violations of Section 17(a)(2)-(3), Plaintiff is not required to provide any evidence on mental state but only unreasonable conduct (negligence). And the same allegations may be used to support both a finding that Defendants acted with scienter and their actions were negligent.

*Guardian Oil & Gas, Inc.*, 2014 WL 7330451, at *7. The Amended Complaint sufficiently alleges negligence and the Commission's claims for violations of Section 17(a)(2) and (3) of the Securities Act should not be dismissed.

The Amended Complaint alleges fraud plausibly and with particularity under Federal Rules of Civil Procedure 8 and 9, gives rise to a reasonable inference of scienter, and sets forth unreasonable conduct. Therefore, Debrabandere's Motion should be denied.

## IV. THE AMENDED COMPLAINT ADEQUATELY ALLEGES AIDING AND ABETTING.

The Amended Complaint also sufficiently alleges that Debrabandere is liable for aiding and abetting. The elements of an aiding and abetting claim are: "(1) a primary violation by another person; (2) the aider and abettor's 'knowledge' of the primary violation; and (3) substantial assistance by the aider and abettor in the achievement or consummation of the primary violation." *Schatz v. Rosenberg*, 943 F.2d 485, 495 (4th Cir. 1991).

Debrabandere argues that the Amended Complaint fails to allege substantial assistance to Osiris' violations of Section 17(a) of the Securities Act or Section 10(b) of the Exchange Act, or scienter. Mot. at 27. For the reasons detailed in Section III.D., *supra*, the Commission has sufficiently pled Debrabandere's scienter. Similarly, for the reasons detailed in Section III.A through C, the SEC has pled Debrabandere's substantial assistance in Osiris' fraud. The Amended Complaint alleges that Debrabandere provided substantial assistance to Osiris' fraud through direct involvement in certain distributor transactions that led to the misrepresentations and omission in Osiris' SEC filings, including: (a) determining that Osiris could "swap" product that Distributor B did not want for product that it might want at a later point, and determining that Osiris would accept less than full payment for product, Am. Compl. ¶¶ 65, 75; (b) directing that all shipments related to Distributor C be booked as "sales," despite having executed the contract with Distributor C which provided for consignment transactions and certifying SEC filings that stated that revenue was not recognized on consignment, *id*. ¶¶ 92, 108-110; (c) participating in, or failing to take action to prevent or disclose the extra-contractual or undocumented terms of arrangements with Distributor D, *id*. ¶ 27, 130-131; (d) making misrepresentations and omitting material information to Osiris' Auditor; *id*. ¶¶ 58, 60, 63, 76, 123, 124, 128, 140, 141, 142, 146; and (e) alleging that he "engaged in a scheme to defraud Osiris' investors from learning about Osiris' true financial condition, to conceal Osiris' improper accounting practices from its Auditor, and to artificially increase revenue to show quarter-over-quarter revenue growth," *id*. ¶¶ 167, 171. Such allegations are sufficient to put Debrabandere on notice of the Commission's aiding and abetting claims against him and to set forth his participation in the financial fraud at Osiris with particularity.

Debrabandere drops a footnote claiming that "[f]or the same reasons," the Commission's Tenth and Thirteenth claims should also be dismissed. Mot. at 28 n.15. The Commission's Tenth Claim alleges that Debrabandere aided and abetted Osiris' violations of Section 13(a) of the Exchange Act (15 U.S.C. § 78m(a)) and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder (17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13) and the Thirteenth Claim alleges that Debrabandere aided and abetted Osiris' violations of Section 13(b)(2) of the Exchange Act (15 U.S.C. § 78m(b)(2). The Amended Complaint summarizes and details Osiris' violations of Section 13(a) and the relevant Rules. Am. Compl. ¶¶ 184-185. It also details the false and misleading statements and omissions in each relevant filing and explains Debrabandere's role in each filing. *Id*. ¶¶ 148-162. Further, the Commission has summarized the substantial assistance provided by Debrabandere (among others) in Osiris' violations of Section 13(a) and the relevant Rules. *Id*. ¶ 186. Similarly, the Amended Complaint summarize and details Osiris' violations of Section 13(b)(2) and then addresses the substantial assistance provided by Debrabandere (among others). *Id*. ¶¶ 187 – 189.

The Commission has adequately pled Debrabandere's aiding and abetting liability to support its Second, Fifth, Tenth, and Thirteenth Claims for Relief and Debrabandere's Motion should be denied.

V.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES DEBRABANDERE'S CONTROL PERSON LIABILITY.

In addition to alleging direct liability for fraud, the Commission has alleged that Debrabandere is liable, as a control person, for violations of the securities laws committed by others. In arguing that the Commission's Amended Complaint has failed to adequately allege control person liability Debrabandere misstates the elements of control person liability in the

Fourth Circuit. When the correct standard is applied it is clear that the Commission's Amended Complaint is sufficient.

In the Fourth Circuit, in order to state a claim of control person liability, a complaint must allege: (1) a "predicate violation of [the securities laws]"; and (2) "control by the defendant over the primary violator." *In re Mutual Funds Inv. Litig.,* 566 F.3d 111, 129–30 (4th Cir. 2009), *rev'd on other grounds sub nom. Janus Capital Grp., Inc. v. First Derivative Traders,* 131 S. Ct. 2296 (2011).[15] Debrabandere does not contest that the Commission has adequately alleged primary violations by others or that Debrabandere was a controlling person. Instead he argues that the Commission must plead a lack of culpable participation. He is incorrect.

"[O]nce the plaintiff establishes the prima facie case [of control], the burden shifts to *the defendant* to show lack of culpable participation or knowledge." *Mutual Funds,* 566 F.3d at 130 (emphasis added); s*ee also In re Constellation Energy Group Inc. Sec. Litig.,* 738 F. Supp. 2d 614, 638-39 (D. Md. 2010) (Blake, J.) (quoting *Mutual Funds,* 566 F.3d at 129–30).[16] In other words, lack of culpable participation is an affirmative defense. *See Royal Ahold,* 351 F. Supp. 2d

---

[15] Debrabandere's citation to *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) is inapposite. The Second Circuit's addition of a third element to the Section 20(a) claim is a construction shared only by the Third Circuit and some District of Columbia district courts and rejected by the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits. *See* footnote 16, *infra*. The First and D.C. Circuits have not yet resolved the issue. *See In re Harman Intern. Indus., Inc. Sec. Litig.,* 791 F.3d 90, 111 (D.C. Cir. 2015); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002).

[16] The majority of courts – including the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits – only require a plaintiff to plead a primary violation and control by the controlling person over the controlled person. *See Masterson v. Commonwealth Bankshares,* 2 F. Supp. 3d 824, 830 (E.D. Va. 2014); *Wilkof v. Caraco Pharma. Labs., LTD.*, No. 09-12830, 2010 WL 4184465, at *10 (E.D. Mich. Oct. 21, 2010) (Sixth Circuit does not require that "culpable participation" be plead in order to set forth a Section 20(a) violation). Even in the Second and Third Circuit where "culpable participation" is an element that must be proven, the courts disagree about whether a plaintiff is required to plead culpable participation in the complaint. *See In re ForceField Energy Inc. Sec. Litig.*, 15 Civ. 3020, 2017 WL 1319802, at *16 (S.D.N.Y. Mar. 29, 2017); *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, n.11 (E.D. Pa. 2014).

at 408 (Blake, J.). And a plaintiff is not required to affirmatively plead facts responsive to an affirmative defense before that defense is raised. *See Goodman v. Praxair Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (citing *Twombly*, 550 U.S. at 562-63; *CSX Transp., Inc. v. Gilkison*, 406 Fed. App'x 723, at 728-29 (4th Cir. 2010)); s*ee also Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 601 n.10 (8th Cir. 2009) ("… a plaintiff need not plead facts responsive to an affirmative defense before it is raised." (citation omitted)); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012) ("a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses."); Fed. R. Civ. P. 8(c) (*defendant* must plead any "matter constituting an avoidance or affirmative defense") (emphasis added).

In this Circuit, the Commission must only allege a primary violation and control by the defendant over the primary violator. Debrabandere does not contest that the Commission has done so. In this Circuit, any "good faith" or "lack of culpable participation" is an affirmative defense. The burden of pleading and proving that affirmative defense rests with Debrabandere. As a result, the Commission's Amended Complaint adequately alleges control person liability against him and the claim should not be dismissed.[17]

## VI. THE AMENDED COMPLAINT ADEQUATELY ALLEGES DEBRABANDERE'S LIABILITY UNDER SOX 304.

Debrabandere argues that the Commission has failed to allege in a "non-conclusory" manner that he received compensation or profits subject to Section 304(a) of Sarbanes-Oxley ("SOX") (15 U.S. C. § 7243(a)). To the contrary, the Amended Complaint fully alleges this claim against him.

SOX 304 is not a complex claim. "Section 304 by its terms requires CEOs and CFOs to reimburse their company for any bonus or similar compensation, or any profits realized from the

---

[17] Even if the Commission were required to plead "culpable participation," the Commission's allegations of fraud do so.

sale of company stock, for the 12–month period following a false financial report, if the company 'is required to prepare an accounting restatement due to the material noncompliance of the [company], as a result of misconduct.'" *Cohen v. Viray,* 622 F.3d 188, 193 (2d Cir. 2010) (quoting § 304). The Commission has alleged that:

- Debrabandere was the CEO of Osiris. Am. Compl. ¶ 18;

- Due to misconduct described in detail in the Amended Complaint, Osiris filed reports that were in material non-compliance with its financial reporting requirements under the federal securities laws from May 12, 2014, when Osiris' Form 10-Q for the first quarter of 2014 was filed, until November 16, 2015, when Osiris' Form 10-Q for the third quarter of 2015 was filed, and that Osiris' material non-compliance with its financial reporting requirements resulting from the misconduct required the company to prepare accounting restatements. *Id.* ¶ 256; and

- That Debrabandere received bonuses and incentive-based salary increases during the requisite time period. *Id.* ¶¶ 177, 257.

It appears that what Debrabandere is complaining about is that the Commission has not alleged specific payments or amounts received by him. That information, however, is peculiarly within his own knowledge. As a result, the Commission is not required to plead specific details. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974); *Cadle Co. v. Schultz*, 779 F. Supp. 392 (N.D. Tex. 1991); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988). This policy is particularly applicable in this case, where Debrabandere, based on his Fifth Amendment rights,

refused to provide information to the SEC regarding Osiris.[18] The Commission has adequately

alleged Debrabandere's violation of SOX Section 304 and it should not be dismissed.

VII.     THE AMENDED COMPLAINT ADEQUATELY ALLEGES DEBRABANDERE'S
         INTERNAL CONTROLS AND CERTIFICATION VIOLATIONS.

A.   Section 13(b)(5) And Rule 13b2-1 Are Adequately Alleged.

Section 13(b)(5) of the Exchange Act (15 U.S.C. § 78m(b)(5)) prohibits any person from

knowingly circumventing or failing to implement a system of internal accounting controls or

knowingly falsifying books, records, or accounts. The Commission has alleged that

Debrabandere's failure to implement internal controls caused the direct or indirect falsification of

Osiris' books and records in violation of Rule 13b2-1 (17 C.F.R. § 240.13b2-1). *See* Am. Compl.

¶¶ 25 – 30.

The Commission's Amended Complaint details the deficiencies in Osiris' internal

controls:

•   Among other things, Osiris did not devise or maintain effective controls over revenue

recognition, including a lack of effective controls:  (i) to ensure that revenue was not recognized

prior to the company obtaining written documentation demonstrating that persuasive evidence of

an arrangement existed and the terms were fixed or determinable; (ii) to ensure that adequate

analysis and documentation existed for distributor contracts to ensure timely and accurate

recording of revenue in accordance with GAAP; (iii) to ensure proper compliance with bill and

hold criteria; and (iv) to ensure appropriate accounting for consignment arrangements. *Id.* ¶¶ 26,

191.

---

[18] Indeed, at the merits stage of this action, Debrabandere's invocation of his privilege under the Fifth Amendment may permit the fact-finder to draw adverse inferences. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 319 (1976)).

The Commission's Amended Complaint also alleges Debrabandere's responsibility for and failures concerning those internal control deficiencies by alleging:

- "[I]nternal controls were also circumvented by the Defendants. For example, [] Debrabandere [] participated in, or failed to take action to prevent or disclose, the extra-contractual or undocumented terms of arrangements with distributors." *Id.* ¶ 27.

- "[] Debrabandere knowingly failed to implement an appropriate system of internal accounting controls. [] Debrabandere [was] responsible for Osiris' internal control structure, and [was] aware of the issues underlying Osiris' internal control failures and misstated accounts." *Id.* ¶ 192; and

- "[I]nternal controls were circumvented by the Defendants. For example [] Debrabandere participated in, failed to take action to prevent, and failed to disclose to the Auditor or audit committee the extra-contractual or undocumented terms of arrangements with distributors and signed false management representation letters to the Auditor." *Id.* ¶ 193.

The Commission's Amended Complaint identifies the results of the deficiencies, including the resultant restatements:

- "Osiris' lack of internal controls and the fraudulent conduct of the Defendants resulted in Osiris' misstating revenue with respect to numerous of its distributor and sales agent relationships in 2014 and 2015." *Id.* ¶ 28;

- "On November 16, 2015, Osiris filed its Form 10-Q for the third quarter of 2015 and, within that filing, disclosed a material weakness in internal controls over financial reporting and restated certain transactions … ." *Id.* ¶ 29; and

- "Osiris' restated Form 10-K/A for 2014 was filed on March 27, 2017. In that filing, Osiris disclosed material weaknesses in internal controls and corrected approximately $10.3 million in revenue overstatements for 2014." *Id*. ¶ 30.

In addition, Debrabandere certified Osiris' Form 10-Q for the third quarter of 2015, a public filing admitting a material weakness in internal controls over financial reporting. *Id*. ¶¶ 18, 29, 198.

These are more than conclusory allegations, and adequately allege the claim against Debrabandere. The claim should not be dismissed.

B. Rule 13a-14 Is Adequately Alleged.

As Debrabandere notes, the Commission has alleged that he falsely certified certain specified Osiris public filings. *See id.* at ¶ 198. As a result, that claim against him is adequately plead.

To the extent the Commission is required to allege that Debrabandere had knowledge that the certifications were false the Commission has done so. As described above, with respect to Distributors B, C, and D, Debrabandere was directly involved in and had knowledge of certain distributor transactions that led to the misrepresentations and omission in Osiris' SEC filings. This included:

- Stating that Osiris could "swap" product that Distributor B did not want for product that it might want at a later point, and determining that Osiris would accept less than full payment for product. Am. Compl. at ¶¶ 65, 75;

- Directing that all shipments related to Distributor C be booked as "sales," despite having executed the contract with Distributor C, which provided for consignment transactions and

certifying SEC filings that stated that revenue was not recognized on consignment. *Id.* ¶¶ 92, 108-110; and

- Participating in, or failing to take action to prevent or disclose the extra-contractual or undocumented terms of arrangements with Distributor D. *Id.* ¶¶ 27, 130-131.

VIII. THE AMENDED COMPLAINT ADEQUATELY ALLEGES DEBRABANDERE'S VIOLATIONS OF RULE 13b2-2.

Rule 13b2-2 (17 C.F.R. § 240.13b2-2) makes it a violation of the securities laws to make or cause to be made materially false or misleading statements or to omit, or cause another person to omit, to state material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with audits, reviews or examinations of publicly filed financial statements.

Debrabandere's assertion that he "is not even alleged to have had any interactions with the Auditor whatsoever" is wrong. As he notes in his next sentence, Debrabandere is alleged to have made representations to the auditors in letters signed by him. Such misrepresentations are sufficient to establish liability for violations of Rule 13b2-2. *See McConville v. SEC*, 465 F.3d 780 (7th Cir. 2006). The Commission has alleged that specific representations made to the auditors were false and misleading. Am. Compl. at ¶¶ 76, 123, 140-142, 171, 179. The Commission has also alleged that certain omissions by Debrabandere also made those representations misleading. *Id.* at ¶¶ 124, 146, 171, 180. Finally, the Commission has alleged that Debrabandere directed Jacoby to come up with documentation that would satisfy the auditors with respect to a fraudulent transaction with Distributor A. *Id.* at ¶¶ 58, 60. These allegations put Debrabandere on notice of the claims against him and prevent dismissal of this claim.

IX.   CONCLUSION

For the reasons set forth above, the SEC respectfully requests that Defendant

Debrabandere's Motion to Dismiss be denied in its entirety and that this case proceed to

discovery. Should the Court determine that any of the SEC's claims are insufficiently pled, the

SEC requests that such ruling be without prejudice so that the SEC may seek to amend the

Amended Complaint as appropriate.


Respectfully submitted this 22nd day of March 2018.

<div style="margin-left:40%">

     /s/
_____
Danielle R. Voorhees
Polly A. Atkinson
Attorneys for Plaintiff
UNITED STATES SECURITIES AND EXCHANGE
COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000
voorheesd@sec.gov
atkinsonp@sec.gov

</div>

CERTIFICATE OF SERVICE

I certify that on March 22, 2018, I caused the foregoing document to be electronically filed with the Court using the ECF system, which will send notification of such filing to ECF-registered counsel. I further certify that on March 22, 2018, I caused a copy of the foregoing document to be emailed and mailed via UPS to Defendant Philip R. Jacoby, Jr.

_____/s/_____

Danielle R. Voorhees