**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>PHILIP R. JACOBY, JR., *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 17-cv-03230-CCB |

**DEFENDANT LODE B. DEBRABANDERE'S REPLY TO
SEC'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO
<u>EXCLUDE THE OPINION TESTIMONY OF LYNN E. TURNER</u>**

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.     MR. TURNER'S TESTIMONY ABOUT THE ROLES, RESPONSIBILITIES, AND STANDARD OF CARE FOR PUBLIC COMPANY OFFICERS SHOULD BE EXCLUDED ........................................................................................................2

     A.     MR. TURNER'S TESTIMONY HAS NO PLACE IN THIS CASE......................2

     B.     MR. TURNER'S TESTIMONY ABOUT HIS STANDARD OF CARE IS UNRELIABLE ...........................................................................................7

     C.     MR. TURNER FAILED TO APPLY HIS STANDARD OF CARE RELIABLY TO THE FACTS OF THIS CASE ...................................................10

II.    MR. TURNER'S TESTIMONY ABOUT MISREPRESENTATIONS TO BDO SHOULD BE EXCLUDED........................................................................................13

CONCLUSION..................................................................................................................17

**TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)................................................................................................7

*Heckman v. Ryder Truck Rental, Inc.*,
    962 F. Supp. 2d 792 (D. Md. 2013)......................................................................8

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*,
    348 F. Supp. 3d 698 (S.D. Ohio 2016) ................................................................4

*In re Safety-Kleen Corp. Stockholders Litig.*,
    No. 3:00-736-17, 2004 WL 6039473 (D.S.C. Jan. 29, 2004)..................................3

*Karp v. First Conn. Bancorp, Inc.*,
    No. 1:18-cv-02496-RDB, 2021 WL 1575161 (D. Md. Apr. 22, 2021), *appeal
    filed* No. 21-1571 (4th Cir. May 12, 2021) ..............................................................6

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)................................................................................................8

*Proter v. Medifast, Inc.*,
    No. GLR-11-720, 2013 WL 1316034 (D. Md. Mar. 28, 2013) ..............................11

*SEC v. Big Apple Consulting USA, Inc.*,
    No. 6:09-cv-1963-Orl-28GLK, 2011 WL 3753581 (M.D. Fla. Aug. 25, 2011)......................3

*SEC v. Ginder*,
    752 F.3d 569 (2d Cir. 2014)....................................................................................6

*SEC v. ITT Educ. Servs.*,
    311 F. Supp. 3d 977 (S.D. Ind. 2018) ....................................................................3

*United States v. Offill*,
    666 F.3d 168 (4th Cir. 2011) ..................................................................................5

*United States v. Perkins*,
    470 F.3d 150 (4th Cir. 2006) ................................................................................15

*United States v. Wilson*,
    484 F.3d 267 (4th Cir. 2007) ..........................................................................8, 16

**Statutes**

Sarbanes-Oxley Act of 2002 ....................................................................................13

Securities Exchange Act of 1934 Section 10(b) (15 U.S.C. § 78j(b))............................3

Securities Exchange Act of 1934 Section 13(b)(5) (15 U.S.C. § 78m(b)(5)).................................3

**<u>Other Authorities</u>**

Federal Rule of Evidence 403.................................................................................................7

Federal Rule of Evidence 702.........................................................................................7, 8, 12

Securities Exchange Act Rule 10b-5 (17 C.F.R. § 240.10b-5).................................................3

Securities Exchange Act Rule 13a-14 (17 C.F.R. § 240.13a-14) ..........................................3, 13

Securities Exchange Act Rule 13b2-1 (17 C.F.R. § 240.13b2-1)...........................................3

Securities Exchange Act Rule 13b2-2 (17 C.F.R. § 240.13b2-2)......................................3, 13, 14

## INTRODUCTION

Despite years of investigation and litigation, Plaintiff Securities and Exchange Commission ("SEC") has identified no fact witness who will say that Defendant Dr. Lode B. Debrabandere, the former CEO of Osiris Therapeutics, Inc. ("Osiris"), engaged in fraud or any other illegal conduct.  Without testimony from a single percipient witness (and with only scant documentary evidence), the SEC seeks to offer testimony from an expert witness, Lynn E. Turner, that Dr. Debrabandere violated a newly-created "standard of care" that Mr. Turner invented for judging the way in which public company officers are supposed to run their businesses.  But, as discussed in Dr. Debrabandere's motion to exclude Mr. Turner's testimony, there is no place in the federal securities laws for any such standard.  Instead, the jury will be asked to decide only whether Dr. Debrabandere's alleged conduct satisfies the well-established elements of each specific statute and rule that he is alleged to have violated, and not whether Dr. Debrabandere lived up to Mr. Turner's definition of how a CEO is supposed to execute his or her responsibilities.  Mr. Turner's testimony, therefore, does not "fit" the facts of the case and will not help the jury.  If anything, Mr. Turner's testimony will mislead the jury or run the real risk of confusing the issues.

Similarly, the SEC wants Mr. Turner to testify that Dr. Debrabandere made misrepresentations to Osiris's independent auditor, BDO USA, LLP ("BDO"), which is something else that no fact witness has said (and that the documentary evidence likewise does not support). The SEC's allegations of misrepresentations, however, are not complicated and turn entirely on subsidiary questions of underlying fact that the jury will be asked to consider based on the factual record at trial.  Mr. Turner's opinion that there were misrepresentations is, therefore, trivial and does not involve any application of specialized knowledge that would assist the jury whatsoever.

Significantly, as discussed below, the SEC does not attempt in its response to Dr. Debrabandere's motion to dispute many of Dr. Debrabandere's actual arguments, choosing instead to ignore some while mischaracterizing others.  Indeed, at the outset, the SEC falsely claims that Dr. Debrabandere "[f]requently . . . attacks Mr. Turner's style, rather than the substance of his opinions," and then asserts that it need not respond to the many reasoned arguments for why Mr. Turner's opinions are inadmissible.  *See* Dkt. No. 215, SEC Consolidated Resp. ("Resp.") at 6 n.1. Moreover, the SEC repeatedly recharacterizes Mr. Turner's opinions to avoid having his testimony excluded pursuant to the clear-cut rules that govern the admissibility of expert testimony. Regardless of how the SEC attempts to characterize things, however, Mr. Turner's opinions and the SEC's defense of them miss the mark.  Accordingly, Dr. Debrabandere's motion to exclude the testimony of Mr. Turner should be granted.[1]

## **ARGUMENT**

## I.  **MR. TURNER'S TESTIMONY ABOUT THE ROLES, RESPONSIBILITIES, AND STANDARD OF CARE FOR PUBLIC COMPANY OFFICERS SHOULD BE EXCLUDED**

### A.  **MR. TURNER'S TESTIMONY HAS NO PLACE IN THIS CASE**

As explained in Dr. Debrabandere's motion, Mr. Turner's testimony about the roles and responsibilities of public company officers and the "standard of care" that he concocted should be excluded because it is not relevant to any of the SEC's claims or allegations in this case.  Dkt. No. 209-1, Mem. of Law in Supp. of Dr. Debrabandere's Mot. to Exclude Mr. Turner's Test. ("Mot.") at 5-8.  With respect to Dr. Debrabandere, the jury will be required to determine only whether he violated specific statutes and rules as alleged in the SEC's Amended Complaint.  The jury will

---

[1] Rather than file separate responses to the separate motions to exclude Mr. Turner's testimony filed by Dr. Debrabandere and Defendant Philip R. Jacoby, Jr., the SEC filed a single "consolidated response" to both motions.  Dr. Debrabandere's reply addresses only those arguments from the SEC's consolidated response that are relevant to his motion.

need to determine, for example, whether Dr. Debrabandere made false statements or omissions of material fact with scienter in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, made materially false or misleading statements to an accountant in violation of Exchange Act Rule 13b2-2, knowingly circumvented or knowingly failed to implement internal controls in violation of Exchange Act Section 13(b)(5) and Rule 13b2-1, or falsely certified Osiris's financial statements in violation of Exchange Act Rule 13a-14. *See* Dkt. No. 38 (Am. Compl.) ¶ 202 (First Claim), ¶ 223 (Sixth Claim), ¶ 226 (Seventh Claim), ¶ 231 (Eighth Claim). Each of these statutes and rules comes with clearly defined elements that the SEC must prove to establish a violation by Dr. Debrabandere, and it is for the Court (not Mr. Turner) to instruct the jury on those elements. *See, e.g.*, *SEC v. ITT Educ. Servs.*, 311 F. Supp. 3d 977, 985 (S.D. Ind. 2018) (explaining that defendants are "required to follow a standard defined by the law, and the jury will receive instructions setting forth what that law is"); *In re Safety-Kleen Corp. Stockholders Litig.*, No. 3:00-736-17, 2004 WL 6039473, at *4 (D.S.C. Jan. 29, 2004) (concluding that "the standard of care in a federal securities fraud action . . . is uniquely found within the federal securities laws themselves"); *SEC v. Big Apple Consulting USA, Inc.*, No. 6:09-cv-1963-Orl-28GLK, 2011 WL 3753581, at *5 (M.D. Fla. Aug. 25, 2011) (holding that an opinion "as to the legal duties of brokers and dealers . . . usurps the Court's role in instructing the jury and is inadmissible").[2]

---

[2] The SEC attempts to distinguish the *ITT* case (but none of the others) by arguing that "the expert in question was a lawyer" and that his testimony was excluded because it "was inextricably intertwined with legal conclusions." Resp. at 9 n.5. The SEC's expert in *ITT*, however, was the former Chairman of the SEC, and the court did not even reference in its opinion the fact that he also happened to be a lawyer. 311 F. Supp. 3d at 983. Further, the issue in that case was not that the expert's testimony "was inextricably intertwined with legal conclusions" but that, "to the extent his testimony regarding Defendants' obligations is helpful, it is inextricably intertwined *with his conclusions regarding whether Defendants met those obligations*" and should thereby be excluded. *Id.* at 985 (emphasis added). Likewise, Mr. Turner's testimony about the responsibilities of

As Dr. Debrabandere stated in his motion, "the federal securities laws do not establish a uniform standard of care." Mot. at 2. While the SEC does not dispute this, it repeatedly (and misleadingly) tries to assert that, because Dr. Debrabandere acknowledges the lack of any standard of care, Mr. Turner's testimony is needed to plug a gap in the law. *See* Resp. at 8; *id.* at 8 n.4; *id.* at 9 n.5. This hijacks and diverts the point that Dr. Debrabandere made in his motion, which is simply that the federal securities laws prescribe no standard of care (let alone a uniform standard of any sort) apart from the elements of specific statutes and rules and that an expert cannot create a standard of care from whole cloth and breathe it into the law. In fact, as Dr. Debrabandere explained, "*different legal standards apply to different claims*, and it will be the responsibility of the Court to instruct the jury on the law." Mot. at 2 (emphasis added).

The cases cited by the SEC stand for the unremarkable proposition that expert testimony sometimes can be helpful (or even required) in certain circumstances. *See* Resp. at 7-8. For example, expert testimony may be needed when a jury must determine in a tort case whether an individual deviated from the standard of care related to a specialized industry or profession like "environmental medicine," "refurbishment and recertification of propane tanks," or "nuclear production." *See, e.g.*, *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 710 (S.D. Ohio 2016). Even if expert testimony about a standard of care were required or relevant to each of the SEC's claims (which it is not), Mr. Turner's testimony about a standard of care is not helpful. For example, rather than testify about a standard of care that is somehow

---

management and standard of care is inadmissible because it is inextricably intertwined with his conclusions that Defendants failed to satisfy those responsibilities and failed to meet his standard of care. And the SEC is wrong that all Mr. Turner seeks to do here is explain what steps he thinks a prudent CEO or CFO would take when, in fact, Mr. Turner intends to do far more than lay out a standard (whether or not relevant) by testifying that Defendants "failed to fulfill their responsibilities" and "did not exercise due care." Dkt. No. 209-3, Ex. 14 (Turner Rep.) ¶ 22.

applicable to a specific industry or profession, Mr. Turner purports to identify a _uniform_ standard of care for _all_ officers at _all_ public companies across _all_ industries.[3]

Nonetheless, the SEC seeks to introduce a standard of care that would rewrite and lower the legal standard applicable for many of its claims.  The SEC argues that this standard of care would be helpful here because it is "squarely relevant" to claims that can be proven by showing that Dr. Debrabandere acted recklessly or negligently.  Resp. at 8.  This is incorrect.  Dr. Debrabandere is not accused of CEO malpractice.  The question is whether he acted recklessly or negligently with respect to the _specific conduct_ that the SEC alleges constituted fraud, not whether he acted recklessly or negligently in fulfilling his duties or responsibilities as CEO of Osiris generally or in the way he ran the company.  As explained in Dr. Debrabandere's motion, the SEC's fraud claims against him are based entirely on three discrete allegations – i.e., that he used an email to "direct" an employee who was negotiating with a distributor to include a product in a sale that the distributor did not order, that he entered into an undocumented side agreement with a distributor (and also failed to inform the auditor about a payment plan with that distributor), and that he used another email to "direct" employees to treat consignment orders from a sales agent's customers as sales.  Mot. at 6-7; _see also_ Dkt. No. 196 (Summ. J. Mem.) at 18-21.  Each of these allegations hinges on questions of fact for the jury, and Mr. Turner's testimony about general management responsibilities and a generic standard of care would do nothing to help the jury

---

[3] The SEC also is wrong that Mr. Turner's testimony would be helpful simply because this is a case brought under the securities laws.  Resp. at 9 (citing _United States v. Offill_, 666 F.3d 168, 175 (4th Cir. 2011)).  Although the Fourth Circuit has held that expert testimony is permissible in cases that involve "complex concepts" like those relating to "securities registration, registration exemptions, and specific regulatory practices," _Offill_, 666 F.3d at 175, this is not such a case.  Here, the jury will only be asked to decide straightforward questions about whether Defendants engaged in improper conduct and made misrepresentations.  Nor does Mr. Turner even purport to opine about the intricacies of the securities laws or any other regulatory regime.  Thus, this is not the type of securities case where expert testimony about the securities laws would be helpful.

determine whether the specific conduct alleged by the SEC occurred or was fraudulent.  *See SEC v. Ginder*, 752 F.3d 569, 575 (2d Cir. 2014) (finding that expert testimony was not "useful" where the evidence was of "deliberate acts" and the "SEC did not propose how [the defendant's] conduct might have been sloppy or ill-calculated").[4]

The SEC also tries to assert that its non-fraud claims "will require the jury to consider Defendants' responsibilities for internal controls, financial reporting, and interaction with auditors" and that "[t]hese claims require the jury to evaluate how Defendants should have discharged their responsibilities and whether they did so."  Resp. at 8.  The SEC cites to seven pages of its Amended Complaint in which it pleads nine different claims involving various statutes and rules.  *See id.*  But the SEC fails to explain how Mr. Turner's testimony would help a jury determine whether Dr. Debrabandere is liable with respect to any of these claims, particularly given that the SEC's non-fraud claims are almost entirely derivative of the same factual allegations on which its fraud claims are based.  Mot. at 7; *see also* Dkt. No. 196 (Summ. J. Mem.) at 34-37.  Moreover, the SEC fails to cite any authority for the proposition that a violation of any one of these statutes or rules can be established by a violation of a standard of care.  Nor does the SEC explain how Mr. Turner's uniform standard of care would help the jury assess Dr. Debrabandere's conduct against the requirements of _multiple_, _disparate_ statutes and rules that have different elements and possess no standard of care.

---

[4] Accordingly, this case is different from *Karp v. First Conn. Bancorp, Inc.*, relied on by the SEC, where the question was whether a company's directors were liable for omissions in a merger proxy statement despite no allegations that they were aware of omissions or engaged in any illicit conduct, and the court dismissed the action because plaintiffs failed to provide evidence that the directors "acted without the appropriate level of care" in their review of the merger proxy statement.  No. 1:18-cv-02496-RDB, 2021 WL 1575161, at *10-11 (D. Md. Apr. 22, 2021), *appeal filed* No. 21-1571 (4th Cir. May 12, 2021).  Here, the SEC alleges that Dr. Debrabandere engaged in specific and deliberate improper acts, not that he was negligent (or reckless) by acting without the appropriate level of care in reviewing or approving Osiris's SEC filings.

Finally, instead of Mr. Turner's testimony about his standard of care helping the jury understand the evidence or determine facts in issue as required by Federal Rule of Evidence 702 ("Rule 702"), there is a significant danger that it will confuse the issues and mislead the jury such that it should be excluded under Federal Rule of Evidence 403.  *See* Mot. at 7-8.  In particular, Mr. Turner's standard of care would be nothing more than an invitation for the jury to measure Dr. Debrabandere's conduct against an otherwise non-existent legal standard about how public company officers should perform generally (and then find him liable based on a lesser standard of culpability than what is prescribed by the securities laws) rather than to determine whether the SEC has proven the required elements for each specific alleged violation.  Indeed, it is difficult to see how Mr. Turner putting forward a standard of care will do anything other than confuse the jury about the applicable legal standards or mislead the jury into believing that Dr. Debrabandere can be found liable if he failed to satisfy Mr. Turner's standard of care, regardless of whether the SEC has established violations of the actual legal standards set by the securities laws.

### B.   <u>MR. TURNER'S TESTIMONY ABOUT HIS STANDARD OF CARE IS UNRELIABLE</u>

Even if Mr. Turner's testimony about his standard of care were relevant, it is nonetheless inadmissible because it is not the product of reliable principles and methods.  Specifically, Mr. Turner's "standard of care," which is the centerpiece of his methodology, bears none of the hallmarks of a reliable methodology (including those identified by the Court in *Daubert*), was invented exclusively for purposes of this litigation, is based on non-authoritative guidance that is inapplicable to Dr. Debrabandere, fails to distinguish between CEOs and other members of management, and is not tailored to the industry in which Osiris operated.  *See* Mot. at 8-10.

The SEC's only response is that Mr. Turner is an "experiential expert" whose testimony is not subject to the *Daubert* reliability factors.  Resp. at 10-12.  But <u>all</u> expert testimony must be

reliable in order to be admissible under Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 151-52 (1999). Thus, it is appropriate for this Court, as part of its reliability inquiry, to consider all relevant facts and circumstances, including the *Daubert* factors discussed in Dr. Debrabandere's motion. *See id.* at 151 ("[S]ome of *Daubert's* questions can help to evaluate the reliability even of experience-based testimony."). In addition, an experiential witness must still "'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee notes) (alterations in *Wilson*); *accord Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 798 (D. Md. 2013) (Blake, J.). Here, Mr. Turner repeatedly referenced in general terms his "years of experience" without explaining how this experience led to his conclusions, why his experience is a sufficient basis for his opinions, or how he reliably applied his experience to the facts. *See, e.g.*, Dkt. No. 209-3, Ex. 14 (Turner Rep.) ¶¶ 22, 101, 178.[5]

Moreover, the SEC's response fails to address the actual methodology that Mr. Turner employed. While Mr. Turner invoked his experience, there is no question that he purported to base his standard of care on more than his experience alone. For example, Mr. Turner wrote that "laws, rules, standards, guidance, and best practices provide insight into how management of

---

[5] Notably, Mr. Turner lacks sufficient relevant experience to serve as an experiential witness. He has never served as a public company officer (let alone the CEO or CFO of a public company), and his only experience in management consists of a two-year stint as CFO of a private semiconductor company more than two decades ago and four years overseeing research at a private financial and proxy research firm. *See id.* ¶¶ 9-20; Dkt. No. 209-4, Ex. 15 (Turner Tr.) at 124:8-125:18; Resp. at 3-4. This is, therefore, unlike the "experiential witness" cases cited by the SEC, which involved (1) a police officer who "had participated in hundreds of drug investigations and arrests" testifying about drug-related code words, *Wilson*, 484 F.3d at 275, and (2) an expert who had "decades of experience in commercial trucking" testifying about "inspection and maintenance standards" for trucks, *Heckman*, 962 F. Supp. 2d at 797.

public companies properly discharge their responsibilities" and that he was purporting to "summarize this guidance and offer additional sources addressing the standard of care expected and required of management of public companies."  Dkt. No. 209-3, Ex. 14 (Turner Rep.) ¶ 180. In light of this, it is appropriate for the Court to consider the sources on which Mr. Turner relied in constructing his standard of care (even though the SEC ignores them).  As pointed out in Dr. Debrabandere's motion, Mr. Turner's standard of care was cobbled together from non-authoritative guidance, including codes published by member organizations for accountants and/or finance professionals that apply only to those organization's members (and not to non-members, non-accountants, and non-finance professionals like Dr. Debrabandere).  Mot. at 10; *see, e.g.*, Dkt. No. 209-3, Ex. 14 (Turner Rep.) ¶¶ 184-88 (including in the "Standard of Care" section of his report nine pages of guidance from Financial Executives International, the American Institute of Certified Public Accountants, and the Institute of Management Accountants).  The SEC does not dispute that the guidance on which Mr. Turner relied is inapplicable to Dr. Debrabandere or provide any reason why Mr. Turner's reliance on such sources renders his methodology reliable.[6]

---

[6] The SEC claims that footnotes 2, 3, and 5 of Dr. Debrabandere's motion "attack Mr. Turner's conclusions rather than his methodology."  Resp. at 10 n.6.  This is not correct.  Footnote 2 of Dr. Debrabandere's motion explains how Mr. Turner, at his deposition, gave a description of his standard of care that is akin to a general corporate code of conduct (i.e., that Mr. Turner's standard requires executives to be ethical, honest, and competent, and to act with integrity, credibility, and confidentiality), which is illusory and too generic to be helpful to the jury.  Footnote 3 of Dr. Debrabandere's motion explains that Mr. Turner's testimony about his standard of care is unreliable because he changed substantive components of his standard when challenged at his deposition, which is indicative of a methodology invented for purposes of litigation.  And footnote 5 explains that Mr. Turner's standard of care is unreliable because it does not distinguish between different members of management (who have different roles and responsibilities with respect to a company's financial reporting and internal controls) and different industries (even though Mr. Turner testified that "due care" means different things in different industries).  These footnotes consist of legitimate (and still unanswered) criticisms of the relevance or reliability of Mr. Turner's opinions and reasons why such opinions are inadmissible.

### C.   MR. TURNER FAILED TO APPLY HIS STANDARD OF CARE RELIABLY TO THE FACTS OF THIS CASE

Even if Mr. Turner's testimony were relevant and the product of reliable principles and methods, it should be excluded because he failed to apply his "standard of care" reliably to the facts of this case.  As discussed in Dr. Debrabandere's motion, Mr. Turner (1) relied improperly on hindsight in concluding that Dr. Debrabandere failed to direct and oversee the preparation of accurate financial statements and disclosures as well as the design, operation, and maintenance of internal controls over financial reporting ("ICFR"), (2) concluded, based on his personal reading of non-technical emails (rather than any application of specialized knowledge), that Dr. Debrabandere engaged in "improper activities" relating to Osiris's distributors, and (3) opined improperly on Dr. Debrabandere's mental state by concluding that certifications were false.  *See* Mot. at 11-15.

Importantly, the SEC in its response does not dispute that it is inappropriate for an expert witness to rely on hindsight, provide testimony in the form of reading and interpreting emails, or opine about an individual's knowledge or state of mind.  Instead, despite what Mr. Turner wrote in his reports, the SEC now claims that Mr. Turner has not done (or will not do) any of this.  *See* Resp. at 12 ("Mr. Turner did not improperly rely on hindsight."); *id.* at 16 ("Mr. Turner does not intend to 'read and interpret' the emails or testimony for the jury."); *id.* ("Mr. Turner will not testify about Defendants' state of mind.").  The Court should hold the SEC to its word and preclude Mr. Turner from testifying based on hindsight, reading or interpreting emails to the jury, and opining on Dr. Debrabandere's knowledge or state of mind.[7]

---

[7] In addition, the Court should preclude Mr. Turner from passing along hearsay to the jury, which the SEC also does not dispute is improper and also claims that Mr. Turner does not intend to do. Resp. at 16 n.8.

But even where the SEC nevertheless attempts to defend the manner in which Mr. Turner applied his standard of care, the SEC is wrong.

*Application of hindsight.*   In arguing that Mr. Turner did not rely on hindsight, the SEC claims that he did not disregard contemporaneous evidence because he addressed such evidence in his rebuttal report.  Resp. at 14.  This appears to be a reference to the fact that (1) after one of Defendants' experts, Professor Prawitt, identified numerous enhancements made to Osiris's ICFR during Dr. Debrabandere's tenure as CEO, Mr. Turner responded that what matters are the "results achieved" rather than the "efforts made," and (2) after Professor Prawitt explained the importance of analyzing the involvement of others with responsibilities relating to ICFR, Mr. Turner responded that any failures by others means that Defendants failed to "monitor and manage those individuals."  *See* Mot. at 12-13.  These efforts to resuscitate shortcomings in Mr. Turner's initial report are themselves classic applications of hindsight, not (as the SEC claims) disagreements about the factual underpinnings of Mr. Turner's opinion.  *See* Resp. at 15.  Mr. Turner remained clear throughout both of his reports that, in applying his methodology, enhancements to ICFR were irrelevant solely because, at the end of the day, they were unsuccessful.  Similarly, Mr. Turner assumed that any failure by anyone else at Osiris was the fault of Defendants, without considering what Defendants actually had done to "monitor and manage those individuals."  In both cases, Mr. Turner relied on hindsight, which the SEC does not dispute is an improper basis for an expert's opinion.[8]

---

[8] The SEC also is wrong that Mr. Turner's reliance on the restatements was not hindsight.  *See* Resp. at 12-14.  The restatements were after-the-fact events that Mr. Turner relied on as evidence that Dr. Debrabandere failed to satisfy his responsibilities at an earlier time.  *See* Mot. at 11-12. There is no question this is hindsight.  *Cf. Proter v. Medifast, Inc.*, No. GLR-11-720, 2013 WL 1316034, at *16-17 (D. Md. Mar. 28, 2013) (holding that basing securities fraud allegations on the subsequent disclosure of an error was an improper attempt at establishing "fraud by hindsight").

*Reliance on non-technical emails*.  With respect to Dr. Debrabandere's assertion that Mr. Turner failed to apply independent analysis or specialized knowledge when he read and interpreted non-technical emails, the SEC claims that "Defendants do not provide any authority suggesting that Mr. Turner was required to do anything other than what he did."  Resp. at 15 n.7.  The main authority, which the SEC ignores, is Rule 702 itself, which requires that "the expert's scientific, technical, *or other specialized knowledge* will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a) (emphasis added).  Case law also establishes that where an expert does not apply any specialized knowledge, such as by reading and purporting to interpret non-technical emails, his testimony does not help the jury and is inadmissible.  *See* Mot. at 19-20 (citing cases).

*Certifications*.  The SEC denies that Mr. Turner's opinions regarding Dr. Debrabandere's certifications are state-of-mind opinions because Mr. Turner never explicitly invoked Dr. Debrabandere's state of mind.  Resp. at 16-17.  But this Court has already determined that, in light of the fact that certifications are "based on the officer's knowledge," the question of whether Dr. Debrabandere's certifications were false turns on "whether he had knowledge sufficient to make his certifications false."  Dkt. No. 196 (Summ. J. Mem.) at 35-36; *see also* Mot. at 14-15.  Thus, when Mr. Turner opines that Dr. Debrabandere's certifications were false, he is *necessarily* opining that Dr. Debrabandere *knew* the information he was certifying was false.  This is, of course, an opinion about Dr. Debrabandere's state of mind, and the SEC has conceded that such opinions are improper.[9]

---

[9] The SEC fails to address any of this in its response.  Instead, the SEC attempts to shift the focus away from Mr. Turner's actual opinions by claiming that he intends merely to explain "the background of the certifications, the regulatory scheme surrounding the certifications, the expectations of those certifying, where those certifications appear in Osiris's filings, and the importance of the certifications."  Resp. at 17.  In any event, testimony regarding where the

In addition, Mr. Turner purported to say what the law requires with respect to certifications. Mot. at 15 n.10.  The SEC claims that Mr. Turner's statements that "[c]ertification *under SOX and SEC rules* is more than just a signature" and that "Osiris' executives *were required* to understand and be aware of the information to which they certified" are opinions about Mr. Turner's "understanding of the importance of the certification" rather than improper opinions about the law. Resp. at 17-18 & n.10 (emphasis added).  This claim borders on the absurd.  Mr. Turner purported to say what the Sarbanes-Oxley Act of 2002 ("SOX") and SEC rules legally require with respect to certifications.  In fact, by opining that a certification under SOX and SEC rules is more than just a signature, Mr. Turner expressed a legal position that is inconsistent with that taken by some courts.  *See* Dkt. No. 160 at 54 n.35 (noting that some courts have held that SEC Rule 13a-14, which was promulgated in response to SOX Section 302, merely requires a public company's CEO and CFO to "sign a certification").  As discussed above, it will be for the Court, not Mr. Turner, to instruct the jury on the applicable law.  Mr. Turner's opinions regarding certifications, therefore, should be excluded.[10]

## II.    MR. TURNER'S TESTIMONY ABOUT MISREPRESENTATIONS TO BDO SHOULD BE EXCLUDED

As explained in Dr. Debrabandere's motion, Mr. Turner's opinions that Dr. Debrabandere "misled" BDO and signed "false and misleading" management representation letters are improper legal conclusions because they are couched in the language of Exchange Act Rule 13b2-2,

---

certifications were located, the importance of certifications, or the like would not help the jury determine whether the certifications were in fact false (which is the only relevant issue and turns on Dr. Debrabandere's knowledge).

[10] The SEC also fails to respond (and presumably has no response) to the fact that Mr. Turner opined on issues unrelated to any of the SEC's claims or allegations, such as provisions of SOX that no Defendant is alleged to have violated and Osiris's disclosure controls.  *See* Mot. at 13 n.7. Testimony regarding all such irrelevant issues should be excluded.

including one opinion that copied the language of the rule nearly word-for-word, and therefore tell the jury nothing more than what result to reach.  Mot. at 16-18 (citing Dkt. No. 209-3, Ex. 14, Turner Rep. ¶¶ 1, 22, 221, 270, 276, 278, 281, 286).  Indeed, as numerous courts have held, an expert's opinion that auditors were "misled" or that statements were "false" or "misleading" should be excluded.  *Id.* at 16.  Mr. Turner's opinions also are not helpful to the jury because, as discussed in Dr. Debrabandere's motion, they consist of conclusory assertions and lengthy excerpts of deposition testimony, devoid of any application of specialized knowledge.  *Id.* at 17-20.[11]  In addition, Mr. Turner's testimony will not help the jury because the determination of whether there were misrepresentations to BDO is a straightforward exercise that is wholly dependent on the jury's evaluation of the underlying evidence (rather than requiring any analysis of complex or technical issues).  Mot. at 18-19, 21.

In its response, the SEC does not dispute <u>*any*</u> of the foregoing – not the fact that Mr. Turner is expressing his opinions using the language of Rule 13b2-2, not the fact that numerous courts have found similar opinions to be inadmissible, not the fact that Mr. Turner's opinions consist of conclusory assertions and excerpts of deposition testimony, and not the fact that the determination of whether there were misrepresentations to BDO will not be a complex exercise for the jury.[12]

---

[11] The SEC explains that Mr. Turner included long excerpts of deposition testimony in his rebuttal report only because he and the SEC take their disclosure obligations under the Federal Rules of Civil Procedure seriously.  Resp. at 22.  *But see* Dkt. No. 216 at 3 n.1, 4 & n.2 (identifying various deficiencies in the disclosures of Mr. Turner and the SEC's other expert witnesses); Dkt. No. 208-1 at 5-6 (noting that one of the SEC's other expert witnesses submitted a rebuttal report limited to two paragraphs).  Regardless of the SEC's self-serving explanation, the SEC assures the Court that Mr. Turner will not regurgitate the testimony of fact witnesses to the jury.  Resp. at 22.  Again, the Court should hold the SEC to its word and preclude Mr. Turner from testifying in this manner.

[12] The SEC also does not dispute that many of the provisions of the management representation letters and other purported misrepresentations and omissions that Mr. Turner referenced in his reports go beyond the SEC's allegations and contentions regarding Dr. Debrabandere – and, therefore, Mr. Turner's testimony about these issues is not relevant and should be excluded.  Mot. at 18 n.12.

Instead, the SEC makes four arguments for why Mr. Turner's opinions should nonetheless be admitted.  Each is incorrect.

First, the SEC argues that Mr. Turner's opinions about misrepresentations to BDO are not legal conclusions "because the terms he uses do not have a legal meaning distinct from everyday usage."  Resp. at 20.  But not only does this argument ignore the manner in which Mr. Turner stated his opinions (such as by quoting a legal provision nearly word-for-word) and the fact that other courts have excluded expert testimony regarding the same "terms" used by Mr. Turner (such as "misled" and "false and misleading"), Mot. at 16-17, it actually reinforces Dr. Debrabandere's position that Mr. Turner's testimony would not help the jury conduct what is ultimately a simple comparison between what information BDO was told and the underlying facts.  *See United States v. Perkins*, 470 F.3d 150, 157 (4th Cir. 2006) (explaining that "helpfulness to the jury" is the "touchstone of admissibility of testimony that goes to the ultimate issue").

Second, the SEC argues that Mr. Turner's testimony would help the jury because he would "explain the role of management, the responsibilities of management for a company's financial statements, the role of the auditor, and management representation letters."  Resp. at 21; *see also id.* ("It is extremely unlikely that the jury in this matter has experience with audits, the relationship between management and auditors, the responsibilities of management of a public company with regard to financial reporting, what a management representation letter is, what a management representation letter means, or how management should treat a management representation letter.").  Putting aside the SEC's attempt to reframe the opinions Mr. Turner actually disclosed in his reports, the SEC fails to explain how background testimony about audits and auditors would

help a jury determine whether the information provided to BDO was true or false, which is the only issue that the jury will need to decide here.[13]

Third, the SEC claims that the reliability of Mr. Turner's testimony about alleged misrepresentations to BDO should be judged by a lower standard because he is an "experiential witness." Resp. at 21-22. But again, even as an experiential witness, Mr. Turner must still explain how his experience leads to the conclusions he reached, why his experience is a sufficient basis for his opinions, and how his experience is reliably applied to the facts. *See, e.g.*, *Wilson*, 484 F.3d at 274. Mr. Turner has not done this, and the SEC fails to meet its burden of demonstrating the reliability of Mr. Turner's testimony by simply saying, "experiential witness," over and over again. *See also* n.5, *supra* (noting Mr. Turner's lack of public company management experience). Further, regardless of whether Mr. Turner is an "experiential witness," the SEC fails to demonstrate how his testimony would help the jury in this case.

Finally, the SEC argues that Dr. Debrabandere's objection is really that Mr. Turner "failed to consider contrary evidence," which would not be a basis for excluding Mr. Turner's opinions about misrepresentations to BDO. Resp. at 22 (citing Mot. at 20 n.13). The SEC misunderstands the purpose for which Dr. Debrabandere referenced contrary evidence. Although there is no question that Mr. Turner should have considered certain evidence that he ignored, the reason his opinions are inadmissible is that, by repeating selected excerpts of testimony, Mr. Turner was not actually applying any specialized knowledge that could help the jury here. The fact that the

---

[13] The SEC also claims that "Mr. Turner will explain how the management representation letters are incorrect and misleading." Resp. at 21. But the seven paragraphs of Mr. Turner's report that the SEC cites as support consist exclusively of conclusory assertions that management representation letters were false or misleading as well as one paragraph that discusses a PhysioRx transaction with respect to which Dr. Debrabandere is not alleged to have made misrepresentations to BDO or otherwise violated the law. *See id.*; Dkt. No. 209-3, Ex. 14 (Turner Rep.) ¶¶ 221, 236, 270, 277-80.

testimony Mr. Turner cited was objectively inaccurate, as demonstrated conclusively by other evidence, is simply confirmation of his failure to apply specialized knowledge in evaluating the record.[14]

## **CONCLUSION**

For the reasons set forth above and in Dr. Debrabandere's motion, Dr. Debrabandere respectfully requests that this Court grant his motion to exclude Mr. Turner's testimony.

Respectfully submitted this 11th day of June 2021.

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ John A. Freedman*
John A. Freedman (Bar No. 20276)
Adam J. Reinhart (*pro hac vice*)
Michael D. Trager (*pro hac vice*)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
John.Freedman@arnoldporter.com
Adam.Reinhart@arnoldporter.com
Michael.Trager@arnoldporter.com

*Counsel for Dr. Lode B. Debrabandere*

---

[14] For example, Mr. Turner repeated the testimony of BDO's engagement partner that BDO was not aware of extended payment terms for Dover Medical LLC (even though contemporaneous workpapers reference such terms) and the testimony of CRC Results, Inc.'s ("CRC") partner testifying that CRC was not aware of certain types of transactions (even though CRC's contemporaneous workpapers show that CRC tested such transactions).  *See* Mot. at 20 & n.13.

**CERTIFICATE OF SERVICE**

I certify that, on June 11, 2021, I caused the foregoing document to be electronically filed

with the Court using the ECF system, which will send notification of such filing to ECF-registered

counsel.


_/s/ John A. Freedman_