IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | Civil Action No. CCB-17-3230 |
| v. | |
| PHILIP R. JACOBY, JR., *et al.* | |

### MEMORANDUM

Defendants Lode Debrabandere and Philip Jacoby each have filed motions in limine to exclude certain testimony of the SEC's expert witness John Lacey (ECFs 210, 211). The SEC filed a combined response (ECF 218), and the defendants filed separate replies (ECFs 222, 224). For the reasons explained below, the motions will be denied.

### LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence, which "was intended to liberalize the introduction of relevant expert evidence," *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999), provides that a qualified expert witness "may testify in the form of an opinion or otherwise if . . . [his or her] scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The expert's testimony must be "based on sufficient facts or data" and must be "the product of reliable principles and methods." Fed. R. Evid. 702(b), (c). And the expert must "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

It is the district judge's responsibility to make an initial determination of an expert's qualifications, *see* Fed. R. Evid. 104(a), and to "ensur[e] that an expert's testimony both rests on

1

a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). Relevant evidence is of course that which "helps the trier of fact to understand the evidence or determine a fact in issue." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 959 (4th Cir. 2020) (internal quotation marks omitted). Reliable expert testimony is "based on scientific, technical, or other specialized knowledge and not on belief or speculation" and derives any inferences "using scientific or other valid methods." *Id.* (internal quotation marks omitted). The Supreme Court has identified five factors that the court may consider in evaluating the reliability of an expert's reasoning or methodology: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community. *See Daubert*, 509 U.S. at 593–94. These factors, which "may or may not be pertinent in assessing reliability," are not meant to be "definitive" or to constitute a "checklist." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 151 (1999) (internal quotation marks omitted).

"As in all questions of admissibility," the party seeking the admission of expert testimony "must come forward with evidence from which the court can determine that the proffered testimony is properly admissible"—i.e., that it is reliable and relevant. *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). A district court must take seriously its responsibility to ensure "that a proffered expert opinion is 'sufficiently relevant and reliable when it is submitted to the jury.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 282 (4th Cir. 2021) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017). Yet the trial court's role as a gatekeeper is not intended to serve as a "replacement for the adversary system, and

consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (internal quotation marks omitted).

## ANALYSIS

John Lacey is a CPA with many years of experience in academia, and previously in business and with an accounting firm. Currently he is Professor of Accountancy and Ernst & Young Research Fellow at California State University, Long Beach. Through his membership in the American Institute of Certified Public Accountants, he has significant experience with the establishment of generally accepted accounting principles ("GAAP"). The defendants do not, in general, challenge his qualifications, which are more fully detailed in the CV attached to his report. (ECF 218-1, Report at 1–2 and Appendix A).

The defendants do raise challenges to certain aspects of Professor Lacey's proposed testimony, which will be addressed in turn.

First, the defendants argue that testimony about their "state of mind" should be excluded. The SEC does not disagree, but asserts that no such testimony will be elicited. The court agrees with the general proposition that testimony from an expert about a defendant's intent, motive, or state of mind is not helpful to the jury and should be excluded. *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation*, No. 1:17-md-2775, 2021 WL 781682 at *13 (D. Md. Mar. 1, 2021), and cases cited therein. But an expert "may testify about his . . . review of internal corporate documents solely for the purpose of explaining the basis for his . . . opinions." Id. There is a difference between opining about the fact of revenue misstatements, and the information available at the time to company executives, for example, and opining that a particular defendant "knew" about revenue recognition errors

3

when he certified a financial statement. Counsel may object at trial if they believe Professor Lacey offers an opinion that crosses the line. At present there does not appear to be a dispute on this issue.

Second, the defendants challenge Professor Lacey's testimony on "materiality" of the misstatements, both as to methodology and because he will be opining on a legal standard that should be left to the court. But there is an accounting standard of materiality that, with careful instructions, can be distinguished for the jury as needed. The Fourth Circuit in *Barile* found that the district court's limitation on the defense expert's testimony was overbroad, explaining that testimony about the reasonableness of the 510(k) submissions should have been permitted and advising as to the direct conclusion about "materially misleading misstatements" only that it was "arguably" a legal conclusion and therefore "within the district court's discretion to exclude." *United States v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002). As with the opinions to be offered by Lynn Turner, the court finds this litigation involves a complex financial and regulatory arena where opinions about accounting concepts applicable to companies such as Osiris and their executives will be helpful to the jury. *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("We conclude that the specialized nature of the legal regimes involved in this case and the complex concepts involving . . . specific regulatory practices make it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury."). Regarding methodology, Professor Lacey explained an acceptable basis in industry practice for selecting his two percent quantitative materiality threshold, and he may be cross-examined about his reasons and the correctness of that opinion.

Third, the defendants argue that Professor Lacey's testimony about Osiris's weakness in its internal controls over financial reporting should be excluded, because it is allegedly based on

4

"hindsight." But it is not "hindsight" to note that a restatement is "consistent" with his conclusion, based on other information, about the weakness of internal controls, nor is it improper to rely on documents created after the events in question if they reflect facts that existed at the relevant time period.

Fourth, the defendants again contend that Professor Lacey would be offering a legal conclusion by testifying about company executives' responsibilities under the Sarbanes-Oxley Act. But that unfairly characterizes his testimony, because he focuses on management obligations as understood within the fields of public accounting and auditing. Certifications by CEOs and CFOs are part of the complex financial and regulatory landscape that will be important for the jury to understand. As the SEC agrees, however, Professor Lacey will not be offering an opinion about the requirements of SOX as a matter of law.

Fifth, the defendants contend Professor Lacey's opinion that Osiris's recognition of Dover revenue did not comply with GAAP is unreliable because he did not analyze separately the recognition of revenue for each of the more than one hundred Dover transactions. But Professor Lacey applied the four GAAP criteria to what he found were facts common to the Dover transactions. The defendants essentially attack the facts he relied on, which is appropriate for cross-examination but does not provide a basis for exclusion. *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195–96 (4th Cir. 2017).

Accordingly, the motions in limine will be denied. A separate Order follows.

3/31/22
Date

CCB
Catherine C. Blake
United States District Judge