IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | Civil Action No. CCB-17-3230 |
| v. | |
| PHILIP R. JACOBY, JR., *et al.* | |

## MEMORANDUM

Defendants Lode Debrabandere and Philip Jacoby each have filed motions in limine to exclude the testimony of the SEC's expert witness Lynn Turner (ECFs 209, 213). The SEC filed a combined response (ECF 215), and the defendants filed separate replies (ECFs 221, 226). For the reasons explained below, the motions will be denied.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence, which "was intended to liberalize the introduction of relevant expert evidence," *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999), provides that a qualified expert witness "may testify in the form of an opinion or otherwise if . . . [his or her] scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The expert's testimony must be "based on sufficient facts or data" and must be "the product of reliable principles and methods." Fed. R. Evid. 702(b), (c). And the expert must "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

It is the district judge's responsibility to make an initial determination of an expert's qualifications, *see* Fed. R. Evid. 104(a), and to "ensur[e] that an expert's testimony both rests on

1

a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). Relevant evidence is of course that which "helps the trier of fact to understand the evidence or determine a fact in issue." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 959 (4th Cir. 2020) (internal quotation marks omitted). Reliable expert testimony is "based on scientific, technical, or other specialized knowledge and not on belief or speculation" and derives any inferences "using scientific or other valid methods." *Id.* (internal quotation marks omitted). The Supreme Court has identified five factors that the court may consider in evaluating the reliability of an expert's reasoning or methodology: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community. *See Daubert*, 509 U.S. at 593–94. These factors, which "may or may not be pertinent in assessing reliability," are not meant to be "definitive" or to constitute a "checklist." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 151 (1999) (internal quotation marks omitted).

"As in all questions of admissibility," the party seeking the admission of expert testimony "must come forward with evidence from which the court can determine that the proffered testimony is properly admissible"—i.e., that it is reliable and relevant. *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). A district court must take seriously its responsibility to ensure "that a proffered expert opinion is 'sufficiently relevant and reliable when it is submitted to the jury.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 282 (4th Cir. 2021) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017). Yet the trial court's role as a gatekeeper is not intended to serve as a "replacement for the adversary system, and

consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (internal quotation marks omitted).

## ANALYSIS

Lynn Turner is a former Chief Accountant for the SEC who has extensive experience, as set forth by the SEC, in considering and determining standards applicable to officers of public companies from personal participation, service on boards, working as a regulator and auditor, and in academics. (ECF 215 at 3–6, 215-1 Ex. A, Report at ¶¶ 9–20). The SEC retained him in this case to provide opinions related to the defendants' conduct regarding alleged violations of various provisions of the securities laws. The defendants do not challenge his qualifications.[1]

Both Debrabandere and Jacoby do, however, challenge the relevance and reliability of Turner's proposed testimony about the appropriate standard of care for executives of public companies; they also challenge Turner's opinion that both Debrabandere and Jacoby made misrepresentations to Osiris's independent auditor, BDO USA, LLP ("BDO").

First, the defendants contend that testimony establishing the applicable standard of care is not necessary to prove the claims against them. But as the SEC points out, it will be helpful, if not indeed essential, for the jury to understand the standard of care so that they can determine whether the defendants acted negligently or even recklessly. The federal securities law does not establish a uniform standard of care, and the SEC reasonably seeks expert testimony to support its claim that the appropriate standard of care was not adhered to by the defendants. While expert testimony is not required in every case, *see SEC v. Ginder*, 752 F.3d 568, 575 (4th Cir. 2014), in

---

[1] For fuller discussion of the facts and claims alleged, see the court's earlier opinions ruling on motions to dismiss (ECF 54) and for summary judgment (ECF 196).

3

others it may be essential or at least helpful. *See, e.g., Karp v. First Connecticut Bancorp, Inc.*, 535 F. Supp. 3d 458, 474 (D. Md 2021) (citing *SEC v Shanahan*, 646 F.3d 536, 547 (8th Cir. 2011)).

Further, given the complexity of the regulatory requirements at issue, including the certification process, expert testimony will be helpful to the jury's understanding of the evidence. *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("We conclude that the specialized nature of the legal regimes involved in this case and the complex concepts involving . . . specific regulatory practices make it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury."). Of course, it will be important to ensure that Turner's testimony does not supplant the responsibility of the court to instruct the jury on the law; the expert should not simply be providing his "view of how the verdict should read," *Offill*, 666 F.3d at 175, but nonetheless there is room for an opinion about what conduct meets the standard of care for an executive in the defendants' positions that may assist a jury without invading its province, *United States v Barile*, 286 F3d 749, 761 (4th Cir. 2002).[2]

Second, the defendants contend that Turner's articulation of the standard of care is not based on reliable data and methodology. But Turner is an "experiential" expert, not a scientist testifying to opinions that may be peer reviewed. And he based his opinions on his years of experience, in addition to reviewing a substantial amount of relevant literature, including various codes of conduct. As required, he has explained "how [his] experience leads to the conclusions

---

[2] In *Barile*, the Fourth Circuit held that opinion testimony on whether the data submitted in a particular SEC filing were reasonable would not merely state a legal conclusion and did not invade the province of the jury; so long as such expert opinion met other rules of evidence like Daubert, it was "precisely the type of expert testimony that could assist the trier of fact in its determination." *Barile*, 286 F.3d at 761. *Cf. SEC v. ITT Educational Services, Inc.*, 311 F. Supp. 3d 977, 985 (S.D. Ind. 2018) (excluding expert testimony on a standard defined by law, in contrast to situations where "the standard a jury must apply is not defined by the law, but rather by a custom, practice, or even difficult-to-understand technology"). The complexity in *Jacoby* justifies the use of expert testimony.

4

reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). Turner's consideration of the size of the restatement or the fact that Osiris issued amended disclosures does not mean he simply based his opinions on "hindsight." Rather, he considered relevant factual circumstances that may have informed, but did not determine, his opinions. Nor did he rely solely on the literature he consulted to, again, inform rather than determine his opinions.

The defendants have not shown that Turner's opinions are unreliable, and to the extent they disagree with his conclusions or his analysis of the facts that support those conclusions, the proper remedy is cross-examination. *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195–96 (4th Cir. 2017). Finally, Turner does not intend to opine on the individual defendants' "state of mind," and the portions of the report cited by the defendants do not contain such impermissible speculation.

The defendants also challenge Turner's opinion about misrepresentations to the auditors (BDO). Depending on how they are expressed, these opinions also may be helpful to the jury and are not inadmissible even if they touch on the "ultimate issue" for the jury. *Barile*, 286 F.3d at 760–61 (distinguishing between (a) questions that are broadly phrased and use words with specialized legal meanings and therefore could elicit a legal as well as a fact-based response and (b) questions that are more specific, do not invade the judge's province of instructing the jury regarding specialized legal terms, and would elicit responses giving the jury insight into the bases for the expert's conclusion).

In summary, none of the challenged opinions are categorically inadmissible. Care must be taken during trial to avoid crossing boundaries that would amount to impermissible legal

conclusions or opinions about Debrabrandere's or Jacoby's state of mind. With that reservation, the motions will be denied.

A separate Order follows.

_____3/30/22_____                              _____CCB_____
Date                                             Catherine C. Blake
                                                 United States District Judge