**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| SECURITIES AND EXCHANGE COMMISSION<br><br>v.<br><br>PHILIP R. JACOBY, JR., *et al.* | Civil Action No. CCB-17-3230 |
|---|---|

**MEMORANDUM**

Defendants Lode Debrabandere and Philip Jacoby each have filed motions to exclude the testimony of the SEC's expert witness Lassaad Adel Turki (ECFs 208, 212). The SEC filed a combined response (ECF 214) and the defendants filed separate replies (ECFs 220, 225). For the reasons explained below, the motions will be denied.

**LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence, which "was intended to liberalize the introduction of relevant expert evidence," *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999), provides that a qualified expert witness "may testify in the form of an opinion or otherwise if . . . [his or her] scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The expert's testimony must be "based on sufficient facts or data" and must be "the product of reliable principles and methods." Fed. R. Evid. 702(b), (c). And the expert must "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

It is the district judge's responsibility to make an initial determination of an expert's qualifications, *see* Fed. R. Evid. 104(a), and to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509

U.S. 579, 597 (1993). Relevant evidence is of course that which "helps the trier of fact to understand the evidence or determine a fact in issue." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 959 (4th Cir. 2020) (internal quotation marks omitted). Reliable expert testimony is "based on scientific, technical, or other specialized knowledge and not on belief or speculation" and derives any inferences "using scientific or other valid methods." *Id.* (internal quotation marks omitted). The Supreme Court has identified five factors that the court may consider in evaluating the reliability of an expert's reasoning or methodology: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community. *See Daubert*, 509 U.S. at 593–94. These factors, which "may or may not be pertinent in assessing reliability," are not meant to be "definitive" or to constitute a "checklist." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 151 (1999) (internal quotation marks omitted).

"As in all questions of admissibility," the party seeking the admission of expert testimony "must come forward with evidence from which the court can determine that the proffered testimony is properly admissible"—i.e., that it is reliable and relevant. *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). A district court must take seriously its responsibility to ensure "that a proffered expert opinion is 'sufficiently relevant and reliable when it is submitted to the jury.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 282 (4th Cir. 2021) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017). Yet the trial court's role as a gatekeeper is not intended to serve as a "replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re*

*Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (internal quotation marks omitted).

**ANALYSIS**

Dr. Turki was retained by the SEC, among other assignments, to "assess the impact that the restatements, specifically Osiris' restatements related to financial releases throughout 2014 and the first three quarter of 2015, had on revenue and earnings" and to "analyze whether these financial restatements and the events directly related to these financial restatements had a statistically significant impact on Osiris' stock price." (ECF 208-3, Ex. 1, Dr. Turki report ¶ 19). Relying on a "generally accepted event study methodology", Dr. Turki concluded that the "revelation of news related to Osiris' financial restatements" caused "statistically significant negative stock price reactions" that reduced Osiris's market capitalization by $197 million (or $5.71 per share), which he described as a "conservative" measure. (*Id.* ¶ 25). Secondarily, Dr. Turki concluded that Mr. Jacoby, who sold shares on May 21, 2014, and on May 27, 2015, financially benefitted from selling his shares at "artificially inflated prices" as a result of the alleged misrepresentations made in 2014 and the first three quarters of 2015. (*Id.* ¶ 26). Debrabandere and Jacoby both challenge Dr. Turki's application of the event study methodology, and Jacoby challenges the conclusion that he benefitted from selling Osiris stock.

Preliminarily, the court notes that a properly conducted "event study" is recognized by all parties as a valid method to analyze the effect of a restatement on stock price. "A conventional securities fraud event study is conducted as follows:

> [A]n economist performs a regression to estimate the relationship between a stock's "actual return" (the difference between closing prices on two consecutive days) and the movement of one or more indices representing an average of the stock prices for several companies which make up the market and/or industries in which the firm operates. This first step allows the economist to predict how the stock price should move on any given day based on the movement of the

> indices ("the expected return") and thereby provides a benchmark for all companies within a particular market. The estimated expected return is then used as the baseline against which the stock's actual return on pre-selected event days is measured. The expected return is thus a measured expectation of what the normal stock price movement would have been if the event had not occurred. If the difference between the expected return and the actual return on an event day is statistically significant, it may be attributed to the event occurring on that day, provided that the study controls for confounding factors.

*Bricklayers and Trowel Trades International Pension Fund, et al., v. Credit Suisse First Boston, et al.*, 853 F. Supp. 2d 181, 185–86 (D. Mass. 2012) (citing A. Craig MacKinlay, *Event Studies in Economics and Finance*. 35 J. Econ. Literature 13, 13–35 (1997); Jay W. Eisenhofer, Geoffrey C. Jarvis & James R. Banko, *Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance–Based Theory of Loss Causation*. 59 Bus. Law. 1419, 1425–26 (2004). *See also United States v. Schiff*, 538 F. Supp. 2d 818, 839 (D.N.J 2008); *Billhofer v. Flamel Technologies, S.A.*, 281 F.R.D. 150, 162–63 (S.D.N.Y. 2012).

Dr. Turki is qualified to conduct such studies. The defendants challenge his analysis on two grounds. First, as to "fit" or relevance, the defendants argue that the SEC's allegations of fraud against them account for only a portion of the restatements issued by Osiris, but Dr Turki analyzed the effect of the restatements as a whole, without distinguishing between restatements caused by the defendants' alleged fraud and those issued by Osiris for other reasons. As Dr. Turki stated during his deposition, "Now, how much of that ultimate numerical number was due to the so-called alleged fraud, how much was it due to the individual defendants, I'm not offering an opinion, nor did I do an analysis with respect to that." (ECF 208-4, Ex. 2, Turki Dep. at 86). He explained that "absent the fraud, there'll be no need for restatements, as I understand the case." (*Id.*). The defendants, however, point to an analysis by another SEC expert, Dr. John Lacey, who found that only $13.2 million of the $22.3 million total reduction in revenue for Q1 2014 through Q2 2015 was attributable to transactions for which the SEC has alleged fraud.

(ECF 208-1, Mem. Opp. at 8–9 citing ECF 208-7, Ex. 5, Lacey report at Ex. 5.A (marked page 126 of 143)). They argue that a substantial portion of the restatements are not related to their alleged fraud.

The SEC, however, sees the facts differently. They appear to proffer not only that they have alleged an overall scheme engaged in by both Debrabandere and Jacoby but that they will prove the entirety of the restatements are related to the alleged fraud. (ECF 214 at 6). An expert may testify based on a factual assumption consistent with the anticipated evidence, even if there remains a factual dispute for the jury to resolve about whether the assumption is correct. *SEC v. Ustian*, No. 16 C 3885, 2020 WL 416289 at *11 (N.D. Ill. Jan. 26, 2020).[1] Accordingly, assuming the SEC is prepared to put forward such evidence at trial, Dr. Turki may rely on that hypothetical factual assumption in stating his opinion.

As to reliability, the defendants claim that Dr. Turki failed to properly account for "confounding factors," such as other company-specific information released the same day but not related to the alleged fraud. Dr. Turki is aware of the importance of that aspect of an event study. (*See* ECF 208-4, Ex. 2, Turki Dep. at 114, 160, 163).

And according to Dr. Turki, he did consider and account for such information, where he found it, based on his experience. (*See, e.g.*, ECF 208-4 at 146, 162–64). His report also identifies confounding information. The defendants suggest he should have done a "discounted cash flow analysis" (ECF 208-1 at 15–16); their rebuttal expert Dr. Jennifer Marietta-Westberg disagreed with his identification of negative confounding factors as compared to positive confounding factors but did not suggest that a discounted cash flow analysis was required. (ECF 208-5, Exhibit 3, Expert Report Dr. Jennifer Marietta-Westberg ¶¶ 28, 34). Disagreement

---

[1] Unpublished opinions are cited for the persuasiveness of their reasoning, not for any precedential value.

between two experts applying an accepted methodology about issues such as what should be identified as a confounding factor is appropriate for cross-examination and rebuttal testimony but does not warrant exclusion of the first expert's testimony. *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 90 (S.D.N.Y. 2015); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 429 (S.D.N.Y 2014). Further Dr. Turki's criticized difference in treatment of certain negative and positive confounding information was done conservatively to the benefit of the defendants, not as the result of an error in his methodology.

As to Jacoby's independent objection: it is not necessary, nor did Dr. Turki purport, to calculate the precise amount by which Jacoby benefitted on the days he sold shares of Osiris stock. Dr. Turki simply testified, consistent with his overall analysis of the restatements, that Jacoby sold them into an inflated market and accordingly received some financial benefit. His Exhibit C is clearly identified as a demonstrative illustration and not an actual calculation.

**CONCLUSION**

For the reasons discussed herein, the *Daubert* motions will be denied. A separate Order follows.

3/30/22
Date

CCB
Catherine C. Blake
United States District Judge